# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: ERIE COVID-19 BUSINESS INTERRUPTION**  MDL No. 2969
**PROTECTION INSURANCE LITIGATION**

### TRANSFER ORDER

**Before the Panel:**  Plaintiffs in five actions[1] listed on Schedule A move under 28 U.S.C. § 1407 to centralize pretrial proceedings in this litigation in the Eastern District of Pennsylvania. This litigation consists of thirteen actions pending in five districts, as listed on Schedule A.  The parties have notified the Panel of twelve related actions pending in eight districts.[2]  Plaintiffs in six actions and potential tag-along actions support centralization in either the Eastern District of Pennsylvania, the Western District of Pennsylvania, or both.  Plaintiffs in three actions and potential tag-along actions oppose centralization or, alternatively, ask that their actions be excluded from any MDL.  Plaintiffs in two of these actions alternatively suggest either the Western District of New York or the Southern District of West Virginia as potential transferee districts.  The Erie defendants[3] likewise oppose centralization.  Alternatively, Erie suggests the Western District of Pennsylvania should serve as the transferee district.

This is the latest motion seeking centralization of litigation involving insurance claims for coverage of business interruption losses caused by the COVID-19 pandemic and the related government orders suspending, or severely curtailing, operations of non-essential businesses.  At our July 2020 hearing session, we denied two motions seeking centralization on an industry-wide basis as to all insurers, concluding that the differences among the many insurers would overwhelm any common factual questions and hinder the transferee court's ability to efficiently manage the litigation.  *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942, __ F. Supp. 3d __, 2020 WL 4670700 (J.P.M.L. Aug. 12, 2020).  We found the arguments of several parties for insurer-based MDLs more persuasive and issued orders directing the parties to show cause why

---

[1] These five actions are the *LA Campagna Inc.*, *High Tech Hair*, and *Sulimay's Hair Design* actions in the Eastern District of Pennsylvania; the *Laser Spa of Rochester* action in the Western District of New York; and the *Close Enterprises* action in the Western District of Pennsylvania.

[2] These and any other related actions are potential tag-along actions.  *See* Panel Rules 1.1(h), 7.1, and 7.2.

[3] The Erie defendants include:  Erie Insurance Company; Erie Insurance Exchange; Erie Indemnity Company; and Erie Insurance Property & Casualty Company.

actions against certain insurers should not be centralized.[4]  *Id.* at *3.

At our September 2020 hearing session, we considered show cause orders with respect to five insurers.  With respect to Lloyd's of London, we denied centralization because the structure of the London market would complicate pretrial management and likely would lead to the MDL expanding to encompass other insurers who participated in this market.  *See In re Certain Underwriters at Lloyd's, London, COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2961, __ F. Supp. 3d __, 2020 WL 5887416, at *2 (J.P.M.L. Oct. 2, 2020).  We also denied centralization with respect to Cincinnati Insurance Company, The Hartford, and Travelers, though those litigations presented "a close question."  *In re Cincinnati Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2962, __ F. Supp. 3d __, 2020 WL 5884791, at *1 (J.P.M.L. Oct. 2, 2020).  We found that the actions presented "common legal and factual questions that could, in other circumstances, support centralization."  *Id.*  We concluded, though, that the actions could more timely be resolved in the transferor courts because centralization would require the time-consuming establishment of a pretrial structure to account for the many different state insurance laws, closure orders, and policy variations presented by the actions.  *Id.* at *2; *In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2963, __ F. Supp. 3d __, 2020 WL 5884782, at *2–3 (J.P.M.L. Oct. 2, 2020); *In re Travelers COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2965, __ F. Supp. 3d __, 2020 WL 5884785, at *1–2 (J.P.M.L. Oct. 2, 2020).

In contrast, centralization of the fifth show cause litigation—involving Society Insurance Company—was warranted.  *See In re Society Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964, __ F. Supp. 3d __, 2020 WL 5887444 (J.P.M.L. Oct. 2, 2020).  Society's status as a regional insurer operating in only six states was a critical factor, as it meant the transferee judge would be tasked with a more manageable litigation than an MDL with a potentially nationwide scope.  *Id.* at *2.  Whether the Erie litigation is sufficiently similar to the Society litigation to merit centralization is the focus of much of the parties' arguments on the present motion.

After considering the arguments of counsel,[5] we conclude that centralization of the Erie actions listed on Schedule A will serve the convenience of the parties and witnesses and further the just and efficient conduct of this litigation.  Erie is a regional carrier that operates in a somewhat

---

[4] Movants here sought reconsideration of our order denying industry-wide centralization in MDL No. 2942, seeking a show cause order as to actions involving the Erie defendants.  We denied this motion because the window for briefing an additional docket before the September 2020 hearing session had closed.  *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942 (J.P.M.L. Aug. 21, 2020), ECF No. 779.  The present motion was filed shortly thereafter.

[5] In light of the concerns about the spread of COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of December 3, 2020.  *See* Suppl. Notice of Hearing Session, MDL No. 2969 (J.P.M.L. Nov. 16, 2020), ECF No. 87.

-3-

larger geographic area than Society, encompassing thirteen jurisdictions.[6]  Policyholders bring individual and putative nationwide and statewide class actions against Erie.  These actions share common factual allegations that Erie wrongfully denied policyholders' claims for business interruption protection insurance.  Plaintiffs contend that Erie preemptively decided to deny their claims, which are brought under various property insurance policies that, depending on the provisions plaintiff has purchased, provide: (1) business income coverage, (2) civil authority coverage, and (3) extra expense coverage.  The actions therefore will require an assessment of whether COVID-19 caused any "loss" or "damage" to property, and whether any of Erie's policy exclusions apply to preclude plaintiffs' claims.  If discovery of Erie regarding the drafting and interpretation of it policies is needed, it will be common to all actions.  Thus, these actions present common factual and legal questions that support centralization.

In addition to requiring common factual questions, Section 1407 also requires that centralization promote the just and efficient conduct of the actions.  As we noted in the prior business interruption protection insurance dockets, this litigation demands efficiency.  Many plaintiffs are on the brink of bankruptcy as a result of business lost due to the COVID-19 pandemic and the government closure orders.  The most pressing question before us in these business interruption protection insurance cases, then, is whether centralization presents the most efficient means of advancing these actions towards resolution.  As with the Society litigation, we find that centralization offers the most efficient route to resolution.  There are 25 total actions pending in six states and the District of Columbia.  At most, this litigation will expand to encompass six additional states.  Furthermore, it appears that Erie employs a small number of substantially similar policies—the only difference among the policies that Erie identified in its briefing and oral argument is that some policies include a virus exclusion, while others do not. This suggests to us that this litigation presents a manageable controversy that can be best streamlined by proceeding before a single judge.

Erie argues that centralization is not appropriate because the actions involve different claims and different types of business.  The presence of additional or differing legal theories is not significant, however, when the actions arise from a common factual core.  *See In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008).  Likewise, Section 1407 does not require a complete identity or even majority of common factual and legal issues as a prerequisite to transfer.  *See In re Satyam Computer Servs., Ltd., Sec. Litig.*, 712 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010).

The opposing plaintiffs additionally argue that centralization is not appropriate because the actions likely will involve primarily legal questions.  It is possible that plaintiffs' claims can be decided on motions to dismiss without need for discovery into, for example, the drafting of the policies at issue or epidemiological modeling of the spread of COVID-19.  But centralization may be warranted even where common questions of law are prominent, as long as common factual issues

---

[6] These jurisdictions include the District of Columbia, Illinois, Indiana, Kentucky, Maryland, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia, and Wisconsin.

-4-

are present.  In such cases, "[t]he Panel must determine the extent of the common factual issues and the likelihood that centralized pretrial proceedings will create important efficiencies, avoid inconsistent rulings, and result in the overall fairer adjudication of the litigation for the benefit of all involved parties."  *In re Polar Bear Endangered Species Act Listing & § 4(d) Rule Litig.*, 588 F. Supp. 2d 1376, 1377(J.P.M.L. 2008).  Here, significant factual questions exist among the actions, and centralization will create substantial efficiencies for the parties and the courts.

All opponents of centralization argue that, should plaintiffs' claims survive dispositive rulings on policy interpretation questions, discovery will be plaintiff- and property-specific.  There may be, by necessity, some unique aspects of each case.  Were this litigation larger in geographic scope and if it involved more state laws, this might be a more persuasive argument because the transferee judge would be tasked with managing a much more complicated litigation.  As with the Society litigation, what sets this litigation apart from others in which we have denied centralization is the defined geographical scope of these actions, which implicates only thirteen jurisdictions.  The transferee judge can employ any number of pretrial techniques—including establishing state-specific tracks and selecting certain already-briefed motions in individual cases as bellwether motions—to manage any differences that the Erie actions present.

The opposing parties also assert that informal coordination among the parties and courts is preferable to formal centralization.  We do not view alternatives to centralization to be an adequate substitute for an MDL here.  There are more than two dozen cases brought by diverse counsel before twenty judges, which makes coordination difficult.  While a few actions have been transferred to the Western District of Pennsylvania by stipulation of the parties, Section 1404 does not offer a reasonable prospect of eliminating the multidistrict nature of this litigation.

We are persuaded that the Western District of Pennsylvania is an appropriate transferee district.  Both plaintiffs and defendants, either in the first instance or in the alternative, suggest this district to oversee this litigation.  The Western District of Pennsylvania is the clear center of gravity for this litigation, as the Erie defendants are headquartered there and a sizeable number of actions are pending there.  Additionally, Pittsburgh represents an accessible forum with the capacity to efficiently manage these cases.  We are confident that the Honorable Mark R. Hornak, who has not yet had the opportunity to preside over an MDL, will steer this litigation on a prudent and expeditious course.

-5-

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Western District of Pennsylvania are transferred to the Western District of Pennsylvania and, with the consent of that court, assigned to the Honorable Mark R. Hornak for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

PANEL ON MULTIDISTRICT LITIGATION


_____
Karen K. Caldwell
Chair

Catherine D. Perry          Nathaniel M. Gorton
Matthew F. Kennelly         David C. Norton
Roger T. Benitez            Dale A. Kimball

IN RE: ERIE COVID-19 BUSINESS INTERRUPTION                    MDL No. 2969
PROTECTION INSURANCE LITIGATION


## SCHEDULE A

<u>Northern District of Illinois</u>

PGB RESTAURANT, INC., ET AL. v. ERIE INSURANCE EXCHANGE,
  C.A. No. 1:20−02403
MENNS INC. v. ERIE INSURANCE EXCHANGE, ET AL., C.A. No. 1:20−02895
THE ITALIAN VILLAGE RESTAURANT, INC., ET AL. v. ERIE INSURANCE
  COMPANY, C.A. No. 1:20−03101
JERRY'S SANDWICHES AV, LLC, ET AL. v. ERIE INSURANCE COMPANY,
  C.A. No. 1:20−03249

<u>Western District of New York</u>

LASER SPA OF ROCHESTER, LLC v. ERIE INSURANCE COMPANY,
  C.A. No. 6:20−06308

<u>Eastern District of Pennsylvania</u>

LA CAMPAGNA INC. v. ERIE INSURANCE GROUP, C.A. No. 2:20−02689
SULIMAY'S HAIR DESIGN INC. v. ERIE INSURANCE EXCHANGE,
  C.A. No. 2:20−02731
HIGH TECH HAIR LLC, ET AL. v. ERIE INSURANCE EXCHANGE,
  C.A. No. 2:20−02895

<u>Western District of Pennsylvania</u>

THE LOCK LOFT, LLC v. ERIE INSURANCE EXCHANGE, C.A. No. 1:20−00122
CLOSE ENTERPRISES INC. v. ERIE INSURANCE GROUP, C.A. No. 1:20−00147
IZZY AND GAB LLC v. ERIE INSURANCE PROPERTY AND CASUALTY
  COMPANY, C.A. No. 1:20−00266
HELLO HOSPITALITY IV, LLC, ET AL. v. ERIE INSURANCE PROPERTY AND
  CASUALTY COMPANY, C.A. No. 1:20−00281

<u>Middle District of Tennessee</u>

PLEASANT FOOD, INC., ET AL. v. ERIE INSURANCE EXCHANGE,
  C.A. No. 3:20−00570