**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: ERIE COVID-19 BUSINESS | ) | |
| INTERRUPTION PROTECTION | ) | Master Docket Misc. No. 1:21-mc-00001 |
| INSURANCE LITIGATION | ) | MDL No. 2969 |
| | ) | |
| This Document Relates to: | ) | ORAL ARGUMENT REQUESTED |
| All Cases | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT**

**ALSTON & BIRD LLP**
Adam J. Kaiser
90 Park Ave., 15th Floor
New York, New York 10016-1387
Tel: (212) 210-9000
adam.kaiser@alston.com

Tiffany L. Powers
Raechel J. Bimmerle
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel.: (404)881-7000
tiffany.powers@alston.com
raechel.bimmerle@alston.com

Kristin A. Shepard
950 F Street, NW
Washington, DC 20004
Tel.: 202-239-3277
kristin.shepard@alston.com

*Lead Counsel for the Erie Defendants*

**HORST, KREKSTEIN &
RUNYON, LLC**
Robert T. Horst, Esquire
Robert M. Runyon III, Esquire
Matthew B. Malamud, Esquire
610 W. Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
(484) 243-6873
rhorst@hkr.law

rrunyon@hkr.law
mmalamud@hkr.law

**DIBELLA WEINHEIMER**
Paul K. Geer, Esquire
Richard DiBella, Esquire
Tara L. Maczuzak, Esquire
Law & Finance Building
429 Fourth Avenue, Suite 200
Pittsburgh, PA 15219
Tel.: (412) 261 2900
Fax: (412) 261 3222
pgeer@d-wlaw.com
rdibella@d-wlaw.com
tmaczuzak@d-wlaw.com

*Liaison Counsel for the Erie
Defendants*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 7

I.   PLAINTIFFS' COMPLAINT ................................................................................. 7

II.  THE TERMS OF THE POLICIES ....................................................................... 11

STANDARD OF REVIEW ............................................................................................. 17

ARGUMENT .................................................................................................................. 19

I.   PLAINTIFFS' CLAIMS GOVERNED BY NEW YORK, ILLINOIS, OHIO, AND
     TENNESSEE LAW SHOULD BE DISMISSED GIVEN THE BINDING
     DECISIONS OF THE SECOND, SIXTH, AND SEVENTH CIRCUIT COURTS
     OF APPEAL, AND CLAIMS ASSERTED ON BEHALF OF PLAINTIFFS
     WHOSE CLAIMS ARE GOVERNED BY THE OTHER RELEVANT
     JURISDICTIONS SHOULD LIKEWISE BE DISMISSED BASED ON *ERIE*
     PRINCIPLES ......................................................................................................... 19
     A.   Introduction ................................................................................................ 19
     B.   Plaintiffs' Claims Governed By New York, Illinois, Ohio, and Tennessee
          Law Should Be Dismissed Based On The Recent Second, Sixth And
          Seventh Circuit Decisions ......................................................................... 21
     C.   This Court Should Place Great Weight On The Vast Majority Of
          Decisions From The Relevant Jurisdictions Dismissing Identical Claims .......... 24

II.  PLAINTIFFS' CLAIMS FOR INCOME PROTECTION AND EXTRA
     EXPENSE COVERAGE FAIL BECAUSE THEY DO NOT PLAUSIBLY
     ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY ................. 26
     A.   Plaintiffs' Do Not—And Cannot—Allege Any Direct Physical Loss Of Or
          Physical Damage To Their Properties, Let Alone Any That Caused Any
          Business Income Loss, And Hence Cannot Satisfy The Most Basic
          Prerequisite For Coverage Under Their Policies ....................................... 28
          1.   The Direct Physical Loss Of Or Physical Damage To Covered
               Property Requirement **In** The Policies Requires A Tangible,
               Concrete Physical Harm That Has Not And Cannot Be Plausibly
               Alleged Here ...................................................................................... 28
          2.   The Policies' Period Of Restoration Clause Confirms That Direct
               Physical Loss Of Property Refers To Destruction of Property – Not
               Loss of Business Function ................................................................. 33
          3.   Invisible, Readily Cleaned Viral Particles Did Not Cause Direct
               Physical Loss or Physical Damage To Plaintiffs' Properties .................. 39
     B.   GOVERNMENT ORDERS REGULATING "NON-ESSENTIAL"
          BUSINESSES DURING THE PANDEMIC DO NOT TRIGGER
          COVERAGE UNDER THE PLAIN TERMS OF THE POLICIES .................... 46

      1.     The Government Orders Do Not Constitute Physical Loss Or Damage, And The Mere "Loss Of Use" Does Not Constitute "Physical Loss" ........................................................................... 46

      2.     Finding Coverage Based On The Governmental Orders Would Violate The Causation Requirements Set Forth In The Policies .............. 52

      3.     Finding Coverage Based On Government Orders Would Radically Expand Insurance Coverage Beyond Its Intended Bounds ...................... 54

III.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE CIVIL AUTHORITY COVERAGE ................................................................................................. 56

IV.    PLAINTIFFS CANNOT RECOVER UNDER THE SUE AND LABOR PROVISION ................................................................................................. 61

V.    THE DECLARATORY JUDGMENT CLAIMS ARE DUPLICATIVE OF THE CONTRACT CLAIMS ............................................................................... 63

VI.    PLAINTIFFS' CLAIMS ARE EXCLUDED BY THE LAW AND ORDINANCE EXCLUSION IN THE POLICY ...................................................... 63

VII.    PLAINTIFFS' CLAIMS ALSO FAIL UNDER THE ULTRAFLEX POLICY'S "VIRUS EXCLUSION" ............................................................................... 66

VIII.    THE DOCTRINE OF REASONABLE EXPECTATIONS CANNOT BE USED TO EXPAND COVERAGE UNDER PLAINTIFFS' POLICIES ................... 70

CONCLUSION .......................................................................................................... 71

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*,
  513 F. Supp. 3d 623 (W.D. Pa. 2021)..............................................................31, 59

*100 Orchard St., LLC v. Travelers Indem. Ins. Co.*,
  No. 20-CV-8452, -- F. Supp. 3d --, 2021 WL 2333244 (S.D.N.Y. June 8, 2021)..................40

*10012 Holdings v. Sentinel Ins. Co.*,
  No. 21-80-CV, **--** F. 4th --, 2021 WL 6109961 (2d Cir. Dec. 27, 2021) ........................ passim

*1210 McGavock St. Hosp., LLC v. Admiral Indem. Co.*,
  509 F. Supp. 3d 1032 (M.D. Tenn. 2020)................................................................68

*3 Squares v. Cincinnati Ins. Co.*,
  No. 20-cv-2690, 2021 WL 4437817 (N.D. Ill. Sept. 23, 2021)..............................................52

*44 Hummelstown Assocs., LLC v. Am. Select Ins. Co.*,
  No. 1:20-cv-02319, -- F. Supp. 3d --, 2021 WL 2312778 (M.D. Pa. June 7, 2021)...............51

*4431, Inc. v. Cincinnati Ins. Cos.*,
  504 F. Supp. 3d 368 (E.D. Pa. 2020) .......................................................43, 53, 59

*Abex Corp. v. Maryland Cas. Co.*,
  790 F.2d 119 (D.C. Cir. 1986) ...............................................................................22

*Acme Nashville LLC v. Cincinnati Ins. Co.*,
  No. 3:20-cv-00481, 2021 WL 4311211 (M.D. Tenn. Sept. 22, 2021) ....................................41

*ADP, LLC v. Pittman*,
  No. 19-16237 (KM) (MAH), 2019 WL 5304148 (D.N.J. Oct. 18, 2019) ...........................25

*AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*,
  503 F. Supp. 3d 602 (N.D. Ill. Nov. 25, 2020) ........................................................67

*Aggie Investments LLC v. Continental Cas. Co.*,
  No. 21-40382, 2022 WL 67333 (5th Cir. Jan. 6, 2022)...........................................................2

*Agilitas USA Inc. v. Hartford Fire Ins. Co.*,
  No. 3:21-cv-00094, 2021 WL 5084577 (M.D. Tenn. Nov. 2, 2021)....................................22

*Allied World Surplus Lines Ins. Co. v. Day Surgery LLC*,
  451 F. Supp. 3d 577 (S.D.W. Va. 2020) ..................................................................18

*Am. Guar. Liab. Ins. Co. v. Norfolk S. Ry. Co.*,
   278 F. Supp. 3d 1025 (E.D. Tenn. 2017) ............................................................18

*Am. Red Cross v. Travelers Indem. Co. of R.I.*,
   816 F. Supp. 755 (D.D.C. 1993) ........................................................................33

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................17

*Assocs. in Periodontics, PLC v. Cincinnati Ins. Co.*,
   2021 WL 1976404 (D. Vt. May 18, 2021) ...........................................................40

*ATCM Optical, Inc. v. Twin City Fire Ins. Co.*,
   513 F. Supp. 3d 513 (E.D. Pa. 2021) ............................................................32, 51

*Bachman's, Inc. v. Florists' Mut. Ins. Co.*,
   525 F.Supp.3d 984 (D. Minn. 2021)....................................................................42

*Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*,
   534 F. Supp. 3d 492 (D. Md. 2021) .................................................18, 36, 41, 52

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................17

*Benny's Famous Pizza Plus v. Sec. Nat'l Ins. Co.*,
   2021NYLJ LEXIS 667 (N.Y. Sup. Ct. July 8, 2021) ...........................................52

*Berkseth-Rojas v. Aspen Am. Ins. Co.*,
   No. 3:20-cv-0948-D, 2021 WL 2936033 (N.D. Tex. July 13, 2021) .....................43

*Biltrite Furniture, Inc. v. Ohio Security Ins. Co.*,
   No. 20-CV-656-JPS-JPS, 2021 WL 3056191 (E.D. Wis. July 20, 2021) ........60, 61

*Bluegrass Oral Health Ctr. v. Cincinnati Ins. Co.*,
   No. 1:20-CV-00120-GNS, 2021 WL 1069038 (W.D. Ky. Mar. 18, 2021).............. passim

*Bluewater Sales, LLC v. Erie Ins. Grp., et al.*,
   No. 20 CVS 00506 (N.C. Super. Ct. Feb. 9, 2021)...............................................60

*BN Farm LLC v. Cincinnati Cas. Co.*,
   No. 20-10874-MBB, 2021 WL 4488215 (D. Mass. Sept. 16, 2021)................20, 21

*Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co.*,
   No. 5:20-cv-03672-JMG, -- F. Supp. 3d --, 2021 WL 2681591 (E.D. Pa. June 29,
   2021) ...................................................................................................................51

*Boxed Foods Co. v. Cal. Cap. Ins. Co.*,
   497 F. Supp. 3d 516 (N.D. Cal. 2020) .................................................................69

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*,
   19 F.4th 1002 (7th Cir. 2021) ..................................................................2, 47, 64

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*,
   508 F. Supp. 3d 249 (N.D. Ill. Dec. 22, 2020)........................................................52

*Brian Handel D.M.D., P.C. v. Allstate Insurance Company*,
   499 F. Supp. 3d 95 (E.D. Pa. 2020) (Bartle, J.) ..............................................50, 60

*Bridal Expressions LLC v. Owners Ins. Co.*,
   528 F. Supp. 3d 775 (N.D. Ohio 2021).................................................................41

*Bridal Expressions LLC v. Owners Ins. Co.*,
   No. 21-3381, 2021 Fed. App. 0548N, 2021 WL 5575753 (6th Cir. Nov. 30, 2021)...........2, 47

*Bros., Inc. v. Liberty Mut. Fire Ins. Co.*,
   268 A.2d 611 (D.C. Ct. App. 1970).......................................................................61

*Buffalo Xerographix v. Sentinel Ins. Co.*,
   No. 1:20-cv-520, 2021 WL 2471315 (W.D.N.Y. June 16, 2021) ............................40

*Byberry Servs. & Sols., LLC v. Mt. Hawley Ins. Co.*,
   No. 20-cv-03379, 2021 WL 3033612 (N.D. Ill. July 19, 2021) ...............................63

*Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*,
   682 S.E.2d 566 (W.Va. 2009)..............................................................................18

*Carrot Love, LLC v. Aspen Specialty Ins. Co.*,
   513 F. Supp. 3d 1364 (S.D. Fla. 2021) ................................................................40

*Ceres Enters., LLC v. Travelers Ins. Co.*,
   520 F. Supp. 3d 949 (N.D. Ohio 2021).................................................................66

*Chattanooga Prof'l Baseball LLC v. Nat'l Cas. Co.*,
   No. 20-17422, 2021 WL 4493920 (9th Cir. Oct. 1, 2021) .........................................2

*Chefs' Warehouse, Inc. v. Emps. Ins. Co. of Wausau*,
   No. 20 Civ. 4825 (KPF), 2021 WL 4198147 (S.D.N.Y. Sept. 15, 2021) .............43, 52

*Chi. Title Ins. Co. v. Huntington Nat'l Bank*,
   719 N.E.2d 955 (Ohio 1999)................................................................................18

*Chief of Staff LLC v. Hiscox Ins. Co.*,
   532 F. Supp. 3d 598 (N.D. Ill. 2021) ..............................................................49, 52

*City of Phila. v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002)................................................................................25

*City of Phila. v. Lead Indus. Ass'n*,
  994 F.2d 112 (3d Cir. 1993)...............................................................24

*Clarke v. MMG Ins. Co.*,
  100 A.3d 271 (Pa. Super. Ct. 2014)....................................................33

*Clear Hearing Sols., LLC v. Cont'l Cas. Co.*,
  513 F. Supp. 3d 566 (E.D. Pa. 2021) ....................................51, 57, 59

*Cleland Simpson Co. v. Firemen's Ins. Co. of Newark*,
  140 A.2d 41 (Pa. 1958) .......................................................................61

*Combs v. Int'l Ins. Co.*,
  354 F.3d 568 (6th Cir. 2004) ..............................................................25

*Cont'l Cas. Co. v. Cole*,
  809 F.2d 891 (D.C. Cir. 1987) ............................................................33

*Cordish Cos. v. Affiliated FM Ins. Co.*,
  No. ELH-20-2419, -- F. Supp. 3d --, 2021 WL 5448740 (D. Md. Nov. 22, 2021) .....21, 41, 43

*Creative Bus. v. Covington Specialty Ins. Co.*,
  No. 2:20-cv-02452-JTF-atc, -- F. Supp. 3d --, 2021 WL 4191466 (W.D. Tenn. Sept.
  9, 2021) ...............................................................................................35

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*,
  20 F.4th 303 (7th Cir. 2021) ...........................................................2, 47

*Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*,
  520 F. Supp. 3d 1066 (N.D. Ill. 2021) ................................................40

*Crunch Logistics Inc. v. Donegal Ins. Grp.*,
  No. 5:21-cv-00639, 2021 WL 2400721 (E.D. Pa. June 11, 2021)..........66

*Curtis 1000, Inc. v. Martin*,
  197 F. App'x 412 (6th Cir. 2006) .......................................................23

*Dakota Girls, LLC v. Phila. Indem. Ins. Co.*,
  17 F.4th 645 (6th Cir. 2021) ...........................................................2, 48

*Dawn Equip. Co. v. Micro-Trak Sys., Inc.*,
  186 F.3d 981 (7th Cir. 1999) ..............................................................23

*Deer Mt. Inn LLC v. Union Ins. Co.*,
  No. 1:20-cv-0984, -- F. Supp. 3d --, 2021 WL 2076218 (N.D.N.Y. May 24, 2021)..............52

*Del. Valley Mgmt., LLC v. Cont'l Cas. Co.*,
  No. 2:20-cv-4309, 2021 WL 5235277 (E.D. Pa. Nov. 10, 2021) ......................30, 71

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
 636 F.3d 683 (5th Cir. 2011) ................................................................61

*Dino Drop, Inc. v. Cincinnati Ins. Co.*,
 No. 20-12549, 2021 WL 2529817 (E.D. Mich. June 21, 2021) ................................42

*Douglas Autotech Corp. v. Twin City Fire Ins. Co.*,
 No. 1:06-CV-448, 2007 WL 1041158 (W.D. Mich. Apr. 5, 2007) ...........................26

*Dressel v. Hartford Ins. Co. of the Midwest*,
 No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021) ...................52

*Ehrenfelt v. Janssen Pharm., Inc.*,
 737 F. App'x 262 (6th Cir. 2018) ...........................................................22

*Elite Dental Specialists PC v. State Farm & Cas. Co.*,
 No. 20-CH-05946, 2021 Ill. Cir. LEXIS 145 (Ill. Cir. Ct. Aug. 4, 2021) ..............43

*Elite Union Installations, LLC v. Nat'l Fire Ins. Co.*,
 No. 20-cv-4761 (LJL), -- F. Supp. 3d --, 2021 WL 4155016 (S.D.N.Y. Sept. 13,
 2021) ..............................................................................35

*Equity Planning Corp. v. Westfield Ins. Co.*,
 522 F. Supp. 3d 308 (N.D. Ohio 2021)............................................. passim

*Erie Ins. Exch. v. Meeks*,
 288 S.E.2d 454 (Va. 1982)...................................................................18

*Erie Railroad Company v. Tompkins*,
 304 U.S. 64 (1938)..........................................................................24

*Estes v. Cincinnati Ins. Co.*,
 No. 2:20-CV-138, 2021 WL 2292473 (E.D. Ky. June 4, 2021)................................63

*Factors Etc., Inc. v. Pro Arts, Inc.*,
 652 F.2d 278 (2d Cir. 1981)................................................................22

*Family Tacos, LLC v. Auto Owners Ins. Co.*,
 520 F. Supp. 3d 909 (N.D. Ohio 2021).......................................................41

*Finci v. Am. Cas. Co. of Reading, Pa.*,
 593 A.2d 1069 (Md. 1991) ..................................................................18

*Firenze Ventures LLC v. Twin City Fire Ins. Co.*,
 No. 20 C 4226, 2021 WL 5865710 (N.D. Ill. Dec. 10, 2021) ..........................35, 43

*Food For Thought Caterers Corp. v. Sentinel Ins. Co.*,
 524 F. Supp. 3d 242 (S.D.N.Y. 2021)........................................................40

*Founder Institute Inc. v. Hartford Fire Ins. Co.*,
    497 F. Supp. 3d 678 (N.D. Cal. 2020) ...................................................................69

*Fountain Enters. v. Markel Ins. Co.*,
    No. 2:21CV27, -- F. Supp. 3d --, 2021 WL 4999447(E.D. Va. Oct. 26, 2021)................52, 68

*Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*,
    516 F. Supp. 3d 450 (E.D. Pa. 2021) ...............................................................29, 38

*Fs Food Grp. LLC v. Cincinnati Ins. Co.*,
    No. 3:20-CV-00588-RJC-DSC, 2021 WL 5178490 (W.D.N.C. Mar. 18, 2021) ...................61

*Fuel Recharge Yourself, Inc. v. AMCO Ins. Co.*,
    No. 20-4477, 2021 WL 510170 (E.D. Pa. Feb. 11, 2021) .................................70, 71

*Fuel Univ. City, LLC v. Allied Ins. Co. of Am. & Nationwide*,
    No. 20-4478, 2021 WL 4132299 (E.D. Pa. Sept. 9, 2021) .....................................40

*Gadi v. Nationwide Mut. Ins. Co.*,
    No. 2:21-cv-04591-SVW, 2021 WL 4472842 (C.D. Cal. Aug. 17, 2021) ..........................55

*Galdi v. Encompass Ins. Co.*,
    No. 05-CV-72607, 2006 WL 3759970 (E.D. Mich. Dec. 19, 2006) ......................................25

*Gaston & Murrell Fam. Dentistry, PLLC v. Cincinnati Ins. Co.*,
    No. 3:20-cv-00776, 2021 WL 4311212 (M.D. Tenn. Sept. 22, 2021) ......................41, 43, 52

*Georgetown Dental v. Cincinnati Ins. Co.*,
    No. 1:20-cv-00383-TWP-MJD, 2021 WL 1967180 (S.D. Ind. May 17, 2021) .....................60

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
    No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) ................................2, 36, 48, 59

*Glaser v. Hartford Cas. Ins. Co.*,
    364 F. Supp. 2d 529 (D. Md. 2005) ...................................................................33

*Glat v. Nationwide Mut. Ins. Co.*,
    531 F. Supp. 3d 908 (E.D. Pa. 2021) ...................................................................71

*Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*,
    No. 21-6045, -- F.4th --, 2021 WL 6048858 (10th Cir. Dec. 21, 2021) ......................... passim

*Goodwood Brewing, LLC v. United Fire Grp.*,
    No. 3:20-cv-306-RGJ, 2021 WL 2955913 (W.D. Ky. July 14, 2021)............................20, 71

*Green Beginnings, LLC v. W. Bend Ins. Co.*,
    No. 20-CV-1661, 2021 WL 2210116 (E.D. Wis. May 28, 2021) ....................................59, 67

*Grp. Hospitalization, Inc. v. Foley*,
    255 A.2d 499 (D.C. Ct. App. 1969) ................................................................................18

*Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*,
    No. 20-2171, -- F.Supp.3d --, 2021 WL 1945712 (E.D. Pa. May 14, 2021) ..............29, 51, 66

*Hamilton Jewelry, LLC v. Twin City Fire Ins. Co.*,
    No. 8:20-cv-02248-PWG, 2021 WL 4214837 (D. Md. Sept. 16, 2021) ................................71

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*,
    495 F. Supp. 3d 1289 (N.D. Ga. 2020) ........................................................................31, 55

*High 5 Sportswear, Inc. v. H5G, LLC*,
    237 F. Supp. 3d 674 (S.D. Ohio 2017) ...........................................................................33

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.*,
    497 F. Supp. 3d 1203 (S.D. Ala. 2020) ..........................................................................55

*Huggins By Huggins v. Sea Ins. Co.*,
    710 F. Supp. 243 (E.D. Wis. 1989) ................................................................................26

*IM Stein Inc., et al. v. Society Ins.*,
    No. 20 CH 301 (Ill. Cir. Ct. Nov. 15, 2021) ...............................................................20, 67

*Image Dental, LLC v. Citizens Ins. Co. of Am.*,
    No. 20-cv-02759, -- F.Supp.3d --, 2021 WL 2399988 (N.D. Ill. June 11, 2021) ..............52, 65

*In re Dow Corning Corp.*,
    778 F.3d 545 (6th Cir. 2015) ........................................................................................23

*In re Society Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
    521 F. Supp. 3d 729 (N.D. Ill. 2021) ........................................................................19, 20

*In Re WorldCom, Inc. Sec. Litig.*,
    336 F. Supp. 2d 310 (S.D.N.Y. 2004) ............................................................................23

*In re Zurich Am. Ins. Co.*,
    No. 21-0302, 2021 WL 4473398 (6th Cir. Sept. 29, 2021) .................................................2

*Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*,
    944 F.2d 940 (D.C. Cir. 1991) .....................................................................................23

*Independence Rest. Grp v. Certain Underwriters at Lloyd's, London.*,
    513 F. Supp. 3d 525 (E.D. Pa. 2021) ....................................................................30, 34, 51

*Indiana Repertory Theatre v. Cincinnati Cas. Co.*,
    No. 21A-PL-628, 2022 WL 30123 (Ind. Ct. App. Jan. 4, 2022) ......................................2, 34

*Infinity Real Estate, LLC v. Travelers Excess & Surplus Lines Co.*,
No. 20-6398, 2021 WL 4169417 (E.D. Pa. Sept. 13, 2021) ............................................40, 46

*Inns-by-the-Sea v. Cal. Mut. Ins. Co.*,
71 Cal. App. 5th 688 (2021) ........................................................................................ passim

*Insolia v. Phillip Morris, Inc.*,
216 F.3d 596 (7th Cir. 2000) ................................................................................................25

*Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*,
No. 5:20-cv-06165-JMG, -- F. Supp. 3d --, 2021 WL 1945713 (E.D. Pa. May 14,
2021) ..........................................................................................................................51, 64, 65

*Islands Rests., LP v. Affiliated FM Ins. Co.*,
532 F. Supp. 3d 948 (S.D. Cal. Apr. 2, 2021).......................................................................55

*Jackson v. Johns-Manville Sales Corp.*,
781 F.2d 394 (5th Cir.), *cert. denied*, 478 U.S. 1022 (1986).................................................25

*JD Cinemas, Inc. v. Northfield Ins. Co.*,
2021 WL 2626973 (N.Y. Sup. Ct. Mar. 5, 2021) ............................................................52, 65

*JDL Inc. v. Valley Forge Ins. Co*,
No. 20-CV-02681, 2021 WL 4477914 (N.D. Ill. Sept. 30, 2021) ..........................................62

*JMR Hldgs, LLC v. Valley Forge Ins. Co.*,
No. 2:21-cv-00839-JDW, 2021 WL 3722264 (E.D. Pa. Aug. 23, 2021) ...............................34

*John Gore Org. v. Fed. Ins. Co.*,
No. 21-CV-2200 (PGG) (KHP), 2021 U.S. Dist. LEXIS 236278 (S.D.N.Y. Dec. 8,
2021) ......................................................................................................................................63

*Johnson Press of Am., Inc. v. N. Ins. Co. of N.Y.*,
791 N.E.2d 1291 (Ill. App. Ct. 1st Dist. 2003) .....................................................................17

*Julie's Inc. v. Hanover Ins. Grp.*,
No. 1:20CV853, 2021 WL 2312532 (M.D.N.C. June 7, 2021)...............................................71

*Kahn v. Pennsylvania National Mutual Casualty Insurance Company*,
517 F. Supp. 3d 315 (M.D. Pa. 2021) .......................................................................32, 35, 37

*Kessler Dental Assoc., P.C. v. Dentists Ins. Co.*,
505 F. Supp.3d 474 (E.D. Pa. 2020) ...............................................................................40, 58

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
535 F. Supp. 3d 152 (W.D.N.Y. 2021) .................................................................................40

*King's Palace v. Certain Underwriters at Lloyd's*,
   No. 2:20-cv-02629, -- F. Supp. 3d --, 2021 WL 4483798 (W.D. Tenn. Sept. 1, 2021) .. passim

*L&J Mattson's Co. v. Cincinnati Ins. Co.*,
   536 F.Supp.3d 307 (N.D. Ill. Apr. 29, 2021) .......................................................................40

*Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*,
   537 F. Supp. 3d 780 (E.D. Pa. 2021) ............................................................................51, 71

*LDWB #2 LLC v. FCCI Ins. Co.*,
   No. 1:20-CV-425-LY, 2021 WL 2744568 (W.D. Tex. July 1, 2021) ...................................55

*Leo v. Kerr-McGee Chem. Corp.*,
   37 F.3d 96 (3d Cir. 1994)....................................................................................................24

*LGW, LLC v. Cincinnati Ins. Co.*,
   No. 3:20-cv-00481, 2021 WL 4320487 (M.D. Tenn. Sept. 22, 2021) ...................................41

*Lineberry v. State Farm Fire & Cas. Co.*,
   885 F. Supp. 1095 (M.D. Tenn. 1995)..................................................................................33

*M&E Bakery Hldgs, LLC v. Westfield Nat'l Ins. Co.*,
   538 F. Supp. 3d 816 (N.D. Ill. May 7, 2021) .......................................................................67

*Maggios Famous Pizza, Inc. v. Selective Ins. Co.*,
   No. 20-2603, 2021 WL 6051562 (E.D. Pa. Dec. 21, 2021).................................32, 35, 56, 69

*Manchester Bidwell Corp. v. Cincinnati Ins. Co.*,
   No. 2:21-251, 2021 U.S. Dist. LEXIS 162724 (W.D. Pa. Aug. 27, 2021)............................30

*Mangia Rest. Corp. v. Utica First Ins. Co.*,
   148 N.Y.S.3d 606 (N.Y. Sup. Ct. 2021) .....................................................................4, 16, 40

*Mareik Inc. v. State Farm Fire & Cas. Co.*,
   537 F. Supp. 3d 818 (E.D. Pa. 2021) ...................................................................................51

*Martinez v. Allied Ins. Co. of Am.*,
   483 F. Supp. 1189 (M.D. Fla. 2020)....................................................................................69

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
   20 F.4th 311 (7th Cir. 2021) .............................................................................................2, 67

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
   884 N.E.2d 1130 (Ohio Ct. App. 2008)................................................................................44

*Melcorp, Inc. v. W. Am. Ins. Co.*,
   No. 20 C 4839, 2021 WL 2853371 (N.D. Ill. July 8, 2021) ..................................................52

*Mellon Bank, N.A. v. Ternisky*,
  999 F.2d 791 (4th Cir. 1993) .......................................................................22

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
  506 F. Supp. 3d 168 (S.D.N.Y. 2020).....................................................21, 35, 52

*Midwest Orthodontic Assocs. v. Cincinnati Cas. Co.*,
  No. 3:20-cv-01167-GCS, -- F. Supp. 3d --, 2021 WL 4489308 (S.D. Ill. Sept. 30,
  2021) ..........................................................................................................35

*MIKMAR, Inc. v. Westfield Ins. Co.*,
  520 F. Supp. 3d 933 (N.D. Ohio 2021).........................................................65

*Miller v. Boston Ins. Co.*,
  218 A.2d 275 (Pa. 1966) ............................................................................17

*Moody v. Hartford Fin. Grp., Inc.*,
  513 F. Supp. 3d 496 (E.D. Pa. 2021) .................................................. passim

*Morrison v. YTB Int'l, Inc.*,
  2010 WL 1948193 (S.D. Ill. May 13, 2010).....................................................25

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  15 F.4th 885 (9th Cir. 2021) .................................................................2, 36, 48

*N & S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*,
  499 F. Supp. 3d 74 (D.N.J. 2020) ...............................................................69

*N. Am. Accident Ins. Co. v. Plummer*,
  176 A. 466 (Md. 1935) ...............................................................................18

*Nail Nook, Inc. v. Hiscox Ins. Co.*,
  No. CV-20-933244, -- N.E. 3d --, 2021 WL 5709971 (Ohio Ct. App. Dec. 2, 2021)..............2

*Napleton River Oaks Cadillac Inc., et al. v. Erie Ins. Prop. & Cas. Co., et al.*,
  No. 20 L 6777 (Ill. Cir. Ct. Aug. 23, 2021) .....................................................41, 49

*Nationwide Mut. Ins. Co. v. Hatfield*,
  No. 5:03-0083, 2005 WL 2978046 (S.D.W. Va. Nov. 7, 2005)...............................33

*Neri v. State Farm Fire & Cas. Co.*,
  No. 19-0355, 2019 WL 3821538 (E.D. Pa. Aug. 13, 2019) ....................................63

*Newchops Restaurant Comcast LLC v. Admiral Indem. Co.*,
  507 F. Supp. 3d 616 (E.D. Pa. 2020) ................................................... passim

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014)..............................................................29

*Northview Motors, Inc. v. Chrysler Motors Corp.*,
   227 F.3d 78 (3d Cir. 2000)..................................................................................24

*Northwell Health, Inc. v. Lexington Ins. Co.*,
   No. 21-cv-1104 (JSR), -- F. Supp. 3d--, 2021 WL 3139991 (S.D.N.Y. July 26, 2021)....17, 43

*Nowell v. Medtronic, Inc.*,
   No. 19-2073, 2021 WL 4979300 (10th Cir. Oct. 27, 2021) ...................................................25

*Office Sols. Grp. LLC v. Nat'l Fire Ins. Co.*,
   No. 1:20-cv-4736-GHW, -- F. Supp. 3d --, 2021 WL 2403088 (S.D.N.Y. June 11,
   2021) .........................................................................................................57, 60

*On Air Ent. Corp. v. Nat'l Indem. Co.*,
   210 F.3d 146 (3d Cir. 2000)..................................................................................25

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
   2 F.4th 1141 (8th Cir. 2021) ...............................................................2, 34, 38, 48

*Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*,
   527 F.Supp.3d 1142 (N.D. Cal. 2021) ...................................................................42

*Park Place Hosp., LLC v. Cont'l Ins. Co.*,
   No. 20 C 6403, 2021 WL 3549770 (N.D. Ill. Aug. 10, 2021)..........................................43, 50

*Park Place Master Tenant, LLC v. Am. Zurich Ins. Co.*,
   No. 21 C 2471, 2021 WL 5038777 (N.D. Ill. Oct. 29, 2021) ................................................67

*Penn Asian Senior Servs. v. Selective Ins. Co.*,
   No. 20-4919, 2021 WL 4478215 (E.D. Pa. Sept. 30, 2021).......................................46, 69, 70

*Peters Twp. Sch. Dist. v. Harford Acc. & Indem. Co.*,
   833 F.2d 32 (3d Cir. 1987)...................................................................................17

*Phila. Parking Auth. v. Fed. Ins. Co.*,
   385 F. Supp. 2d 280 (S.D.N.Y. 2005) ...................................................................37

*Pizza Loves Emily Holdings, LLC v. Cincinnati Ins. Co.*,
   No. 3:20-cv-00429, 2021 WL 4311213 (M.D. Tenn. Sept. 22, 2021) ............................41, 52

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*,
   485 F. Supp. 3d 1225 (C.D. Cal. 2020) ...........................................................54, 55

*Poughkeepsie Waterfront Dev., LLC v. Travelers Indem. Co. of Am.*,
   No. 20-CV-4890 (KMK), 2021 WL 4392304 (S.D.N.Y. Sept. 24, 2021) ............................52

*Project Lion LLC v. Badger Mut. Ins. Co.*,
   No. 2:20-cv-00768-JAD-VCF, 2021 WL 2389885 (D. Nev. May 19, 2021).........................21

*Protégé Rest. Partners LLC v. Sentinel Ins. Co.*,
   517 F. Supp. 3d 981 (N.D. Cal. 2021) ...................................................................39

*Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*,
   499 F. Supp. 3d 1178 (S.D. Fla. 2020) ...............................................................69

*RDS Vending LLC v. Union Ins. Co.*,
   No. 20-3928, -- F. Supp. 3d --, 2021 WL 1923024 (E.D. Pa. May 13, 2021) ........................43

*Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*,
   499 F. Supp. 3d 288 (S.D. Miss. 2020)...............................................................27

*Renaissance/The Park, LLC v. Cincinnati Ins. Co.*,
   No. 3:20-cv-864-RGJ, 2021 WL 4429796 (W.D. Ky. Sept. 27, 2021) ................................49

*Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.*,
   No. 20 CV 50284, 2021 WL 346423 (N.D. Ill. Jan. 19, 2021)................................60

*Rose's 1, LLC v. Erie Ins. Exchange*,
   2020 WL 4589206 (D.C. Super. Aug. 6, 2020)............................................43, 50, 52

*Rosebud Rest., Inc. v. QBE N. Am.*,
   No. 20 C 5526, 2021 WL 4264382 (N.D. Ill. Sept. 20, 2021)................................68

*Round Guys Brewing Co. v. Cincinnati Ins. Co.*,
   No. 20-6252, 2021 WL 4306027 (E.D. Pa. Sept. 22, 2021)...............................46, 62

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
   302 A.D.2d 1 (N.Y. App. Div. 1st Dep't 2002).........................................18, 23, 24

*Ryan v. Royal Ins. Co. of Am.*,
   916 F.2d 731 (1st Cir. 1990) ........................................................................25

*S. Kitchen Nashville, LLC v. Cincinnati Ins. Co.*,
   No. 3:20-cv-00497, 2021 WL 4320567 (M.D. Tenn. Sept. 22, 2021) ...................................41

*Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*,
   20 F.4th 327 (7th Cir. 2021) ...................................................................... passim

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
   15 F.4th 398 (6th Cir. Sept. 22, 2021) .......................................................... passim

*Sanzo Enters. LLC v. Erie Ins. Exch.*,
   No. 21-CAE-06-0026, -- N.E.3d --, 2021 WL 5816448 (Ohio Ct. App. Dec. 7, 2021).. passim

*Selane Prods. v. Cont'l Cas. Co.*,
   No. 21-55123, 2021 WL 4496471 (9th Cir. Oct. 1, 2021) ...................................2, 56

*Selective Way Ins. Co. v. Travelers Prop. Cas. Co. of Am.*,
724 F. Supp. 2d 520 (E.D. Pa. 2010) ...................................................................33

*Servedio v. Travelers Cas. Ins. Co. of Am.*,
No. 20-CV-3907-LTS-SDA, 2021 WL 5772148 (S.D.N.Y. Dec. 6, 2021) ...........................67

*SFDG LLC v. Cincinnati Ins. Co.*,
No. 1:20-cv-237, -- F. Supp. 3d --, 2021 WL 4057573 (E.D. Tenn. Aug. 31, 2021) ........35, 43

*Skillets, LLC v. Colony Ins. Co.*,
524 F. Supp. 3d 484 (E.D. Va. 2021) ...................................................................40

*Smeez, Inc. v. Badger Mut. Ins. Co.*,
No. 20-cv-1132-DWD, 2021 WL 3476402 (S.D. Ill. Mar. 22, 2021) ...................................52

*Sojo's Studios, Inc. v. Citizens Ins. Co.*,
No. 20 C 4780, 2021 WL 837623 (N.D. Ill. Mar. 4, 2021) .......................................67

*Soundview Cinemas Inc. v. Great Am. Ins. Grp.*,
142 N.Y.S.3d 724 (N.Y. Sup. Ct. 2021) ..............................................................52

*Spearman Indus. Inc. v. St. Paul Fire & Marine Ins. Co.*,
138 F. Supp. 2d 1088 (N.D. Ill. 2001) ...............................................................33

*Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*,
609 F.3d 223 (3d Cir. 2010)............................................................................25

*Spector Gadon Rosen Vinci P.C. v. Valley Forge Ins. Co.*,
No. 1636, 2021 Phila. Ct. Com. Pl. LEXIS 16 (June 17, 2021) ...................................51

*Spring House Tavern, Inc. v. Am. Fire & Cas. Co.*,
No. 20-2872, -- F. Supp. 3d --, 2021 WL 2473939 (E.D. Pa. June 16, 2021) ..................17, 51

*SSN Hotel Mgmt., LLC v. Hartford Mut. Ins. Co.*,
533 F. Supp. 3d 260 (E.D. Pa. 2021) ..................................................................67

*Star Buick GMC v. Sentry Ins. Grp.*,
No. 5:20-cv-03023, -- F. Supp. 3d --, 2021 WL 2134289 (E.D. Pa. May 26, 2021)...30, 67, 70

*State Street Rest. Grp. v. Cincinnati Cas. Co.*,
No. 3:20-CV-816, 2021 U.S. Dist. LEXIS 220028 (M.D. Pa. Nov. 15, 2021) ......................32

*Streule v. Norfolk & Dedham Mut. Fire Ins. Co.*,
264 A.2d 296 (D.C. Ct. App. 1970)....................................................................18

*SunTrust Mortg., Inc. v. AIG United Guar. Corp.*,
800 F. Supp. 2d 722 (E.D. Va. 2011) ..................................................................18

*Sys. Optics v. Twin City Fire Ins. Co.*,
No. 5:20-cv-1072, 2021 WL 2075501 (N.D. Ohio May 24, 2021) ........................................35

*Tappo of Buffalo v. Erie Ins. Co.*,
2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020) .......................................................................50

*TAQ Willow Grove, LLC v. Twin City Fire Ins.*,
513 F. Supp. 3d 536 (E.D. Pa. 2021) ............................................................................. passim

*Terry Black's Barbecue, LLC, et al. v. State Auto. Mut. Ins. Co.*,
No. 21-50078, -- F.4th --, 2022 WL 43170 (5th Cir. Jan. 5, 2022) ........................2, 27, 34, 47

*Thinkfood Grp. LLC v. Travelers Prop. Cas. Co. of Am.*,
No. 8:20-cv-02201-PWG, 2021 WL 4478725 (D. Md. Sept. 30, 2021) ....................57, 60, 68

*TJBC, Inc. v. Cincinnati Ins. Co.*,
No. 20-cv-815-DWD, 2021 WL 243583 (S.D. Ill. Jan. 25, 2021) .........................................52

*Tomaszewski v. Trevena, Inc.*,
482 F. Supp. 3d 317 (E.D. Pa. 2020) ....................................................................................11

*Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*,
503 F. Supp. 3d 251 (E.D. Pa. 2020) .......................................................................35, 46, 58

*Transcontinental Ins. Co. v. Caliber One Indem. Co.*,
367 F. Supp. 2d 994 (E.D. Va. 2005) ....................................................................................33

*Tria WS LLC v. Am. Auto Ins. Co.*,
530 F. Supp. 3d 533 (E.D. Pa. 2021) ...............................................................................35, 55

*Troy Stacy Enters. v. Cincinnati Ins. Co.*,
No. 1:20-cv-312, -- F. Supp. 3d --, 2021 WL 4346688 (S.D. Ohio Sept. 24, 2021) ....... passim

*Twelve Nashville, LLC v. Cincinnati Ins. Co.*,
No. 3:20-cv-00423, 2021 WL 4320433 (M.D. Tenn. Sept. 22, 2021) ...................................41

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*,
513 F. Supp. 3d 549 (E.D. Pa. 2021) ......................................................................32, 37, 51

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
498 F.Supp.3d 878 (S.D.W. Va. 2020) .............................................................................36, 41

*United Airlines, Inc. v. Ins. Co.*,
385 F. Supp. 2d 343 (S.D.N.Y. 2005), *aff'd*, 439 F.3d 128 (2d Cir. 2006) ..........................61

*United Nat'l Ins. Co. v. Faure Bros. Corp.*,
949 N.E.2d 1185 (Ill. App. Ct. 2011) ....................................................................................17

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
   475 F. App'x. 569 (6th Cir. 2012) ...................................................................44, 45

*Valley Lo Club Ass'n v. Cincinnati Ins. Co.*,
   No. 20-cv-04790, 2021 WL 4477892 (N.D. Ill. Sept. 30, 2021) ............................57

*Valley v. CNA Fin. Corp.*,
   No. 20 CV 6073, 2021 WL 4340987 (S.D.N.Y. Sept. 22, 2021) ...........................62

*Variety Inc. v. Axis Ins. Co.*,
   No. 20-4571, 2021 WL 1174917 (E.D. Pa. Mar. 29, 2021) .............................51, 67

*Vinart Mgmt. Co. v. Emps. Mut. Cas. Co.*,
   No. 20-2954, 2021 WL 3033819 (E.D. Pa. July 19, 2021) ...................................71

*Vizza Wash, LP v. Nationwide Mut. Ins. Co.*,
   496 F. Supp. 3d 1029 (W.D. Tex. 2020)................................................................69

*VZA, LLC v. Cincinnati Ins. Co.*,
   No. 3:20-cv-01046-GCS, -- F. Supp. 3d --, 2021 WL 4489311 (S.D. Ill. Sept. 30,
   2021) .....................................................................................................................35

*Waiting Room Sols., LLLP v. Excelsior Ins. Co.*,
   No. 19-CV-7978 (CS), 2020 WL 5505386 (S.D.N.Y. Sept. 9, 2020) ....................33

*Walnut Ace, LLC v. Seneca Ins. Co.*,
   No. 20-5023, 2021 WL 4477158 (E.D. Pa. Sept. 29, 2021)............................46, 65

*Warwick v. Aspen Am. Ins. Co.*,
   Civil Action No. 2:21-cv-250, 2021 WL 4821981 (W.D. Pa. Oct. 15, 2021).........46

*Wash. Exec. Servs. v. Hartford Cas. Ins. Co.*,
   No. 20-2119 (TJK), -- F. Supp. 3d--, 2021 WL 4439060 (D.D.C. Sept. 28, 2021)................67

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
   499 F. Supp. 3d 670 (N.D. Cal. 2020) ..................................................................21

*Wexler Knitting Mills v. Atl. Mut. Ins. Co.*,
   555 A.2d 903 (Pa. Super. Ct. 1989)......................................................................70

*Whiskey Flats Inc. v. Axis Ins. Co.*,
   519 F. Supp. 3d 231 (E.D. Pa. 2021) ........................................................... passim

*Wild Eggs Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co.*,
   No. 3:20-CV-501-RGJ, 2021 WL 4234940 (W.D. Ky. Sept. 16, 2021) .................60

*Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*,
   No. 3:20-cv-80, 2021 WL 1061849 (W.D. Pa. Mar. 18, 2021)..............................51

*Windy City Limousine Co., LLC v. Cincinnati Fin. Corp.*,
  No. 20-cv-04901, 2021 WL 4806384 (N.D. Ill. Oct. 14, 2021) ........................................20, 48

*WM Bang LLC v. Travelers Cas. Ins. Co. of Am.*,
  No. 20-CV-4540 (KMK), -- F. Supp. 3d --, 2021 WL 4150844 (S.D.N.Y. Sept. 13,
  2021) ...............................................................................................................................57, 59

*Woolworths Nashville, LLC v. Cincinnati Ins. Co.*,
  No. 3:20-cv-00396, 2021 WL 4320307 (M.D. Tenn. Sept. 22, 2021) ...................................41

*Zagafen Bala, LLC v. Twin City Fire Ins. Co.*,
  513 F. Supp. 3d 581 (E.D. Pa. 2021) .......................................................................32, 39, 51

*Zajas, Inc. v. Badger Mut. Ins. Co.*,
  No. 20-cv-1055-DWD, 2021 WL 1102403 (S.D. Ill. Mar. 23, 2021) ....................................52

*Zebra Techs. Corp. v. Factory Mut. Ins. Co.*,
  No. 20-cv-05147, 2021 WL 4459532 (N.D. Ill. Sept. 29, 2021)............................................40

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................................................17

Fed. R. civ. P. 8..........................................................................................................................17

## OTHER AUTHORITIES

*Couch On Insurance* § 148.46 (3d ed. 2019)..............................................................................28

**INTRODUCTION**

Plaintiffs' Consolidated Amended Complaint ("CAC") fails to state a claim and should be dismissed.  Plaintiffs' lawsuit represents their attempt to shift their alleged economic losses due to the COVID-19 pandemic—and the resulting government orders regulating businesses during the pandemic—to Erie, which insured "direct physical loss of or damage to" Plaintiffs' *property*.  The policies at issue, however, do not cover these alleged losses.  To trigger coverage, there must, at a minimum, be a direct and accidental *physical* loss of or *physical* damage to the insured premises, which requires some form of tangible property damage to the insured premises that caused the alleged business loss.  That did not occur here.

These policies were designed to insure property, with additional coverages (business income, civil authority, extra expense) to insure business losses caused by the direct and accidental physical damage *to property*.  So, for example, these policies cover property damage— and business income losses flowing from property damage—caused by fire, hurricanes, and the like.  They do not, in contrast, cover economic losses that are not caused by the direct and accidental physical damage to property.  Thus, standing alone, bad weather or a seasonal flu outbreak that impacts a business's sales and profits are not covered losses, because those events do not cause direct and accidental physical damage to the insured's property.

*Every appeals court* in the country to have considered the operative question, including the Second, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh federal appellate circuits (and three state appeals courts—Ohio, California, and Indiana), has ruled that there is no coverage under policies that are virtually identical to the policies at issue here—the Ultrapack Plus policy (the "Ultrapack") and the Ultraflex policy (the two policies are similar; the Ultraflex has a "virus

exclusion").[1]  These appeals courts decisions follow hundreds of state and federal trial court decisions dismissing identical suits seeking business income, civil authority and extra expense coverage under the same policy language, and for good reason: coverage for mere *loss of use* of property relating to the COVID-19 pandemic and resulting government orders does not trigger the coverage afforded by these insurance contracts.  It is not the bargain that the policyholders

---

[1] All appeals courts have to date ruled in favor of insurers, rejecting all of the arguments made by Plaintiffs here.  These decisions include:

**Second Circuit:**  *10012 Holdings v. Sentinel Ins. Co.*, No. 21-80-CV, **--** F. 4th --, 2021 WL 6109961 (2d Cir. Dec. 27, 2021).

**Fifth Circuit:** *Terry Black's Barbecue, LLC, et al. v. State Auto. Mut. Ins. Co.*, No. 21-50078, -- F.4th --, 2022 WL 43170 (5th Cir. Jan. 5, 2022); *Aggie Investments LLC v. Continental Cas. Co.*, No. 21-40382, 2022 WL 67333 (5th Cir. Jan. 6, 2022).

**Sixth Circuit:** *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. Sept. 22, 2021); *In re Zurich Am. Ins. Co.*, No. 21-0302, 2021 WL 4473398 (6th Cir. Sept. 29, 2021); *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645 (6th Cir. 2021); *Bridal Expressions LLC v. Owners Ins. Co.*, No. 21-3381, 2021 Fed. App. 0548N, 2021 WL 5575753 (6th Cir. Nov. 30, 2021).

**Seventh Circuit:** *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002 (7th Cir. 2021); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303 (7th Cir. 2021); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311 (7th Cir. Dec. 9, 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021).

**Eighth Circuit**: *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021).

**Ninth Circuit**: *Chattanooga Prof'l Baseball LLC v. Nat'l Cas. Co.*, No. 20-17422, 2021 WL 4493920 (9th Cir. Oct. 1, 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021); *Selane Prods. v. Cont'l Cas. Co.*, No. 21-55123, 2021 WL 4496471 (9th Cir. Oct. 1, 2021).

**Tenth Circuit**: *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, No. 21-6045, -- F.4th --, 2021 WL 6048858 (10th Cir. Dec. 21, 2021).

**Eleventh Circuit**: *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021).

**California Appeals court**: *Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688 (2021).

**Ohio Appeals court**: *Nail Nook, Inc. v. Hiscox Ins. Co.*, No. CV-20-933244, -- N.E. 3d --, 2021 WL 5709971 (Ohio Ct. App. Dec. 2, 2021); *Sanzo Enters. LLC v. Erie Ins. Exch.*, No. 21-CAE-06-0026, -- N.E.3d --, 2021 WL 5816448 (Ohio Ct. App. Dec. 7, 2021).

**Indiana Appeals court**: *Indiana Repertory Theatre v. Cincinnati Cas. Co.*, No. 21A-PL-628, 2022 WL 30123 (Ind. Ct. App. Jan. 4, 2022).

struck when the coverage was purchased.  The few trial court cases that have permitted these suits to continue are outlier cases that have been repeatedly rejected by scores of other courts (and *all* appeals courts).[2]  Moreover, practically every federal district court in Pennsylvania and the other jurisdictions implicated in the CAC has ruled, just like all appeals courts, that there is no coverage under these policies. What's more, with the exception of a single trial court opinion in Pennsylvania that is currently on appeal, every court has ruled that *Erie's* policies in particular do not cover the losses claimed by policyholders.

These courts have made plain that coverage for business losses does not exist under these policies because neither the pandemic nor the governmental orders constitute an accidental and direct physical loss of or damage to the insured's property.  Rather, alleged business losses were caused by the government, in the exercise of its lawful powers, imposing regulations on "non-essential" businesses that were designed to impede the spread of the virus.  Those government orders did not inflict any direct physical damage to any property.

At core, Plaintiffs, like policyholders across the country, have sought coverage—unsuccessfully—on two bases.  *One*, they argue that governmental orders regulating businesses during the pandemic (*e.g.,* limiting restaurants to take-out, delivery, and drive-thru service only) trigger coverage under these policies.  *See* CAC ¶¶ 2, 182.  *Two*, they argue that the pandemic—and the possibility that virus was at their premises or could be transmitted there—rendered their premises "unusable" for its intended purpose.  *Id.* ¶¶ 81, 190.  These two arguments boil down to this: the pandemic and governmental orders regulating business during the pandemic resulted in

---

[2] For example, the court in the *Society* MDL (which is the only other COVID-19 MDL), which is in the Northern District of Illinois, is an outlier case in which the court sided with policyholders on the issue of the business interruption coverage, but the Seventh Circuit just issued four opinions rejecting coverage (the practical effect of which was to end the *Society* MDL).

a *loss of use*, that is, the insureds' alleged inability to use their premises to conduct business as usual.

The overwhelming majority of courts have outright rejected these arguments and have articulated numerous reasons for concluding that no coverage exists.  *First*, the basic insuring agreement limits coverage to "direct physical 'loss' of or damage to Covered Property."  Courts have held that the term "physical" modifies both "loss" and "damage," and thus for any coverage to apply, there must be either a "physical loss" or "physical damage" to the "Covered Property."  Using basic dictionary definitions, common usage, and settled precedent, practically every court—and every appeals court—has concluded that "physical loss" means the complete physical destruction or theft of the property (as in a hurricane completely destroying a building) and that "physical damage" means damage that is physical that does not result in a total loss (as in a fire that partially destroys a building).  That is, for coverage to be triggered, there must be some *tangible, physical* damage to property—damage that either completely or partially destroys the covered property.  Because neither the governmental orders regulating business during the pandemic nor the potential presence of the virus caused any "physical loss" or "physical damage" to the covered property, there can be no coverage.

*Second*, this interpretation is the only one that harmonizes other provisions of the policy, as it must under hornbook rules of insurance contract interpretation.  For example, the policies contain provisions that limit coverage to the period of time it takes to "rebuild, repair or replace" the covered property.  These provisions expressly contemplates that the "physical loss" or "physical damage" to the property can be rebuilt, repaired or replaced so that the business can begin resuming operations.  Courts across the country have noted that the policyholders' interpretation of the policy renders such clauses meaningless surplusage, in violation of settled

canons of contract construction, because under their interpretation coverage exists even if there is nothing that needs to be rebuilt, repaired or replaced.

*Third*, courts have recognized that the governmental orders regulating business cannot constitute a "direct physical loss" or "direct physical damage" to covered property because the orders themselves do not constitute anything "physical"; they are just laws or the application of laws regulating how property can be used.  As courts have reasoned, the government regulates businesses all the time.  For restaurants, for example, they can (and do) regulate how many people can be in a restaurant, what days or hours a restaurant can open, and whether a restaurant can serve alcohol, among many other types of regulations.  Those governmental rules and regulations may impact sales, but they do not trigger coverage.  If, for example, a government decreases the hours a restaurant can operate, or limits its capacity, or bans smoking in the restaurant, the insurer is not bound to make up the difference in lost profits.  The orders regulating businesses during the pandemic were just another type of governmental order.  If government orders regulating business were sufficient to trigger coverage, coverage would be triggered every time the government issues a regulation impacting a business's operations.  That has never been, and is not, the law.  Moreover, under this view a "loss" and a "*physical* loss" would mean the same thing, which would render the word "physical" meaningless surplusage.

*Fourth*, courts have rejected the "unusable" argument because COVID-19 did *not* render any business property unusable.  If that were true, every business (and every home) would have been "unusable" during the pandemic (and would be unusable now, as the pandemic rages on).  But that is not what happened.  During the pandemic—which continues to this day as over 1,000 people a day continue to die from COVID-19—scores of businesses remained open (and all are open now).  Depending on the state, drug stores, supermarkets, big box stores (like Wal Mart and

Home Depot), convenience stores, hospitals, office buildings, hotels, etc. remained open for business precisely because their buildings were *usable*, even if they happened to have a confirmed case of COVID-19 on the property as many businesses did. Restaurants were using their buildings to prepare food for take-out, delivery and drive-thru service, thus laying bare the fallacy that their premises were "unusable." The only thing that changed was that the government issued regulations on how (and for other businesses, when) certain "non-essential" businesses could operate.

In fact, after the governmental orders were lifted, businesses began to reopen even though the pandemic was raging on, something that could not have occurred if, as Plaintiffs argue, the pandemic rendered their premises "unusable." Moreover, several states did not issue governmental orders at all, or they were very limited (*e.g.,* Arkansas, Iowa, Nebraska, North Dakota, South Dakota, Utah, and Wyoming). If the coronavirus made property unusable, businesses in those states would have shut down too; and all property would remain unusable now. The "unusable" argument has no legs.

*Fifth*, courts have continually rejected plaintiffs' efforts to analogize the coronavirus to asbestos and other scattershot cases involving "invisible" substances that may render premises uninhabitable, which may trigger coverage under some states' laws. In those situations, the invisible substances are tethered to some form of tangible, physical damage that is not present here, *e.g.*, a physically damaged HVAC system releasing carbon monoxide, or physically damaged asbestos in a building releasing asbestos fibers throughout a premises. That is totally unlike the coronavirus, which is untethered to any physical damage to the covered property. The virus—like the common cold or the flu—is an organic substance that does not damage property. It only damages people.

6

Indeed, Plaintiffs admit, as we all know from our everyday experience over the past almost two years, that "some cleaning products will both inactivate and remove COVID-19 from surfaces." CAC ¶ 120. Thus, unlike asbestos, noxious fumes, or carbon monoxide, the presence of the coronavirus does not make any premises "uninhabitable" or "unusable." Businesses impacted by the government orders were habitable and usable, just like the "essential" businesses (hospitals, government buildings, grocery stores, big box stores, etc.) that weren't impacted by the government orders were habitable and usable. The only difference between the two is that lawmakers decided that people should gather in some places, but not others, in an effort to stifle the spread of the virus. Those government decisions do not trigger coverage.

*Sixth*, the policies (including the Erie policies) expressly exclude coverage for losses caused "[b]y the enforcement of or compliance with any *law or ordinance* regulating the ... *use of any property*" (emphasis added). As courts have held, this exclusion directly applies to the insureds' claimed losses, which are expressly premised on complying with laws regulating the use of property. And this exclusion buttresses the conclusion that the policies were not intended to cover the precise situation here, that is, where the claimed loss is due and owing to an insured's compliance with a law affecting the "*use*" of property.

*Seventh*, and finally, the Ultraflex policy has an express "virus exclusion" that independently and undeniably excludes coverage here, if any existed as a threshold matter. As virtually every court has held, the type of virus exclusion in Erie's policies precludes coverage. Hence, the claims asserted by Ultraflex Plaintiffs should be dismissed for that additional reason.

## STATEMENT OF FACTS

## I.   PLAINTIFFS' COMPLAINT

Plaintiffs filed the CAC on October 28, 2021, asserting claims on behalf of themselves and a putative class relating to Erie's denials of coverage for Plaintiffs' losses incurred "[b]ecause

of the global COVID-19 pandemic and government orders mandating the discontinuance of 'non-essential' businesses[.]"  CAC ¶ 1.  Plaintiffs allege that as a result of the "Mandated Shutdown Rules"—executive orders issued in their respective jurisdictions by local, state, and federal authorities intended to curb the spread of the virus causing COVID-19—"Plaintiffs' business operations temporarily closed either partially or fully" causing "substantial loss of business income."  CAC ¶ 131, 180-182.  Plaintiffs allege that their covered properties "suffered direct physical loss of or damage because of the Mandated Shutdown Rules" and that the "Mandated Shutdown Rules, in and of themselves, constitute a Covered Cause of Loss."  *Id*. ¶ 188.

Plaintiffs alternatively argue that "to the extent the Mandated Shutdown Rules do not constitute a Covered Cause of Loss within the meaning of the Policy, the COVID-19 public health emergency and the ubiquitous nature of the COVID-19 virus caused a direct physical loss or damage to Plaintiffs' Covered Property."  *Id*. ¶ 189.  Plaintiffs claim that such direct physical loss of or damage occurred as "the Covered Properties were rendered unusable for their intended use and purpose because the highly contagious nature of COVID-19."  *Id*. ¶ 190.

Plaintiffs seek declarations on behalf of themselves and the putative class that the policies provide coverage for their business interruption losses.  *Id.*, Counts I-II.  Plaintiffs also assert claims for breach of contract based on Erie's denial of their insurance claims.  *Id.*, Counts III-IV.[3] While the CAC alleges (¶ 16) that Erie issues relevant policies in thirteen jurisdictions, Plaintiffs allege losses at their businesses located only in the following nine jurisdictions: Pennsylvania,

---

[3] Plaintiffs further bring several state-specific statutory and common law claims for bad faith insurance claims handling (CAC, Counts V-VIII).  Pursuant to the parties' Stipulation approved by the Court [Dkt. No. 236], where the parties agreed to stay those claims pending a decision on this motion, Erie does not address the bad faith claims in this brief.

8

Illinois, Maryland, New York,  Ohio, Tennessee, Virginia, West Virginia, and Washington, D.C.[4]

|  | POLICYHOLDER | STATE | POLICY TYPE | TYPE OF STORE |
|---|---|---|---|---|
| 1 | Amy Cobb d/b/a Cobb's Second Time Around Thrift Shop | Pennsylvania | Ultrapack | Retail Thrift Store |
| 2 | Balough Enterprises d/b/a Honey Baked Ham & Café | Pennsylvania | Ultrapack | Restaurant |
| 3 | Close Enterprises d/b/a Close Auto Sales | Pennsylvania | Ultraflex | Car Dealership |
| 4 | High Tech Hair LLC | Pennsylvania | Ultrapack | Hair Salon |
| 5 | Cappuccino Pizzeria Ristorante t/a La Villa | Pennsylvania | Ultrapack | Restaurant |
| 6 | Izzy and Gab LLC | Pennsylvania | Ultrapack | Retail Store |
| 7 | La Campagna Ristorante, Inc. | Pennsylvania | Ultraflex | Restaurant |
| 8 | Saturno, LLC d/b/a Modern Male Barber Shop | Pennsylvania | Ultrapack | Barber Shop |
| 9 | Sidelines Beer House | Pennsylvania | Ultrapack | Restaurant |
| 10 | Sulimay's Hair Design, Inc. | Pennsylvania | Ultrapack | Hair Salon |
| 11 | Shadyside Choices, Inc. d/b/a Choices | Pennsylvania | Ultraflex | Retail Store |
| 12 | Halstead Street Deli Holdings, LLC | Illinois | Ultrapack | Restaurants |
| 13 | Highland Park Ford Lincoln | Illinois | Ultraflex | Car Dealership |
| 14 | Jerry's Sandwiches LS, LLC | Illinois | Ultrapack | Restaurant |
| 15 | Joianna, Inc. d/b/a Tannis Wine Bar | Illinois | Ultraflex | Wine Bar |
| 16 | North Branch Pizza and Burger Company | Illinois | Ultrapack | Restaurant |
| 17 | PGB Restaurant, Inc. d/b/a Mother's Day Restaurant | Illinois | Ultrapack | Restaurant |
| 18 | The Italian Village Restaurant, Inc. | Illinois | Ultrapack | Restaurant |
| 19 | Capitanini Real Estate Investments, Inc. | Illinois | Ultrapack | Restaurant |
| 20 | Menns Inc. d/b/a The Tavern on Clark | Illinois | Ultrapack | Restaurant |
| 21 | Hutch & Associates, Inc. d/b/a Hutch's Restaurant | New York | Ultrapack | Restaurant |
| 22 | Delaware Restaurant Holdings, LLC d/b/a Remington Tavern & Seafood Exchange | New York | Ultrapack | Restaurant |

---

[4] Plaintiffs also purport to bring claims on behalf of classes of all Erie Ultrapack and Ultraflex policies, which would presumably include policyholders in North Carolina, Indiana, Wisconsin, and Kentucky.  But none of the named Plaintiffs have businesses in those states, and the law of those states thus has no impact on this Court's disposition of the CAC.

| 23 | Tappo of Buffalo, LLC | New York | Ultrapack | Restaurant |
|---|---|---|---|---|
| 24 | Tappo Pizza, LLC | New York | Ultrapack | Restaurant |
| 25 | Lock Loft LLC | Ohio | Ultrapack | Restaurant |
| 26 | Valerio's, Inc d/b/a Valerio's Restaurant | Ohio | Ultrapack | Restaurant |
| 27 | Fairmount Inc. d/b/a The Fairmount | Ohio | Ultrapack | Restaurant |
| 28 | MZ-DC, Inc. | Washington DC | Ultrapack | Restaurant |
| 29 | Teemnow LLC d/b/a Exiles | Washington DC | Ultraflex | Restaurant |
| 30 | Hello Hospitality IV, LLC d/b/a St Arnolds | Washington DC | Ultraflex | Restaurant |
| 31 | Hello Hospitality III, LLC d/b/a St Arnolds Mussel Bar | Washington DC | Ultraflex | Restaurant |
| 32 | Three Little Pigs Bar-B-Q Inc. d/b/a Three Little Pigs Bar B Cue | Tennessee | Ultrapack | Restaurant |
| 33 | Pleasant Food, Inc. d/b/a Sidelines Grill Pleasant View | Tennessee | Ultrapack | Restaurant |
| 34 | C&G, Inc. d/b/a Sidelines Grill Ashland | Tennessee | Ultrapack | Restaurant |
| 35 | Plantation Pub, Inc. | Tennessee | Ultrapack | Restaurant |
| 36 | Annex Road Group, Inc. d/b/a Hillwood Pub | Tennessee | Ultrapack | Restaurant |
| 37 | DTAG, Inc. d/b/a Crow's Nest | Tennessee | Ultrapack | Restaurant |
| 38 | JDA Pub, Inc. d/b/a Joe's Place | Tennessee | Ultrapack | Restaurant |
| 39 | Dimitrios Zavogiannis d/b/a Gondola Restaurant | Tennessee | Ultrapack | Restaurant |
| 40 | Rose Glam Hair Studio | Virginia | Ultrapack | Hair Salon |
| 41 | Hello Hospitality VI, LLC d/b/a St. Arnold's Mussel Bar Bethesda | Maryland | Ultrapack | Restaurant |
| 42 | Cirque Due Cheveux, LLC | West Virginia | Ultrapack | Hair Salon |
| 43 | Tri-State Tint & Vinyl, LLC | West Virginia | Ultrapack | Automotive Window Tinting business |

LEGAL02/41279884v24

## II.  THE TERMS OF THE POLICIES

The CAC brings claims under both forms of Erie's policies—the Ultrapack and the Ultraflex (collectively, the "Policies").  Both Policies are similar, with the main difference relevant here being that the Ultraflex policy includes a "virus exclusion."[5]

The Policies provide commercial property protection.  The Policies expressly set forth the basic "Insuring Agreement," which provides:

> **SECTION I – COVERAGES**
>
> **INSURING AGREEMENT**
>
> We will pay for direct physical "loss" of or damage to Covered Property at the premises described in the "Declarations" caused by or resulting from a peril insured against.

*See* Kaiser Decl. Ex. A at ERIE 000012, Ex. B at EIE-Close 0022.   The term "Covered Property" is defined and includes only things that are *physical*, including the building on the insured premises "and anything permanently attached" to it.  *See* Ex. A at ERIE 000012, Ex. B at EIE-Close 0022.  "Covered Property" also includes other *physical* attributes of the insured premises, like certain "[p]ersonal property," "[v]egetated roofs," "glass" that is "part of the building," and "[e]xterior signs, lights and clocks" that are "permanently attached to the building(s)."  *See* Ex. A at ERIE 000012, Ex. B at EIE-Close 0022.  The policies, in short, cover *physical property*. They do not cover anything else (unless explicitly stated therein).

---

[5] Plaintiffs attached portions of each form of policy to their Complaint.  To be complete, Erie submits the entire form of Ultrapack policy issued to Plaintiff PGB Restaurant, Inc. and the entire form of Ultraflex policy issued to Close Auto Sales, which are attached, respectively, as Exhibits A and B to the declaration of Adam J. Kaiser submitted herewith.  Because Plaintiffs base claims on these policies and incorporate them by reference, this Court may consider the full policies on this motion. *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 326 (E.D. Pa. 2020).

Thus, as set forth above, as a basic prerequisite to trigger any coverage, the Insuring Agreement plainly requires (i) a direct physical loss of or damage to (ii) Covered Property (which is physical property) (iii) that was caused by "a peril insured against" (which is discussed below).

Under "Section I – Coverages" of the Policies, there are three basic coverages under the Policies referred to as "Coverage 1" (which insures the buildings and things permanently attached to it), "Coverage 2" (which insures business personal property and the property of others), and "Coverage 3" (income protection coverage). *See* Ex. A at ERIE 000012-15, Ex. B at EIE-Close 0022-25. This case concerns Coverage 3, which has three subparts—"Income Protection Coverage," "Extra Expense Coverage" and "Civil Authority Coverage." *See* Ex. A at ERIE 000014-15, Ex. B at EIE-Close 0024-25. Plaintiffs seek coverage under each of the three subparts of Coverage 3.

As set forth above, the Insuring Agreement requires that, for any coverage, there be a "direct physical 'loss' of or damage to Covered Property at the premises described in the 'Declarations' *caused by or resulting from a peril insured against*." (emphasis added). These requirements apply to all three Coverages in the Policies. The "perils" referred to in the Insuring Agreement are identified in Section II of the Policies (the "Perils Clause"), and for Coverage 3— at issue here—the Policies identify the "peril" as follows:

> **SECTION II - PERILS INSURED AGAINST ….**
>
> **INCOME PROTECTION - COVERAGE 3**
>
> **Covered Cause of Loss**
>
> This policy insures against direct physical "loss", except "loss" as excluded or limited in this policy.

*See* Ex. A at ERIE 000015, Ex. B at EIE-Close 0026.

The Policies define "loss" as used in the Insuring Agreement and Perils Clause as "direct and accidental loss of or damage to covered property." *Id*. Ex. A at ERIE 000048, Ex. B at EIE-

Close 0056.  Consequently, under the plain terms of the Policies, insured perils for Coverage 3 are limited to "direct and accidental" physical losses and physical damage to the physical Covered Property.

The Policies provide more detailed information as to what is covered in each of the three subparts of Coverage 3.  The Income Protection Coverage is defined as:

> **INCOME PROTECTION - COVERAGE 3**
>
> **A.  Income Protection Coverage**
>
> Income Protection means loss of "income" and/or "rental income" you sustain due to partial or total "interruption of business" resulting directly from "loss" or damage to property on the premises described in the "Declarations" from a peril insured against.

*Id*. Ex. A at ERIE 000014, Ex. B at EIE-Close 0024 (the "Income Protection Clause").  As with the Insuring Agreement and Perils Clause, the Policies' Income Protection Clause expressly tethers any coverage—here, income protection coverage at the heart of this case—to losses "resulting directly from" "loss" (which, as set for immediately above, requires a "direct and accidental" "physical" loss) or physical  "damage" to physical property.

The Income Protection Clause uses the term "interruption of business," defined as:

> • "Interruption of business" means the period of time that your business is partially or totally suspended and it:
>
>   1. Begins with the date of direct "loss" to covered property caused by a peril insured against; and
>
>   2. Ends on the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality.

*Id*. Ex. A at ERIE 000048, Ex. B at EIE-Close 0056.  Hence, along with the Insuring Agreement and Perils Clause, the Income Protection Clause expressly requires some form of direct and accidental physical loss or damage to physical property that is capable of being repaired, rebuilt, or replaced, as a basic trigger for any coverage to exist.

The Policies also afford Extra Expense Coverage as follows:

| |
|---|
| **B.    Extra Expense Coverage** |
| "Extra expense" coverage is provided at the premises described in the "Declarations". |
| "Extra expense" means necessary expenses you incur due to partial or total "interruption of business" resulting directly from "loss" or damage to property on the premises described in the "Declarations" from a peril insured against … |

*Id*. Ex. A at ERIE 000014, Ex. B at EIE-Close 0024 (the "Extra Expense Clause").

Hence, along with the Insuring Agreement and Perils Clause, the Extra Expense Clause expressly requires some form of direct and accidental physical loss or damage to the Covered Property.  This coverage is designed to reimburse insureds for the "necessary and actual" extra expenses where there is damage to the Covered Property and the insured incurs extra expenses in "continu[ing] … business operations" at the same or at "replacement premises or at temporary locations."  *Id*. Ex. A at ERIE 000014, Ex. B at EIE-Close 0024.   If, for example, there is a wind or hail storm at a restaurant causing damage to the property, resulting in a loss of business, the Income Protection Coverage would insure any business income loss resulting from the storm, while the Extra Expense Coverage would cover expenses the insured would incur if it continued operating the restaurant, such as setting up outdoor dining facilities and, under some circumstances, the cost of renting out new space to conduct restaurant activities.

14

The Policies provide Civil Authority Coverage as follows:

> **C.     Additional Coverages**
>
> **1.     Civil Authority**
>
> When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:
>
> a.     Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and
>
> b.     The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id*. Ex. A at ERIE 000015, Ex. B at EIE-Close 0025. Civil Authority coverage, on its face, is limited and applies to situations where, for example, there is a fire and the fire department closes the entire street in order to ensure that first responders and repair professionals can access the damaged building.

For *all* coverages under Coverage 3, coverage is limited to the time it would take to repair or replace damaged property. This is set forth in the both the Ultrapack and Ultraflex policies, through the Income Protection Clause and the corresponding definition of "interruption of business," which provide coverage only until "the date when the covered property should be *repaired, rebuilt, or replaced* with reasonable speed and similar quality."  *Id*. Ex. A at ERIE 000048, Ex. B at EIE-Close 0056.   (emphasis added).

In addition, the Ultrapack policy contains an additional clause, as follows:

> **D. Amount of Insurance …**
>
> We will pay the actual income protection loss for … [t]he time period required to rebuild, repair or replace such part of the Building or Business Personal Property that has been damaged or destroyed as a direct result of an insured peril

*See* Ex. A at ERIE 000056.  The definition of "interruption of business" in both Policies, and the "Amount of Insurance" clause set forth above in the Ultrapack, will be collectively referred to herein as the "period of restoration clauses."  These clauses expressly contemplate the direct and accidental physical loss of or damage to the insured's physical property that can be rebuilt, repaired or replaced after it was damaged or destroyed.

The Ultrapack and Ultraflex policies have at least two applicable exclusions.

*First*, the Policies contain a "Law and Ordinance Exclusion," which states:

> **SECTION III – EXCLUSIONS**
>
> **A.    Coverages 1, 2 and 3**
>
> We do not cover under … Income Protection – Coverage 3 "loss" or damage caused directly or indirectly by any of the following  …
>
> 10.  By the enforcement of or compliance with any law or ordinance regulating the construction, use, or repair of any property …

*See* Ex. A at ERIE 000015-17; Ex. B at EIE-CLOSE 0026-27.  Under this exclusion, there is no coverage if the loss or damage is caused by the enforcement or compliance with any law "regulating the …use … of any property."  For example, if a government agency requires a business to ban smoking on premises, shut its doors to fix its HVAC system, rid a restaurant of vermin, close shop on Sundays, or reduce the capacity of people allowed in the business at any time, there is no coverage for any lost business income resulting from that government action.

16

*Second*, the Ultraflex Policy has a virus exclusion that provides:

> **SECTION III – EXCLUSIONS**
> ***
>
> **B.**  **Coverages 1, 2,** and **3**
>
>   We do not cover under Building(s) – Coverage 1, Business Personal
>   Property and Personal Property of Others – Coverage 2, and
>   Additional Income Protection – Coverage 3 "loss" or damage caused:
> ***
>
> 16.   By or resulting from any virus, bacterium, or other microorganism that
>   induces or is capable of inducing physical distress, illness, or disease.

*See* Ex. B at EIE-Close 0029.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) requires dismissal of any complaint that fails to allege a plausible and legally cognizable claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. The "complaint must raise a right to relief above the speculative level into the realm of plausible liability." *Twombly*, 550 U.S. at 555. Plaintiffs fall far short of these elementary pleading standards.

Every insured bears the initial burden of proving that it suffered a loss that falls within the risks against which its insurance policy affords coverage. *Peters Twp. Sch. Dist. v. Harford Acc. & Indem. Co.*, 833 F.2d 32, 37 (3d Cir. 1987) (citing *Miller v. Boston Ins. Co.*, 218 A.2d 275 (Pa. 1966)).[6] Only if the insured makes this *prima facie* showing does the burden shift to the

---

[6] **Pennsylvania**: *Spring House Tavern, Inc. v. Am. Fire & Cas. Co.*, No. 20-2872, -- F. Supp. 3d --, 2021 WL 2473939, at *2 (E.D. Pa. June 16, 2021) ("[A]n insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage").
**Illinois**: *Johnson Press of Am., Inc. v. N. Ins. Co. of N.Y.*, 791 N.E.2d 1291, 1298 (Ill. App. Ct. 1st Dist. 2003); *United Nat'l Ins. Co. v. Faure Bros. Corp.*, 949 N.E.2d 1185, 1191 (Ill. App. Ct.1st Dist. 2011).
**New York**: *Northwell Health, Inc. v. Lexington Ins. Co.*, 2021 WL 3139991, at *4 (S.D.N.Y. July 26, 2021) ("[The insured] bears the burden of showing that the Policies covered the claimed cost

insurance company to prove the application of an exclusion. *Id.* Plaintiffs cannot state a plausible claim of income protection or extra expense coverage, as they do not plausibly allege that either the government orders or the COVID-19 virus caused direct physical loss of or damage to their covered properties. They also fail to state a claim for civil authority coverage because they do not allege direct physical loss of or damage to nearby property or that such damage caused government authorities to issue orders that prohibited access to the insured premises. Even if Plaintiffs could establish such coverage, however, their losses would be excluded by the Policies' Law and Ordinance exclusion. And under the Ultraflex Policy, Plaintiffs' losses are also excluded by that Policy's virus exclusion.

---

or loss"); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (N.Y. App. Div. 1st Dep't 2002).

**Ohio**: *See Chi. Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999); *Sanzo Enters. LLC*, 2021 WL 5816448, at *9.

**Washington DC**: *Streule v. Norfolk & Dedham Mut. Fire Ins. Co.*, 264 A.2d 296, 297 (D.C. Ct. App. 1970); *Grp. Hospitalization, Inc. v. Foley*, 255 A.2d 499, 501 (D.C. Ct. App. 1969) ("[G]enerally our cases hold that to recover benefits under an insurance policy the burden is on the insured to prove coverage under the contract.").

**Tennessee**: *Am. Guar. Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1038 (E.D. Tenn. 2017) ("When resolving coverage disputes, an insured carries the burden of showing their claim fits within the insurance policy…").

**Virginia**: *Erie Ins. Exch. v. Meeks*, 288 S.E.2d 454, 456-57 (Va. 1982); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 800 F. Supp. 2d 722, 731 (E.D. Va. 2011), *aff'd*, 508 F. App'x 243 (4th Cir. 2013).

**Maryland**: *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, 534 F. Supp. 3d 492, 510 (D. Md. 2021); *N. Am. Accident Ins. Co. v. Plummer*, 176 A. 466, 469 (Md. 1935); *Finci v. Am. Cas. Co. of Reading, Pa.*, 593 A.2d 1069, 1087 (Md. 1991).

**West Virginia**: *Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*, 682 S.E.2d 566, 574 (W.Va. 2009); *Allied World Surplus Lines Ins. Co. v. Day Surgery LLC*, 451 F. Supp. 3d 577, 584 (S.D.W. Va. 2020).

**ARGUMENT**

I.  **PLAINTIFFS' CLAIMS GOVERNED BY NEW YORK, ILLINOIS, OHIO, AND TENNESSEE LAW SHOULD BE DISMISSED GIVEN THE BINDING DECISIONS OF THE SECOND, SIXTH, AND SEVENTH CIRCUIT COURTS OF APPEAL, AND CLAIMS ASSERTED ON BEHALF OF PLAINTIFFS WHOSE CLAIMS ARE GOVERNED BY THE OTHER RELEVANT JURISDICTIONS SHOULD LIKEWISE BE DISMISSED BASED ON *ERIE* PRINCIPLES**

   A.  **Introduction**

   Typically, the MDL Court will be alone in addressing particular and unique claims against a single or group of defendants, thus depriving other federal courts of jurisdiction to tackle identical issues, and with contemporaneous state court proceedings often stayed pending the resolution of the MDL (or at the least with the MDL Court, with liaison counsel, coordinating with state court judges).[7]  This MDL proceeding is very different.  The JPML created only two COVID-19 MDLs for two insurers—this one and the *Society* MDL, leaving every other district court (and thus numerous federal appeals courts) and every state court to address the very issues before the two MDLs contemporaneously.

   The court in the *Society* MDL took an activist approach and issued an early outlier decision in favor of policyholders, finding (erroneously) that business income losses could be covered by commercial property coverage.  *In re Society Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729, 746-47 (N.D. Ill. 2021) (dismissing extra expense, civil authority and sue and labor claims, but not dismissing claims for business interruption coverage claims because loss of use without any tangible damage could support coverage).  All of the court's prior work in the *Society* MDL seems now to have been for naught, as the Seventh Circuit

---

[7] Plaintiffs sought and obtained the appointment of "Liaison Counsel," *see* Dkt. No. 174, but to date Liaison Counsel has done *nothing* to coordinate this MDL with any state court proceeding, while in fact seeking—along with Lead Plaintiffs' Counsel—to push state court cases (including seeking class certification of insureds that are members of the putative class pleaded in the CAC), without the slightest regard for this proceeding.

recently ruled that there is no business income coverage under the circumstances present here because, among other reasons, commercial property coverage does not provide business income coverage in the absence of a tangible, physical loss.[8]  And even before the Seventh Circuit spoke, federal courts flatly rejected the *Society* MDL opinion.[9]  Illinois state courts were even more direct in their criticism.  *See, e.g., IM Stein Inc., et al. v. Society Ins.*, No. 20 CH 301 (Ill. Cir. Ct. Nov. 15, 2021) (Kaiser Dec., Ex. C) (rejecting *In re Society,* noting that the court's "insertion of an entire phrase ['loss of use of property'] that does not exist in the policy into the policy would be problematic, but it reads as nonsensical when applied in conjunction with other relevant portions of the policy.").

This Court, unlike the *Society* MDL, has taken a more conservative approach, allowing case law to develop before making dispositive rulings in this case.  And developed the case law has.  *Every appeals court* in the country to rule on these issues has held that policyholders are not covered for their alleged business losses under policies that are—in all respects material to this litigation—similar if not identical to Plaintiffs' policies.  *Hundreds* of state and federal courts have come to the same conclusion, while roundly criticizing the few outlier cases (such as *In re Society*) that have strained to permit claims of understandably sympathetic policyholders to continue.[10]  Now that so many appeals courts have unanimously spoken, and a vast body of case

---

[8] *See, e.g., Sandy Point*, 20 F.4th at 332 ("Whatever 'loss' means, it must be physical in nature … It is thus no surprise that the overwhelming majority of courts, including the four circuits that have so far spoken on the issue, have adopted this interpretation …").

[9] *See, e.g., Windy City Limousine Co., LLC v. Cincinnati Fin. Corp.*, No. 20-cv-04901, 2021 WL 4806384, at *7-8 (N.D. Ill. Oct. 14, 2021) (rejecting *In re Society* because the term "'physical loss' … require[s] a tangible physical alteration to property") (citation omitted); *Goodwood Brewing, LLC v. United Fire Grp.*,  No. 3:20-cv-306-RGJ, 2021 WL 2955913, at *6 n.3 (W.D. Ky. July 14, 2021) (rejecting *In re Society*, noting it has "been rejected by numerous courts").

[10] *See, e.g., Inns-by-the-Sea*, 71 Cal. App. 5th at 692 ("The *overwhelming majority of federal district court cases* find no possibility of coverage under commercial property insurance policies for a business's pandemic-related loss of income); *BN Farm LLC v. Cincinnati Cas. Co.*, No. 20-

law has developed, this Court may now address the issues with the benefit of all that precedent and helpful analysis.

### B. Plaintiffs' Claims Governed By New York, Illinois, Ohio, and Tennessee Law Should Be Dismissed Based On The Recent Second, Sixth And Seventh Circuit Decisions

Plaintiffs' claims under New York, Illinois, Ohio, and Tennessee law should be dismissed under controlling precedent in the Second, Sixth, and Seventh Circuits. Significantly, eleven of the Plaintiffs bring claims under Illinois law, four Plaintiffs bring claims under New York law, three Plaintiffs bring claims arising under Ohio law, and eight Plaintiffs bring claims under Tennessee law. New York falls within the Second Circuit, Illinois falls within the Seventh Circuit, and Ohio and Tennessee fall within the Sixth Circuit. So, twenty-six of the forty-three Plaintiffs bring claims under state laws that have been definitively ruled upon by the relevant federal appeals court with jurisdiction over those states. Under settled federal jurisprudence, this Court should defer to the decisions of the Second, Sixth, and Seventh Circuits that have already

---

10874-MBB, 2021 WL 4488215, at *12-13 (D. Mass. Sept. 16, 2021) ("The *majority of courts* addressing insurance coverage for business income losses related to COVID-19 conclude that the presence of the virus either at a property or on surfaces at the property does not constitute a 'physical loss' or 'physical damage' … Moreover, '*a majority of courts across the country*' conclude 'that restrictions on the use of an insured's property *due to government orders* are not 'physical losses'[.]"); *Project Lion LLC v. Badger Mut. Ins. Co.*, No. 2:20-cv-00768-JAD-VCF, 2021 WL 2389885, at *3 (D. Nev. May 19, 2021) ("So I find, alongside the *vast majority of courts nationwide*, that their policies do not provide coverage for the pure economic losses they've suffered due to COVID-19-related business closures."); *Cordish Cos. v. Affiliated FM Ins. Co.*, No. ELH-20-2419, -- F. Supp. 3d --, 2021 WL 5448740, at *17 (D. Md. Nov. 22, 2021) ("The *overwhelming majority of federal courts* to consider similar claims have concluded that neither the presence of the virus in the buildings, nor the governmental orders associated with COVID-19, caused or constitute physical loss or damage to property for purposes of insurance coverage."); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 179 (S.D.N.Y. 2020) ("*nearly every court* to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property"); *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 499 F. Supp. 3d 670, 673 (N.D. Cal. 2020) ("I will follow the *overwhelming majority of courts* that have determined that the mere threat of coronavirus cannot cause a 'direct physical loss of or damage to' covered property as required under the Policy.") (all emphasis added).

issued multiple dispositive rulings that require dismissal of claims arising under New York, Illinois, Ohio, and Tennessee law.[11]

The law is well established that where a circuit court of appeals makes a determination concerning the laws of a state within that circuit, "the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 282-83 (2d Cir. 1981) (determining that Second Circuit should defer to the views of the Sixth Circuit concerning Tennessee law unless it could point to a clear basis in Tennessee law for predicting that the Tennessee courts, when confronted with a similar case, would conclude the Sixth Circuit's prediction was incorrect). *See also Ehrenfelt v. Janssen Pharm., Inc.*, 737 F. App'x 262, 265 (6th Cir. 2018) ("If our sister circuit whose boundaries include the relevant state has ruled on the issue, we 'usually defer' to that interpretation '[u]nless the home circuit has 'disregarded clear signals emanating from the state's highest court pointing towards a different rule.'"").[12]

---

[11] While the two Sixth Circuit decisions applied Ohio and not Tennessee law, they apply with equal weight to Tennessee. The Sixth Circuit decisions are not based on Ohio-specific case law or jurisprudence. Rather, the Sixth Circuit applied the plain terms of the policy and relied upon general principles of contract construction. Indeed, since the Sixth Circuit issued its first of two decisions dismissing identical claims, district courts in Tennessee have applied that decision as binding, noting that, while it was issued under Ohio law, its reasoning and holding is fully applicable to cases brought under Tennessee law. *See, e.g., Agilitas USA Inc. v. Hartford Fire Ins. Co.*, No. 3:21-cv-00094, 2021 WL 5084577, at *6 (M.D. Tenn. Nov. 2, 2021) (following *Santo's Italian Café*, 15 F.4th at 402, decided under Ohio law, because "[t]he Sixth Circuit found that neither the coronavirus nor the government shutdown orders created a direct physical loss of property or direct physical damage to it explaining that 'a loss of use simply is not the same as a physical loss.'") (citation omitted).

[12] *See also Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 796 (4th Cir. 1993) (deferring to Third Circuit's interpretation of Pennsylvania law); *Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119, 125-26 (D.C. Cir. 1986) ("we will defer to the local circuit's view of the law of a state in its

This jurisprudence recognizes that a federal appeals court is likely to have significantly greater expertise than a district court outside the circuit in predicting the local law under its jurisdiction. *Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940, 944-45 (D.C. Cir. 1991) ("the assumption of expertise on the part of the home circuit, have led us to conclude that a home circuit's view of state law is entitled to deference").  And this rule of deference avoids federal courts creating inconsistent rulings in state law. *In re Dow Corning Corp.*, 778 F.3d 545, 549 (6th Cir. 2015) ("[u]nless the home circuit has 'disregarded clear signals emanating from the state's highest court pointing towards a different rule' we will avoid creating 'the oddity of a split in the circuits over the correct application' of one state's law.'")  Thus, some district courts have held that "a federal court *is bound* by another court of appeals' interpretations while sitting in diversity of the law of a state within its bounds." *In Re WorldCom, Inc. Sec. Litig.*, 336 F. Supp. 2d 310, 317 (S.D.N.Y. 2004) (emphasis added) (internal quotation omitted).

For these reasons, unless Plaintiffs can clearly demonstrate that the highest courts of New York, Ohio, Illinois, and Tennessee would reject the Second, Sixth, and Seventh Circuit decisions, this Court, respectfully, should defer to those appeals courts and apply their decisions.[13]  Applying

---

jurisdiction when that circuit has made a reasoned inquiry into state law, unless we are convinced that the court has ignored clear signals emanating from the state courts."); *Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 422, n.4 (6th Cir. 2006) ("we give the Eleventh Circuit's analysis of state law within its circuit deference"); *Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 989, n.3 (7th Cir. 1999) ("we normally defer to a sister circuit's interpretation of the law of a state within its jurisdiction").

[13] And Plaintiffs cannot possibly make such a showing.  Take New York as an example.  There, the Second Circuit noted that the seminal case in New York, *Roundabout Theatre Co.*, squarely rejected a policyholder's argument that "loss of use" could satisfy a policy's "physical loss" requirement, where a construction accident in nearby property caused no damage to the policyholder's property, but resulted in a government order closing the street, thus prohibiting patrons from entering the theater, resulting in business income losses.  *10012 Holdings,* 2021 WL 6109961, at *2-3.  The Second Circuit held that under ordinary *Erie* principles it would follow *Roundabout*, and that was especially true since *Roundabout* has (by New York courts) been "uniformly applied since the start of the COVID-19 pandemic to deny coverage."  *Id.* at *3.

deference is not only consistent with the case law set forth above, but only fair to Erie. Had the Illinois, Ohio, New York, and Tennessee cases not been transferred to this Court as part of this MDL, those cases would now be dismissed based on binding appellate precedent.

### C. This Court Should Place Great Weight On The Vast Majority Of Decisions From The Relevant Jurisdictions Dismissing Identical Claims

In the decades following the Supreme Court's seminal decision in *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), federal courts have set forth guidance on how courts sitting in diversity cases ought to approach divining state law, which includes relying on appellate and trial court decisions from the relevant jurisdiction, majority views, trends in the law, and other sources. This guidance is especially important here, given that so many states' laws are involved and, while this MDL has been pending, hundreds of state and federal courts have reached the almost unanimous conclusion that coverage does not exist.

Federal courts sitting in diversity should "not engage in judicial activism" but should instead apply state law as it has developed. *See, e.g., Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 101 (3d Cir. 1994) (citing *City of Phila. v. Lead Indus. Ass'n*, 994 F.2d 112 (3d Cir. 1993)). As a corollary rule, "a federal court in a diversity case should be reluctant to expand state common law." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 n.7 (3d Cir. 2000). "[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent."

---

Indeed, "all New York courts applying New York law … have soundly rejected the argument that business closures … due to New York State Executive Orders constitute physical loss or damage to property." *Id.* The Second Circuit concluded that, there was no reason to believe that New York's highest court would reach a different result. *Id.* at *4. "We therefore hold, in accord with *Roundabout Theatre* and every New York state court … that under New York law the terms 'direct physical loss' and 'physical damage' in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises …those terms instead require actual physical loss of or damage to the insured's property." *Id.* Plaintiffs have no credible argument that this Court, contrary to the Second Circuit, should predict that New York's highest court would find coverage.

*City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002); *Morrison v. YTB Int'l, Inc.*, 2010 WL 1948193, at *2 (S.D. Ill. May 13, 2010) ("Correspondingly, when a federal court sitting in diversity jurisdiction applies the law of the forum state, considerations of federalism dictate that the federal court do so in a conservative manner.").  As one court has stated, "Federal courts are loathe to fiddle around with state law. … district courts are encouraged to dismiss actions based on novel state law claims … When confronted with a state law question that could go either way, the federal courts usually choose the narrower interpretation that restricts liability." *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 607 (7th Cir. 2000).[14]

Moreover, courts sitting in diversity should give "due regard" to decisions of the state's lower courts.  *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 237 (3d Cir. 2010).  Indeed, in the absence of appellate authority, federal courts often look to trial court decisions as compelling evidence as to how the state's highest court would rule.  *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.), *cert. denied*, 478 U.S. 1022 (1986).  Federal district courts may, in divining state law, rely not only upon the decisions of other courts, but also the "general weight and trend of authority."  *On Air Ent. Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 150 (3d Cir. 2000) ("… it is appropriate for the court to consider other state court decisions, federal decisions, and the general weight and trend of authority.").[15]  And,

---

[14] *See Galdi v. Encompass Ins. Co.*, No. 05-CV-72607, 2006 WL 3759970, at *2 (E.D. Mich. Dec. 19, 2006) ("Sitting in diversity … [i]f given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, a federal district court 'should choose the narrower and more reasonable path.'") (citing *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004)); *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 744 (1st Cir. 1990).
[15] *See also Nowell v. Medtronic, Inc.*, No. 19-2073, 2021 WL 4979300, at *2 (10th Cir. Oct. 27, 2021) ("In undertaking this inquiry, we 'may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority.'"); *ADP, LLC v. Pittman*, No. 19-16237 (KM) (MAH), 2019 WL 5304148, at *18 (D.N.J. Oct. 18, 2019).

where no controlling state law exists, courts sitting in diversity often apply the "majority view" while eschewing the "minority view," on the basis that the state's highest court would side with the majority view.[16]

As the above cases teach, this Court should be reluctant to adopt novel, untested, and widely discredited theories—like "loss of use" as satisfying the "direct physical loss" threshold for coverage—because those theories would expand state law, create liabilities where none now exist, conflict with the overwhelming majority view, and be at odds with the vast majority of state and federal trial courts within each relevant jurisdiction. Indeed, finding liability in these circumstances would run contrary to decades of precedent refining the *Erie* doctrine, which compels courts to follow the most traveled path, and not set out on new adventures. And the most traveled path is brightly lit, with eight federal appeals courts (and three state appeals courts) unanimously dismissing identical claims, along with hundreds of federal and state trial court decisions doing the same.

Regardless of the amount of deference this Court grants to the mountain of existing case law, the CAC should be dismissed, as set forth below. Even starting from a blank slate, the terms of the Policies and settled principles of law lay plain that the CAC fails to state a claim.

## II. PLAINTIFFS' CLAIMS FOR INCOME PROTECTION AND EXTRA EXPENSE COVERAGE FAIL BECAUSE THEY DO NOT PLAUSIBLY ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY

The Policies at issue provide coverage *for property*. They insure risks of direct physical loss or damage, like fire and hurricanes. When purchasing property insurance, a business can add

---

[16] *See, e.g., Douglas Autotech Corp. v. Twin City Fire Ins. Co.*, No. 1:06-CV-448, 2007 WL 1041158, at *1 (W.D. Mich. Apr. 5, 2007) ("The Court may use the decisional law of the state's lower courts … and decisions of other jurisdictions constituting a 'majority' rule in making this determination"); *Huggins By Huggins v. Sea Ins. Co.*, 710 F. Supp. 243, 248-49 (E.D. Wis. 1989) ("a federal court sitting in diversity must be hesitant to adopt a minority position when called upon to declare new principles of state law.").

additional coverages, like business income and extra expense protection.  In that event, certain losses of business income and extra expense, such as renting a temporary office during the "period of restoration," would be covered, subject to the policy's terms. These additional layers of coverage are secondary to and dependent on direct physical loss of or damage to the covered premises.  The insured's "*operations* are not what is insured—the building and the personal property in or on the building are."  *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 296 (S.D. Miss. 2020).  Indeed:

> One does not buy simply "business interruption insurance."  Policyholders are not insuring against "all risks" to their income—they are insuring against "all risks" to their property—that is, the building and its contents … Based on the definition of Covered Property, should a covered peril befall the building or personal property located in or on the building, the insured can make a claim.  As a subset of this coverage, should such a loss of or damage to the building or any personal property cause a disruption to a policyholder's business such that it suspends operations, then there is coverage for that income loss during the time of repair, rebuilding or replacement in order to get, for lack of a better phrase, 'back to normal.'

*Id*. at 294 n. 9 (citations omitted).

That is, business interruption coverage helps businesses recover when they cannot operate because the covered property has been physically lost or damaged by a covered cause of loss. This coverage is not independent of physical loss or damage, but just the opposite; it is entirely dependent on it.  *See Terry Black's Barbecue,* 2022 WL 43170, at *4 ("While the [business interruption] provision provides business interruption coverage, it is tied to the commercial property that is insured";  finding no coverage where plaintiff failed to allege any "loss or damage *to the* commercial property", but rather alleged "economic loss" due to restrictions on "dine-in services").  (emphasis in original).

A. **Plaintiffs Do Not—And Cannot—Allege Any Direct Physical Loss Of Or Physical Damage To Their Properties, Let Alone Any That Caused Any Business Income Loss, And Hence Cannot Satisfy The Most Basic Prerequisite For Coverage Under Their Policies**

1. *The Direct Physical Loss Of Or Physical Damage To Covered Property Requirement In The Policies Requires A Tangible, Concrete Physical Harm That Has Not And Cannot Be Plausibly Alleged Here*

Under the Policies' Insuring Agreement—set forth in Section I of the Policy—Erie need only "pay for *direct physical 'loss' of or damage to* Covered Property at the premises described in the 'Declarations' caused by or resulting *from a peril insured against*." *See* Ex. A at ERIE 000012, Ex. B at EIE-Close 0022 (emphasis added). Under the Perils Clause, in turn, a "peril insured against" means "direct physical 'loss', except 'loss' as excluded or limited in this policy." *See* Ex. A at ERIE 000015, Ex. B at EIE-Close 0026. "Covered Property" includes only *physical* structures—the building and things permanently affixed to it. And the Policies define "loss" as "direct and accidental loss of or damage to *covered property*." Ex. A at ERIE 000048, Ex. B at EIE-Close 0056 (emphasis added). Read together, these policy definitions and terms emphasize a threshold requirement for direct and accidental *physical* loss of or *physical* damage to *property* at the insured premises—which is black letter law. *See* 10A *Couch On Insurance* § 148.46 (3d ed. 2019) ("[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

Significantly, "[c]ase law establishes that when an insurance policy uses the phrase 'direct physical loss of or damage to … property,' the words 'direct physical' modify both 'loss of' and 'damage to.'" *Inns-by-the-Sea*, 71 Cal. App. 5th at 699 (dismissing identical claims). So, for coverage to exist, Plaintiffs must, for starters, show a "direct physical loss" or "direct physical

28

damage" to their Covered Properties.  And, under settled law, "direct physical loss" or "direct damage" requires a *tangible, concrete* injury to the insured's physical property in order to trigger coverage.  Events occurring outside of the insured property causing a business loss are simply not covered by business income insurance.  *See, e.g., Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure"); *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co*., No. 20-2171, -- F.Supp.3d --, 2021 WL 1945712, at *6 (E.D. Pa. May 14, 2021) ("Stated differently, the words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure."); *Sandy Point Dental,* 20 F.4th at 332 ("The words 'direct physical' are most sensibly read as modifying both 'loss' and 'damage.' … Whatever 'loss' means, it must be physical in nature."); *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se*., 516 F. Supp. 3d 450, 456-57 (E.D. Pa. 2021) ("As a starting point, both the words 'direct' and 'physical' modify 'loss of property' and 'damage to property. Hence, both 'loss' and 'damage' must be 'physical.'").

In short, there must be something *physical* to trigger coverage—some tangible, concrete harm; otherwise the word "physical" has no meaning in the policy.  *See Goodwill Indus.*, 2021 WL 6048858, at *4 ("[Plaintiff's] temporary inability to use its property for its intended purpose was not a 'direct physical loss.' To conclude otherwise would ignore the word 'physical' and violate the requirement that every part of a policy be given meaning."); *King's Palace v. Certain*

*Underwriters at Lloyd's*, No. 2:20-cv-02629, -- F. Supp. 3d --, 2021 WL 4483798, at *11 (W.D. Tenn. Sept. 1, 2021) ("[T]he preceding 'physical' modifies and narrows 'loss' to only the tangible form of loss. Presumably, the term 'physical' was inserted there for this exact reason."); *Star Buick GMC v. Sentry Ins. Grp*., No. 5:20-cv-03023, -- F. Supp. 3d --,  2021 WL 2134289, at *5 (E.D. Pa. May 26, 2021) ("Star Buick suggests that the mere loss of functionality/use is a covered loss. However, when modified by the terms 'direct' and 'physical,' the term 'loss' is no longer reasonably susceptible to Plaintiffs' proffered definition.") (citation omitted).[17]

"The imperative of a 'direct physical loss' or 'direct physical damage,' . . . is the North Star of [a] property insurance policy from start to finish."  *Santo's Italian Café*, 15 F. 4th at 402. Plaintiffs have lost sight of this "North Star" of property insurance coverage, by erroneously seeking coverage based not on any physical loss or physical damage to their physical property, but based instead on government regulations that permitted many businesses deemed "essential" to operate while forcing other "non-essential" businesses, such as Plaintiffs, to operate on a limited basis.

While plaintiffs in other cases have tried to make hay over the difference between "physical loss" and "physical damage," in a futile effort to inject ambiguity into policy language where none exists, courts have explained that "loss" as opposed to "damage" is clear; the former means the complete destruction of a property, whereas "damage" means the partial destruction of a property.  *See, e.g.*, *Independence Rest. Grp v. Certain Underwriters at Lloyd's, London.*, 513 F. Supp. 3d 525, 532 (E.D. Pa. 2021) ("Rather, 'direct physical loss of or damage to' property requires either a physical alteration of the property or its complete destruction, and neither are

---

[17] *See also Del. Valley Mgmt., LLC v. Cont'l Cas. Co*., No. 2:20-cv-4309, 2021 WL 5235277, at *5 (E.D. Pa. Nov. 10, 2021); *Manchester Bidwell Corp. v. Cincinnati Ins. Co.*, No. 2:21-251, 2021 U.S. Dist. LEXIS 162724, at *124 (W.D. Pa. Aug. 27, 2021).

present in this case"); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289, 1295 (N.D. Ga. 2020) ("physical loss" means the complete destruction of the insured premises, whereas "damage to" means damage short of complete destruction: "As an illustrative example, a tornado that destroys the entirety of the restaurant results in a 'loss of' the restaurant, while a tree falling on part of the kitchen would represent 'damage to' the restaurant.").[18]

Judge William S. Stickman's decision in *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, 513 F. Supp. 3d 623 (W.D. Pa. 2021), is directly on point. The policy in *1 S.A.N.T.* contained the same "threshold provision for coverage" at issue here, namely, "We will pay for direct physical loss of or damage to Covered Property … resulting from any Covered Cause of Loss." *Id.* at 630. The court noted that the policy may have lacked definitions for certain terms, such as "direct physical loss," but that under settled law "failing to define a coverage term does not mean that it is ambiguous." *Id.* at 629. Rather, the court would interpret policy language using the "plain and generally accepted meaning of" policy terms. The court then used dictionary definitions to determine the meaning of the four key policy terms—"direct," "physical," "loss" and "damage"— and concluded that this language "can only be reasonably construed as extending to events that impact the physical premises completely (loss) or partially (damage)." *Id.* at 630. And indeed,

---

[18] *See also Equity Planning Corp. v. Westfield Ins. Co.,* 522 F. Supp. 3d 308, 319 (N.D. Ohio 2021) ("[T]he Court concludes that the Business Income (and Extra Expense) Coverage Form [requiring direct physical loss or damage] unambiguously covers an immediate material, perceptible harm that leads either to complete destruction or deprivation ('direct physical loss') or partial destruction ('direct physical damage')."); *King's Palace*, 2021 WL 4483798 at *7 ("Thus, 'physical loss' means destruction, ruin, or lack of function that is capable of being touched. 'Physical damage' means physical harm."); *Bluegrass Oral Health Ctr. v. Cincinnati Ins. Co.*, No. 1:20-CV-00120-GNS, 2021 WL 1069038, at *4 (W.D. Ky. Mar. 18, 2021) ("In this light, 'physical loss' would apply to property destroyed by some force, contrasted with 'physical damage' which would cover a lesser extent of harm short of destruction or ruin. Thus, the policy would extend to the continuum of harm from total (loss) to partial (damage) resulting in alteration to an insured property.").

nearly every court in Pennsylvania is in alignment with Judge Stickman's compelling rationale.[19]

The Tenth Circuit is in accord.  It recently held:

Dictionary definitions inform us that "direct physical loss" encompasses only tangible destruction or deprivation of property.  The *Oxford English Dictionary Online* (3d ed. 2021) defines

• "direct" as "[e]ffected or existing without intermediation or intervening agency; immediate";

• "physical" as "[o]f or relating to natural phenomena perceived through the senses (as opposed to the mind); . . . natural; tangible, concrete"; and

• "loss" as "[p]erdition, ruin, destruction." …

Based on these definitions, a "direct physical loss" requires an immediate and perceptible destruction or deprivation of property.  Goodwill has not alleged it suffered such a loss.  Although the COVID orders temporarily restricted Goodwill's use of its property, Goodwill never lost physical control of its buildings or merchandise from its stores. It thus was not deprived of its property. Nor did COVID destroy Goodwill's property. The policy therefore did not cover its loss. ... Goodwill's temporary inability to use its property for its intended purpose was not a "direct physical loss." To conclude otherwise would ignore the word "physical" and violate the requirement that every part of a policy be given meaning.

*Goodwill Indus.*, 2021 WL 6048858, at *3-4.[20]  Here, Plaintiffs have not and cannot plausibly

plead that their property was physically lost (completely destroyed) or physically damaged

(partially destroyed).  There was no tangible, concrete harm to their property at all.  Rather, any

---

[19] *See, e.g.*, *Maggios Famous Pizza, Inc. v. Selective Ins. Co*., No. 20-2603, 2021 WL 6051562, at *2 (E.D. Pa. Dec. 21, 2021) ("[T]he Court finds that the Pennsylvania Supreme Court would very likely decide that Maggio's cannot recover for its pure economic loss under this policy of property insurance."); *State Street Rest. Grp. v. Cincinnati Cas. Co.*, No. 3:20-CV-816, 2021 U.S. Dist. LEXIS 220028, at *1-2 (M.D. Pa. Nov. 15, 2021).

[20] Judge John E. Jones's thorough decision in *Kahn v. Pennsylvania National Mutual Casualty Insurance Company*, 517 F. Supp. 3d 315, 322 (M.D. Pa. 2021), explains why cases like this one cannot pass the pleading stage.  The court, referring to dictionary definitions, concluded that "physical loss" required something "*material*," and "pertaining to *real, tangible* objects."  *Id*. (emphasis in original).  *See also ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 513, 518 (E.D. Pa. 2021); *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 509 (E.D. Pa. 2021); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 559 (E.D. Pa. 2021) (same); *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 581, 583 (E.D. Pa. 2021).

claimed lost business income was the result of governmental orders and not the result of any physical damage to their property, as Plaintiffs admit.  *See* CAC ¶ 2.  Under these circumstances, there can be no coverage under the Policies for the losses claimed by Plaintiffs.

**2.**   ***The Policies' Period Of Restoration Clauses Confirm That Direct Physical Loss Of Property Refers To Destruction of Property – Not Loss of Business Function***

"Under Pennsylvania law … an insurance policy must be read as a whole and construed according to the plain meaning of its terms."  *Selective Way Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 724 F. Supp. 2d 520, 525 (E.D. Pa. 2010).  This is true in each of the relevant jurisdictions.[21]  Policies should be read to accord meaning to every policy provision, as opposed to rendering policy provisions meaningless.  *Clarke v. MMG Ins. Co.,* 100 A.3d 271, 276 (Pa. Super. Ct. 2014).  These foundational principles of insurance contract construction are the guideposts that lead to an inescapable conclusion: no coverage exists for Plaintiffs' claims.

Here, that "direct physical loss" and "direct physical damage" under the Policies refers to actual, concrete and tangible damage to property—as opposed to mere loss of customers—is confirmed by the period of restoration clauses.  In both Policies, the definition of "interruption of

---

[21] **Illinois**: *Spearman Indus. Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1101 (N.D. Ill. 2001);
**New York**: *Waiting Room Sols., LLLP v. Excelsior Ins. Co.*, No. 19-CV-7978 (CS), 2020 WL 5505386, at *12 (S.D.N.Y. Sept. 9, 2020);
**Ohio**: *High 5 Sportswear, Inc. v. H5G, LLC,* 237 F. Supp. 3d 674, 682 (S.D. Ohio 2017);
**Washington DC**: *Am. Red Cross v. Travelers Indem. Co. of R.I.*, 816 F. Supp. 755, 758 (D.D.C. 1993); *Cont'l Cas. Co. v. Cole*, 809 F.2d 891, 896 (D.C. Cir. 1987);
**Tennessee**: *Lineberry v. State Farm Fire & Cas. Co.*, 885 F. Supp. 1095, 1098 (M.D. Tenn. 1995);
**Virginia**: *Transcontinental Ins. Co. v. Caliber One Indem. Co.*, 367 F. Supp. 2d 994, 1001 (E.D. Va. 2005);
**Maryland**: *Glaser v. Hartford Cas. Ins. Co.*, 364 F. Supp. 2d 529, 533-34 (D. Md. 2005);
**West Virginia**: *Nationwide Mut. Ins. Co. v. Hatfield*, No. 5:03-0083, 2005 WL 2978046, at *2-3 (S.D.W. Va. Nov. 7, 2005).

33

business" is defined as "[e]nd[ing] on the date when the covered property should be *repaired, rebuilt, or replaced* with reasonable speed and similar quality." Ex. A at ERIE 000048, Ex. B at EIE-Close 0056. In addition, the Ultrapack policy states: "We will pay the actual income protection loss for … [t]he time period required to *rebuild, repair or replace* such part of the Building or Business Personal Property that has been *damaged or destroyed* as a direct result of an insured peril." Ex. A at ERIE 000056.

The terms "repair," "rebuild," and "replace" make clear that the damage contemplated by the insuring agreement is *physical* in nature. *Independence Rest. Grp.*, 2021 WL 131339, at *6 ("[T]he Policy only provides Business Income Coverage during the 'Period of Restoration.' … Built into coverage for business income losses, then, is the idea that there must be something to 'repair[], rebuild, or replace[]'—none of which exists for mere loss of use untethered to a physical condition affecting the property …"). *See also Inns-by-the-Sea*, 71 Cal. App. 5th at 707 ("[t]hat the policy provides coverage until property 'should be repaired, rebuilt or replaced' or until business resumes elsewhere assumes physical alteration of the property, *not mere loss of use*.") (citing *Oral Surgeons*, 2 F.4th at 1144 (emphasis added.); *Indiana Repertory Theatre*, 2022 WL 30123, at *6 ("Without physical alteration or impact to [insured] premises, there can be no period of restoration[.]"). *Terry Black's Barbecue,* 2022 WL 43170, at *4 ("The period [of restoration] necessarily contemplates a tangible alteration to the property that requires repair, rebuilding or replacement. The prohibition on dine-in services does not require TBB to repair, rebuild, or replace any property in its restaurants"). Courts from the relevant states here have reached the same result.[22] So have the appeals courts. *See, e.g.*, *Sandy Point*, 20 F.4th at 333 ("The Policy is

_____

[22] **Pennsylvania**: *JMR Hldgs, LLC v. Valley Forge Ins. Co*., No. 2:21-cv-00839-JDW, 2021 WL 3722264, at *3 (E.D. Pa. Aug. 23, 2021) ("The Parties' agreement to measure the period of restoration against the time it takes to repair the premises indicates that they intended the Policy

to cover losses for physical damage, and that intent controls the Court's interpretation of the Policy."); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 503 F. Supp. 3d 251, 256-57 (E.D. Pa. 2020) ("The[] [period of restoration] provision[] make[s] clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement."); *Tria WS LLC v. Am. Auto Ins. Co.*, 530 F. Supp. 3d 533, 540 (E.D. Pa. 2021) ("[E]ven if the phrase 'direct physical loss' were ambiguous when considered in isolation, when the phrase is considered in its broader context, Plaintiffs 'loss of use' theory is clearly untenable . . . [t]he Policies' 'period of restoration' requirement would be rendered superfluous if Plaintiffs' understanding of 'direct physical loss' were accepted."); *Kahn*, 517 F. Supp. 3d at 323 ("If we adopt Plaintiffs' proposed construction—that 'physical loss' could include a loss of the business's intended function—this language in the definition of 'period of restoration,' plus the phrase itself, would be rendered entirely superfluous."); *Maggios Famous Pizza, Inc.*, 2021 WL 6051562, at *2 ("Temporarily closing dine-in service requires no period of restoration to repair or rebuild.");

**Illinois**: *Firenze Ventures LLC v. Twin City Fire Ins. Co.*, No. 20 C 4226, 2021 WL 5865710, at *4 (N.D. Ill. Dec. 10, 2021) ("The dissonance between the 'period of restoration' language, which is critical to application of the Business Income provision, and Firenze's interpretation of the provision confirms that the correct reading is one requiring some physical change in the condition or location of property at the insured's premises."); *VZA, LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-01046-GCS, -- F. Supp. 3d --, 2021 WL 4489311, at *14 (S.D. Ill. Sept. 30, 2021); *Midwest Orthodontic Assocs. v. Cincinnati Cas. Co.*, No. 3:20-cv-01167-GCS, -- F. Supp. 3d --, 2021 WL 4489308, at *14 (S.D. Ill. Sept. 30, 2021);

**New York**: *Elite Union Installations, LLC v. Nat'l Fire Ins. Co.*, No. 20-cv-4761 (LJL), -- F. Supp. 3d --, 2021 WL 4155016, at *6 (S.D.N.Y. Sept. 13, 2021) ("It follows that the event triggering coverage must be some event that alters the Covered Property's physical site, construction, configuration or material specifications or that renders the premises physically incapable of operating and for which restoration is necessary … Were it otherwise, the language explaining the period of restoration would be rendered meaningless . . .") (citations omitted); *Michael Cetta, Inc* 506 F. Supp. 3d at 177 ("[Plaintiff's] reading of the Policy—that 'loss of use' is covered—additionally would render the two possible end dates of the 'period of restoration' provision meaningless when applied to circumstances like those presented in this case.");

**Ohio**: *Equity Planning Corp.*, 522 F. Supp. 3d at 321; *Sys. Optics v. Twin City Fire Ins. Co.*, No. 5:20-cv-1072, 2021 WL 2075501, at *9-10 (N.D. Ohio May 24, 2021); *Troy Stacy Enters. v. Cincinnati Ins. Co.*, No. 1:20-cv-312 (Consolidated), -- F. Supp. 3d --, 2021 WL 4346688, at *8 (S.D. Ohio Sept. 24, 2021) ("To construe 'direct physical loss' to cover intangible losses (such as economic losses) would render much of the 'period of restoration' definition nonsensical, because intangible losses cannot be repaired, rebuilt, or replaced.");

**Tennessee**: *Creative Bus. v. Covington Specialty Ins. Co.*, No. 2:20-cv-02452-JTF-atc, -- F. Supp. 3d --, 2021 WL 4191466, at *9-10 (W.D. Tenn. Sept. 9, 2021); *SFDG LLC v. Cincinnati Ins. Co.*, No. 1:20-cv-237, -- F. Supp. 3d --, 2021 WL 4057573, at *9 (E.D. Tenn. Aug. 31, 2021); *King's Palace*, 2021 WL 4483798, at *7 ("This is evident by the period of restoration ending upon repair or replacement of the property—an occurrence that arises only after physical, tangible injury—or ending upon business resuming at a new *permanent* location, which would presumably occur if the previous property had been completely destroyed or so physically altered as to make it impractical to repair.") (emphasis in original);

35

replete with textual clues that reinforce the conclusion that 'direct physical loss' requires a physical alteration to property. As Cincinnati points out, the Policy provides coverage for losses sustained during a 'period of restoration' . . . Without a physical alteration to property, there would be nothing to repair, rebuild or replace."); *Mudpie, Inc.*, 15 F.4th at 892 ("To interpret the Policy to provide coverage absent physical damage would render the 'period of restoration clause' superfluous").

In *Santo's*, the Sixth Circuit, applying Ohio law, held that "baked into" the period of restoration clause "is the understanding that any covered 'direct physical loss of or damage to' property could be remedied by repairing, rebuilding, or replacing the property or relocating the business." 15 F.4th at 402-03. In *Santo's*, as in the CAC, plaintiff argued that the term "direct physical loss" should apply to cover business losses generated by the statewide shutdown orders. But, the Court noted, the period of restoration clause would simply make no sense under this interpretation of the policy. "There is nothing to repair, rebuild, or replace that would allow the resumption of in-person dining operations. What the restaurant needed was an end to the ban on in-person dining, not the repair, rebuilding, or replacement of any of its property." *Id*. at 403. *See also Gilreath*, 2021 WL 3870697, at *2 (noting that plaintiff had "alleged nothing that could qualify, to a layman or anyone else, as physical loss or damage" as the government orders "did not damage or change the property in a way that required its repair or precluded its future use."); *Goodwill Indus.,* 2021 WL 6048858, at *4 ("The Period of Restoration clause reinforces the

---

**Maryland**: *Bel Air Auto*, 534 F. Supp. 3d at 508-09;
**West Virginia**: *See Uncork & Create LLC v. Cincinnati Ins. Co*., 498 F.Supp.3d 878, 883 (S.D.W. Va. 2020) (citing favorably cases "detailing the context provided by other provisions similar to those in the instant Policy, allowing business interruption losses during a period of repair and restoration, that clarify that physical damages requiring repair are necessary").

conclusion that Goodwill did not suffer a 'direct physical loss of or damage' to property . . . After suspending business due to COVID restrictions, Goodwill had nothing to repair, rebuild, or replace before it could resume operations. Nothing 'physical' happened to its property—Goodwill *simply had to wait* until the government lifted the restrictions.").[23]

As these cases teach, construing "physical loss" to mean something that is *not* capable of being repaired, rebuilt or replaced—like restrictions on use due to a governmental order—would render the period of restoration clause utterly meaningless, in violation of Pennsylvania and other states' law requiring the court to endeavor to give meaning to all policy terms and reading all terms in harmony. *See Ultimate Hearing Sols. II, LLC*, 513 F. Supp. 3d at 559 ("If mere loss of use counted as 'direct physical loss of' property, *the 'period of restoration' language would be rendered a nullity*") (emphasis added). Judge Jones discussed the importance of the period of restoration language at length in *Kahn*, 517 F. Supp. 3d at 323 (emphasis added):

> This conclusion—that 'physical loss' must require some tangible issue with the physical structure of the business's premises—is bolstered by reference to surrounding terms in the Policy. As we have explained, the Business Income coverage provision explicitly states that only business losses incurred 'during the 'period of restoration' would be covered … The Policy explains that this 'period of restoration' ends either when the covered premise is 'repaired, rebuilt or replaced' or when business operations are 'resumed at a new permanent location.' … *This language strongly implies that the Policy was only intended to cover business losses sustained over a period when the property had some physical or structural issue that prevented the business from operating. If we adopt Plaintiffs' proposed construction—that 'physical loss' could include a loss of the business's intended function—this language in the definition of "period of restoration,' plus the phrase itself, would be rendered entirely superfluous.* … Only Defendant's construction of the Business Income provision gives effect to all of the Policy's pertinent language and terms—Plaintiffs' does not.

---

[23] This has long been the law. *See, e.g.*, *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) (holding that there was no coverage for lost business income after the 9/11 terrorist attacks, when an airport garage was ordered by the government to close, because the parking garage did not suffer direct physical loss or damage, and the period of restoration clause would make no sense if physical damage was not required).

*Newchops Restaurant* applied the same reasoning and reached the same result.  There, the court held that:  "The business income provision covers losses sustained by the suspension of operations during the 'period of restoration.'  This term is given special meaning in the policy.  It is defined as ending 'when the property . . . should be repaired, rebuilt or replaced.'  *This definition informs that the loss or damage to the property must be physical, affecting the structure of the property. It speaks to the time to 'repair, rebuild or replace' the property, terms connoting structure.*"  *Newchops Restaurant Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 624 (E.D. Pa. 2020) (emphasis added).  Similarly, in *Frank Van's,* 516 F. Supp. 3d at 457, the court stressed the importance of the period of restoration clause, noting that "this limiting language inherently contemplates addressing some physical condition of the property.  *However, if the Court adopts Frank Van's interpretation that coverage exists any time there is mere loss of the opportunity to function, the qualifying language of repair, rebuild or replace is rendered surplusage.* The Commonwealth's rules of construction do not permit words in a contract to be treated as surplusage." (emphasis added and internal citations omitted).[24]  The same holds true here—under the clear terms of the Policies, there is no coverage for Plaintiffs' losses because Plaintiffs have not suffered a tangible, physical harm to their property—a harm that can be repaired.[25]

---

[24] *See also Whiskey Flats Inc. v. Axis Ins. Co.*, 519 F. Supp. 3d 231, 236 (E.D. Pa. 2021)  ("The parties' agreement to provide Business Income coverage only during a period of restoration and to measure that period of restoration against the time it takes to repair the premises indicates that they intended the Policy to cover losses for physical damage, and that intent controls the Court's interpretation of the Policy"); *Moody*, 513 F. Supp. 3d at 509 (period of restoration clause requires loss be physical requiring repair; plaintiff's interpretation of "physical loss" as not requiring something physical capable of repair would render the clause meaningless).

[25] *See also Oral Surgeons*, 2 F.4th at 1144 ("Property that has suffered physical loss or physical damage requires restoration. That the policy provides coverage until property should be 'repaired, rebuilt, or replaced' or until business resumes elsewhere assumes physical alteration of the property, not mere loss of use."); *Sanzo Enters., LLC*, 2021 WL 5816448, at *9 ("The use of the

**3.      *Invisible, Readily Cleaned Viral Particles Did Not Cause Direct Physical Loss or Physical Damage To Plaintiffs' Properties***

In a futile effort to plead a physical loss or damage, Plaintiffs offer scattershot allegations about how the coronavirus may have infected employees or customers (though no allegations are made that individuals contracted the virus on premises).  For example, Plaintiff Pleasant Food alleges that it "had at least one employee test positive for COVID-19, and customers report that they may have had COVID-19 while dining at Plaintiff's restaurant."  CAC ¶ 42.  Plaintiffs also note the virus (like every other virus) exists in physical form and can attach to various surfaces (CAC ¶¶ 117-122), but this does not explain how that caused any physical loss or damage to their property, let alone caused (apart from the government orders) any business income loss.

Coronavirus particles did not cause any physical loss or physical damage to any property.  As Plaintiffs admit, "some cleaning products will both inactivate and remove COVID-19 from surfaces."  CAC ¶ 120.  And as nearly all courts have held, COVID-19 does not cause physical loss of or damage to that property.  *See, e.g.*, *Whiskey Flats*, 519 F. Supp. 3d at 236 ("Even if there was coronavirus present at the property, to find that contamination that can be cured with simply disinfecting surfaces satisfies the 'physical loss or damage' requirement would strain the words beyond 'their natural, plain, and ordinary sense' meaning."); *Zagafen Bala*, 513 F. Supp. 3d at 589 ("the presence or threatened presence of the coronavirus is a physical condition that can be largely remediated by mask wearing, social distancing, and disinfecting surfaces.  This does not meet the standard for a physical loss caused by a source invisible to the naked eye").[26]

---

words 'repair, rebuild, restore, and replace' in both the 'period of restoration' provision and definition of 'interruption of business' supports the determination that a mere loss of use, without any physical or tangible impact to the property, is not sufficient to trigger the income protection or extra expense coverage … An intangible loss cannot be repaired, rebuilt, restored, or replaced.").

[26] Similarly, allegations that the virus *may* have been present on property due to the community spread of the virus are also insufficient.  *See, e.g., Protégé Rest. Partners LLC v. Sentinel Ins.*

The mere presence of the virus on the covered premises does not constitute "direct physical loss of or damage to property." *See Carrot Love, LLC v. Aspen Specialty Ins. Co.*, 513 F. Supp. 3d 1364, 1365 (S.D. Fla. 2021) (noting "nearly unanimous view that COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger coverage"); *Skillets, LLC v. Colony Ins. Co.*, 524 F. Supp. 3d 484, 494 (E.D. Va. 2021), *appeal pending*, No. 21-1268 (4th Cir.) (collecting cases denying coverage where presence of virus on covered premises was alleged); *Assocs. in Periodontics, PLC v. Cincinnati Ins. Co.*, No. 2:20-cv-171, -- F. Supp. 3d -, 2021 WL 1976404, at *3 (D. Vt. May 18, 2021) ("most courts have held that the presence of the COVID-19 virus did not cause ["physical damage" or "physical loss"] to the covered property"). This law is now settled.[27]

---

*Co.*, 517 F. Supp. 3d 981, 988 (N.D. Cal. 2021) ("Plaintiff's claim that there was a high risk that COVID-19 particles were present on its property does not constitute physical damage"); *Uncork & Create LLC*, 507 F. Supp. 3d at 626 ("the mere possibility of the presence of the virus" is not physical damage); *Kessler Dental Assoc., P.C. v. Dentists Ins. Co.*, 505 F. Supp.3d 474, 480 (E.D. Pa. 2020) (allegation that business was 'susceptible to being or becoming contaminated" is not "physical damage").

[27] **Pennsylvania**: *Fuel Univ. City, LLC v. Allied Ins. Co. of Am. & Nationwide*, No. 20-4478, 2021 WL 4132299, at *4 (E.D. Pa. Sept. 9, 2021); *Moody*, 513 F. Supp. 3d at 506-07; *Infinity Real Estate, LLC v. Travelers Excess & Surplus Lines Co.*, No. 20-6398, 2021 WL 4169417, *5-6 (E.D. Pa. Sept. 13, 2021);

 **Illinois**: *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 1066, 1069 (N.D. Ill. 2021) ("As this court has held, the coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property . . . the overwhelming majority of courts have found no coverage when interpreting similar language."); *L&J Mattson's Co. v. Cincinnati Ins. Co.*, 536 F.Supp.3d 307, 314 (N.D. Ill. Apr. 29, 2021) ("The Court agrees with defendant, however, that, under the plain language of the Policy, the presence of the virus in the air or on surfaces does not constitute physical damage or physical loss. . . ."); *Zebra Techs. Corp. v. Factory Mut. Ins. Co.*, No. 20-cv-05147, 2021 WL 4459532, at *3 (N.D. Ill. Sept. 29, 2021) ("numerous recent decisions . . . represent a clear consensus that COVID-19 does not cause physical loss or damage. . . this Court agrees.");

**New York**: *Buffalo Xerographix v. Sentinel Ins. Co.*, No. 1:20-cv-520, 2021 WL 2471315, at *4-5(W.D.N.Y. June 16, 2021) ("The presence of the coronavirus does not physically alter property in a permanent manner."); *Mangia Rest. Corp. v. Utica First Ins. Co.*, 148 N.Y.S.3d 606, 612 (N.Y. Sup. Ct. 2021); *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 535 F. Supp. 3d 152, 159 (W.D.N.Y. 2021); *100 Orchard St., LLC v. Travelers Indem. Ins. Co.*, No. 20-CV-8452, -- F.

Policyholders' efforts to compare coronavirus particles to asbestos have failed.   In *Napleton River*, for example, an Illinois court considered almost identical allegations by an Erie Ultrapack policyholder that "their property was physically damaged by the presence of COVID-19 contagion on the surfaces at their premises . . . that COVID-19 molecules physically infect surfaces, remain on infected surfaces for considerable period of time, and can remain on infected surfaces for up to four weeks in low temperatures."   Kaiser Dec., Ex. D at 6.   Accepting these allegations as true, the Court held: "a temporary state of contagion is not 'damage' to the property."   And *Napleton*, like other courts, distinguished asbestos cases noting that, even if the

---

Supp. 3d --, 2021 WL 2333244, at *3 (S.D.N.Y. June 8, 2021); *Food For Thought Caterers Corp. v. Sentinel Ins. Co.*, 524 F. Supp. 3d 242, 250-51 (S.D.N.Y. 2021);

**Ohio**: *Troy Stacy Enters.*, 2021 WL 4346688, at *5; *Bridal Expressions LLC v. Owners Ins. Co.*, 528 F. Supp. 3d 775, 783 (N.D. Ohio 2021); *Family Tacos, LLC v. Auto Owners Ins. Co.*, 520 F. Supp. 3d 909, 925 (N.D. Ohio 2021);

**Tennessee**: *Twelve Nashville, LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-00423, 2021 WL 4320433, at *7-8 (M.D. Tenn. Sept. 22, 2021); *Woolworths Nashville, LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-00396, 2021 WL 4320307, at *7-8 (M.D. Tenn. Sept. 22, 2021); *S. Kitchen Nashville, LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-00477, 2021 WL 4320567, at *7-8 (M.D. Tenn. Sept. 22, 2021); *LGW, LLC v. Cincinnati Ins. Co.*, 2021 WL 4320487 (M.D. Tenn. Sept. 22, 2021); *Acme Nashville LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-00481, 2021 WL 4311211, at *7-8 (M.D. Tenn. Sept. 22, 2021); *Pizza Loves Emily Holdings, LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-00429, 2021 WL 4311213, at *7-8 (M.D. Tenn. Sept. 22, 2021); *Gaston & Murrell Fam. Dentistry, PLLC v. Cincinnati Ins. Co.*, No. 3:20-cv-00776, 2021 WL 4311212, at *7-8 (M.D. Tenn. Sept. 22, 2021); *King's Palace*, 2021 WL 4483798, at *24-25;

**Maryland**: *Cordish*, 2021 WL 5448740, at *16 ("'Although the Virus can harm humans, it does not physically alter structures and therefore does not result in coverable property loss or damage.'"); *Bel Air Auto*, 534 F.Supp.3d at 509 ("Further, 'even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property,' as 'routine cleaning . . . eliminates the virus on surfaces,' and there is simply 'nothing for an insurer to cover' as required to invoke coverage for loss of business income under the Policy.");

**West Virginia**: *Uncork & Create*, 498 F. Supp. 3d at 883-84 ("[E]ven actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property."); *Bluegrass*, 519 F. Supp. 3d at 300 ("To find that a physical loss or damage has taken place at the covered Bluegrass properties under these conditions would be to ignore the reality that many restaurants and cafes have continued to operate during the pandemic. COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property.").

41

COVID-19 virus does attach to and linger on surfaces, "unlike asbestos – which persists indefinitely absent remediation – COVID-19 dissipates on its own without intervention. COVID-19 surface contagion, simply put, is not physical 'damage' to property in the same way as impregnation with asbestos fibers."  Kaiser Dec., Ex. D at 8.

Similarly, the Seventh Circuit noted that, unlike the COVID-19 virus, the reasoning in the asbestos cases indicates that the courts deemed "physical injury to be present because asbestos causes a physical alteration to property."  *Sandy Point Dental,* 20 F. 4th at 334 (also distinguishing gas infiltration cases on grounds that those "cases led to more than a diminished ability to use the property. It was so severe that it led to complete dispossession—something easily characterized as a 'direct physical loss'…. the gas infiltration made physical entry impossible, thus barring all uses by all persons.").  While asbestos and carbon monoxide may render premises unusable, the coronavirus did not (as evidenced by the fact that countless "essential" businesses and homes were "usable").  As one court recently noted:

> As many courts have held, cases concerning damage due to asbestos, smoke, or other airborne perils do not inform the analysis of the effect of COVID-19 because they do not concern the presence of a virus like COVID-19, which can be cleaned and disinfected from surfaces. *See, e.g., Bachman's, Inc. v. Florists' Mut. Ins. Co.*, 525 F.Supp.3d 984, 2021 U.S. Dist. LEXIS 49165, 2021 WL 981246, at *4 (D. Minn. Mar. 16, 2021) (dismissing complaint under Minnesota law, considering cases finding damage due to smoke and asbestos inapposite because ""there can be no dispute that the virus can be easily eliminated with routine cleaning procedures"); *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F.Supp.3d 1142, 2021 U.S. Dist. LEXIS 52462, 2021 WL 1056627, at *5 & n.1 (N.D. Cal. Mar. 19, 2021) (listing cases and explaining that asbestos is different from COVID-19, because asbestos can be "physically incorporated into the building and therefore physically affect tangible property," whereas COVID-19 "can be disinfected and cleaned"); *Dino Drop, Inc. v. Cincinnati Ins. Co.*, 2021 U.S. Dist. LEXIS 114891, 2021 WL 2529817, at *5-6 (E.D. Mich. June 21, 2021) (citing cases and explaining that "the mere presence of the virus on the physical structure of the premises does not amount to direct physical loss as coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property," and "the virus may be eliminated simply by cleaning and disinfecting surfaces").

*Berkseth-Rojas v. Aspen Am. Ins. Co.*, No. 3:20-cv-0948-D, 2021 WL 2936033, at *5 (N.D. Tex. July 13, 2021).  Virtually all courts have reached the same result, rejecting insureds' efforts to analogize the coronavirus to asbestos and other toxic and noxious substances that render premises uninhabitable.[28]

---

[28] **Pennsylvania:** *RDS Vending LLC v. Union Ins. Co.*, No. 20-3928, -- F. Supp. 3d --, 2021 WL 1923024, at *4 (E.D. Pa. May 13, 2021) (comparing COVID-19 to asbestos cases and finding presence of virus does not render building "uninhabitable" or "unusable" such that it constitutes physical loss); *4431, Inc. v. Cincinnati Ins. Cos.*, 504 F. Supp. 3d 368, 383-84 (E.D. Pa. 2020) (same);

**Illinois:** *Elite Dental Specialists PC v. State Farm & Cas. Co.*, No. 20-CH-05946, 2021 Ill. Cir. LEXIS 145, at *17 (Ill. Cir. Ct. Aug. 4, 2021) ("cases concerning damage due to asbestos, smoke, or other airborne perils do not inform the analysis of the effect of COVID-19 because they do not concern the presence of a virus . . . which can be cleaned and disinfected from surfaces."); *Firenze Ventures LLC*, 2021 WL 5865710, at *5 (agreeing with the "[m]any decisions [that] have rejected the analogy between COVID-19 particles and asbestos, reasoning that any damage inflicted by COVID-19 is temporary rather than the kind of permanent damage caused by asbestos."); *Park Place Hosp., LLC v. Cont'l Ins. Co.*, No. 20 C 6403, 2021 WL 3549770, at *5 (N.D. Ill. Aug. 10, 2021) ("The Court does not find persuasive Park Place's analogy to cases finding that the presence of asbestos fibers, mold, or other persistent hazards cause a physical loss");

**New York:** *Northwell Health, Inc. v. Lexington Ins. Co.*, No. 21-cv-1104 (JSR), -- F. Supp. 3d --, 2021 WL 3139991, at *6 (S.D.N.Y. July 26, 2021) (Rejecting insured's reliance on cases finding gas or asbestos contamination constituted physical damage, stating "the coronavirus -- unlike invisible fumes and chemicals does not 'persist' and irreversibly alter the physical condition of a property."); *Chefs' Warehouse, Inc. v. Emps. Ins. Co. of Wausau*, No. 20 Civ. 4825 (KPF), 2021 WL 4198147, at *12 (S.D.N.Y. Sept. 15, 2021);

**Ohio:** *Troy Stacy Enters.*, 2021 WL 4346688, at *7 ("The presence of SARS-CoV-2, however, is not like asbestos, pesticides, or smoke.");

**Washington DC:** *Rose's 1, LLC v. Erie Ins. Exchange*, 2020 WL 4589206, *3 (D.C. Super. Aug. 6, 2020) ("[N]one of the cases cited by Plaintiffs [some of which concern asbestos contamination] stand for the proposition that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy.");

**Tennessee:** *Gaston*, 2021 WL 4311212, at *7 (stating that cases cited by insured concerning asbestos, ammonia, and gasoline "have no application here."); *SFDG LLC*, 2021 WL 4057573 at *9  (finding insured's reliance on asbestos-related cases unpersuasive); *King's Palace*, 2021 WL 4483798 at *14 (same);

**Maryland:** *Cordish*, 2021 WL 5448740, at *17 (Rejecting insured's comparison of presence of virus to cases finding coverage for gas or asbestos contamination).

43

The recent California appeals court decision addresses this issue at length.  *Inns-by-the-Sea,* 71 Cal. App. 5th 688.  There, the court reviewed in detail cases that have found a direct physical loss where carbon monoxide levels, asbestos, odors, sulfuric gasses, and other conditions were detected.  *Id.* at 702-703.  The court distinguished those cases for numerous reasons, and dismissed the complaint.  In each of those cases, the court noted, the physical condition "*caused* the premises to be uninhabitable."  *Id.* at 703 (emphasis in original).  But in cases like this, causation was lacking because businesses were required to change their operations because of the *government orders*, and not due to any physical condition rendering premises uninhabitable.  *Id.* As the court stated, "the presence of COVID-19 on Plaintiff's property did not cause damage to the property necessitating rehabilitation or restoration efforts similar to those required to abate asbestos or remove poisonous fumes which permeate property.  Instead, all that is required for Plaintiff to return to full working order is for the government orders and restrictions to be lifted."  *Id.* at 704 (internal citation and quotation omitted).  Indeed, the court noted, that had the plaintiff "thoroughly sterilized its premises to remove any trace of the virus after the Orders were issued," the plaintiff "*still* would have continued to incur a suspension of operations because the Orders would *still* have been in effect and the normal functioning of society would *still* have been curtailed."  *Id.* (emphasis in original).  And, in light of that, no plausible argument could be made that plaintiff's alleged economic losses were caused by any "physical loss," even if the coronavirus is "something physical."  *Id.*[29]

---

[29] This interpretation of Erie's Policies is also consistent with precedent predating the COVID-19 pandemic, where courts have held that invisible substances that harm people or can be cleaned off of surfaces do not cause physical injury to property.  *See, e.g., Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x. 569, 569 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143 (Ohio Ct. App. 2008) (holding that the insurance policy's requirement of "physical injury"

The Court can also take notice of the fact that many businesses, including Plaintiffs' businesses, were allowed to stay open—subject to certain limitations—and did so, even where the coronavirus was actually reported to be present.  That was certainly true of restaurants, as workers entered the restaurants to prepare food and patrons shuffled in and out to pick that food up.  And, many businesses that were once closed under various state orders have since been permitted to reopen—*despite the continued (and increased) community spread of COVID-19*.  If all properties exposed to the virus were physically "damaged" so that they were no longer usable, then all businesses—and all homes or hospitals where someone tested positive—would have been shuttered and would remain shuttered now.  But that is not what happened, because the coronavirus does not cause damage to property; it harms people.  Plaintiffs *concede* this, by repeatedly alleging that their economic losses were caused by the government orders, not by damage to their property caused by the virus.

None of the "science" pled in the CAC can salvage Plaintiffs' claims.  As the California Court of Appeal recently held:

> Even were Inns to amend its complaint to include specific allegations about how the virus is transmitted and how it can persist on surfaces and in the air, the complaint still would not state a claim for relief under either the Business Income or Civil Authority coverage provisions. As we have explained, with respect to the Policy's Business Income coverage, the scenario pled in the complaint does not state a claim because (1) Inns' suspension of operations was caused by the Orders, not by any physical damage to property, and (2) mere loss of use of real property to generate income does not give rise to coverage. Additional allegations about the science behind the pandemic would not change that analysis.

required harm to the insured house that "adversely affect[ed] the structural integrity of the house" and that, therefore, the insurance policy did not afford coverage for mold staining that did not affect the structure of house). As a result, like the mold staining in *Mastellone*, and the bacteria contamination in *Universal Image*, any contamination of Plaintiffs' premises did not cause physical loss of or damage to its property.

45

*Inns-by-the-Sea*, 71 Cal. App. 5th at 713.  The bottom line is that no artful pleading can support the claims asserted by policyholders.

B.   **GOVERNMENT ORDERS REGULATING "NON-ESSENTIAL" BUSINESSES DURING THE PANDEMIC DO NOT TRIGGER COVERAGE UNDER THE PLAIN TERMS OF THE POLICIES**

1.   ***The Government Orders Do Not Constitute Physical Loss Or Damage, And The Mere "Loss Of Use" Does Not Constitute "Physical Loss"***

Plaintiffs admit the obvious truth that it was the government orders designed to impede the spread of the virus that caused their alleged business income losses, *see* CAC ¶ 2, but the government orders do not constitute physical loss or damage and thus do not trigger coverage. *Round Guys Brewing Co. v. Cincinnati Ins. Co.*, No. 20-6252, 2021 WL 4306027, at *3 (E.D. Pa. Sept. 22, 2021) ("Courts that have addressed identical policy provisions in the context of the COVID-19 pandemic have reached a consensus that loss of business due to governmental orders is not enough."); *Infinity Real Estate*, 2021 WL 4169417, at *4 ("Here, Plaintiff has alleged that the governmental closure orders caused a loss within the meaning of the policy. However, no allegation is made that the orders were associated with a specific property or that any loss caused by the orders could be remedied by repair or relocation. Therefore, Plaintiff has not alleged a 'direct physical loss of' a property as required by the policy.").[30]  The law on this is by now well settled.

---

[30] In *Toppers Salon & Health Spa*, Judge Joshua D. Wolson concluded that for coverage to apply, any business closure had to be caused by something physical, and the closure orders did not satisfy that requirement.  503 F. Supp. 3d at 257. *See also Newchops*, 507 F. Supp. 3d at 626 (no coverage because insured's losses were caused by the closure orders, not any physical loss or damage). *Warwick v. Aspen Am. Ins. Co.*, Civil Action No. 2:21-cv-250, 2021 WL 4821981, at *3 (W.D. Pa. Oct. 15, 2021) (holding COVID-19 executive orders did not result in direct physical loss or damage); *Penn Asian Senior Servs. v. Selective Ins. Co.*, No. 20-4919, 2021 WL 4478215, at *5-6 (E.D. Pa. Sept. 30, 2021) (same); *Walnut Ace, LLC v. Seneca Ins. Co.*, No. 20-5023, 2021 WL 4477158, at *4 (E.D. Pa. Sept. 29, 2021) (stating that "restrictions on in-person dining … [is] not recoverable physical damage under the policy" in holding that closure orders do not constitute physical loss or damage).

46

Plaintiffs' focus on the government orders amounts to this: the government prohibited non-essential businesses from fully operating, and that supposed "*loss of use*" constitutes a "physical loss" sufficient to trigger coverage under the policies. But following hundreds of trial court decisions dismissing identical claims, each of the state and federal appellate courts to have considered similar, if not identical, policy language have *unanimously* held that loss of use arising either from the COVID-19 virus or the related government orders cannot trigger coverage under commercial property insurance policies. *See Sandy Point Dental, P.C.*, 20 F.4th at 335 ("Sandy Point insured its property, not its ideal use of that property. Having alleged neither a physical alteration to the property nor its equivalent in its amended complaint, Sandy Point failed adequately to allege a 'direct physical loss' under the Policy."); *Bradley Hotel*, 19 F.4th at 1007-08 ("Bradley cannot meet that burden here because, as explained in *Sandy Point Dental*, a mere loss of use of property, without any physical alteration, is not 'direct physical loss or damage' and therefore does not qualify as a covered cause of loss."); *Terry Black's Barbecue,* 2022 WL 43170, at *5 ("A 'physical loss of property' cannot mean something as broad as the 'loss of use of property for its intended purpose.' None of these words fall within the plain meaning of physical, loss, or property … 'Physical loss of property' is not synonymous with 'loss of use of property for its intended purpose.'"); *10012 Holdings*, 2021 WL 6109961, at *3 (compiling cases "soundly reject[ing]" the argument that the executive orders caused physical loss or damage to property).[31]

---

[31] *See also*, *Crescent Plaza Hotel*, 20 F. 4th at 306 (Following *Sandy Point Dental* in "hold[ing] that the term 'direct physical loss or damage' to property does not apply to a business's loss of use of the property without any physical alteration."); *Santo's Italian Café LLC*, 15 F. 4th at 401-03 (rejected Plaintiff's argument that "loss" is a synonym for "deprivation" and that it was deprived of its ability to use the premises for its intended purpose); *Bridal Expressions LLC v. Owners Ins. Co.*, 2021 WL 5575753, at *2  ("What was true for the restaurant in *Santo's Italian Café* is true for the bridal shop today. … The company's inability to use the property in the same way as it did before the pandemic—not unlike the situation faced by restaurants at the time—does not satisfy the policy's language. 'A loss of use simply is not the same as a physical loss.'")

At core, Plaintiffs' "loss of use" theory seeks to remove the word "physical" from the coverage equation.  However, doing so rewrites the Policies.  The "physical" requirement is used throughout the Policies and is the pivotal term; without a "direct physical loss" (or "physical damage") there can be no coverage.  Plaintiffs' interpretation of the Policies—providing coverage for a mere loss of use of their premises due to government regulation —would change the policy terms by permitting coverage for a "direct loss," as opposed to a direct *physical* loss.  That would render the term "physical" meaningless surplusage, in violation of plain rules of policy construction.  *See, e.g., Goodwill Indus.*, 2021 WL 6048858, at *4 ("Goodwill's temporary inability to use its property for its intended purpose was not a 'direct physical loss.' To conclude otherwise would ignore the word 'physical' and violate the requirement that every part of a policy be given meaning.");  *Windy City Limousine*, 2021 WL 4806384, at *8 (the insured's "interpretation … would violate the surplusage-avoidance principle by reading the word 'physical' out of the Business Income provision.  After all, if the mere loss of use were covered,

---

(quoting *Santo's*); *Dakota Girls,* 17 F.4th at 649 ("[A]s we explained [in *Santo's*], '[a] loss of use simply is not the same as a physical loss.'"); *Oral Surgeons*, 2 F.4th at 1144 ("We rejected the argument that loss of use or function necessarily constitutes 'direct physical loss or damage,'" explaining that such an interpretation would allow coverage to be "established whenever property cannot be used for its intended purpose"), *Mudpie, Inc*., 15 F.4th at 892 ("Mudpie alleges the Stay at Home Orders temporarily prevented Mudpie from operating its store as it intended, and urges us to interpret 'direct physical loss of or damage to' to be synonymous with 'loss of use.' We cannot endorse Mudpie's interpretation. . . ."); *Gilreath*, 2021 WL 3870697, at *2 (affirming district court's holding that temporary closure of dental practice does not constitute covered physical loss or damage); *Inns-by-the-Sea*, 71 Cal. App. 5th at 708 ("In sum, we conclude that Inns has not alleged 'direct physical loss of' property based on the fact that it lost the ability to use its physical premises to generate income."); *Sanzo Enters.,* 2021 WL 5816448, at *11 ("Appellant failed to plead facts to establish the plausibility that appellee breached its duty in the contract by refusing to cover the loss of use of the property due to the Orders.").

what would be the difference between 'direct loss' and 'direct *physical* loss'?") (emphasis in original) (citing *Chief of Staff LLC v. Hiscox Ins. Co.*, 532 F. Supp. 3d 598, 603 (N.D. Ill. 2021)).[32]

Significantly, several courts considering *Erie's specific policy language* have dismissed claims for coverage under both Erie's Ultraflex and Ultrapack policies, and in doing so have rejected the "loss of use" argument. In *Sanzo Enterprises, LLC*, upholding the lower court's grant of Erie's motion for judgment on the pleadings, the Ohio Court of Appeals held that "the policy language is not ambiguous, and appellant's interpretation of the phrase 'physical loss of property' to include loss of the ability to make 'full use' of the property is not within the ordinary and plain meaning of the terms in the policy." *Sanzo Enters.*, 2021 WL 5816448, at *8. In reaching this conclusion, the Court found that "the term 'loss' is modified by the terms 'direct' and 'physical'" and "when read together, the plain and ordinary meaning of the phrase 'direct physical loss of or damage to' unambiguously requires a tangible and structural damage to the property." *Id*. The government closure orders, and the resulting loss of use, were not enough to trigger coverage. *Id*.

Illinois courts have similarly dismissed claims for business income and extra expense coverage under the Erie Policies for losses arising out of the COVID-19 pandemic.[33] So have

---

[32] Moreover, as set forth above, the Policies define "loss" as used in the Insuring Agreement and Perils Clause as "direct *and accidental* loss of or damage to covered property." *Id*. Ex. A at ERIE 000048, Ex. B at EIE-Close 0056 (emphasis added). There is nothing accidental about the government orders. They were, instead, purposeful, which is another reason why there is no coverage under the policies. *See, e.g., Renaissance/The Park, LLC v. Cincinnati Ins. Co.*, No. 3:20-cv-864-RGJ, 2021 WL 4429796, at *5 (W.D. Ky. Sept. 27, 2021) ("Because neither COVID-19 nor the Orders were 'accidental,' Plaintiff has not plausibly alleged coverage under this provision. But, even if COVID-19 and the Order were 'accidental,' they did not cause 'physical loss' or 'physical damage.'").

[33] In *Napleton*, an Illinois Circuit Court judge rejected plaintiffs' argument that they had alleged 'loss' of their property within the meaning of the policy." *Napleton River*, Kaiser Dec. Ex. D at 8 (dismissing claim for coverage under Erie Ultraflex policy under Illinois law). The court pointed to the fact that "direct" and "physical" both modify "loss" and held that it saw "no plausible reading of the relevant policy provisions through which such loss of use could be covered where, as here, the policy does not cover all 'loss,' but rather only covers 'direct physical loss.'" *Id*. at

49

courts in New York.  In *Tappo,* (*see* Dkt. 108 at 3-3), a magistrate judge in the Southern District of New York recommended dismissal of Tappo's claims against Erie, holding that "[p]urely economic loss due to temporary loss of use, without some sort of actual change in or physical damage to the insured property, does not suffice" to trigger coverage under New York law. *Tappo of Buffalo v. Erie Ins. Co.*,  2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020).  Similarly, in *Rose's 1* (the first written decision in any COVID-19 business interruption case), the Court granted summary judgment to Erie, holding that the loss of use occasioned by a government edict, standing alone, does not qualify as the direct physical loss necessary to trigger a policy's business-interruption coverage. *See Rose's 1, LLC* 2020 WL 4589206, at *2-5.

Like Plaintiffs, each of the insureds in the foregoing cases alleged that governmental orders in their respective jurisdictions caused their business interruption losses.  And where insureds have argued that the governmental orders caused damage to the covered premises, courts across the country have explained the illogic of the argument, finding that it defies common sense to assert that at the moment before a government ordered closure of restaurant dining rooms, those dining rooms were physically intact, but in the moment immediately following the issuance of such orders, those same dining rooms experienced some dramatic *physical* alteration thereby triggering coverage under the policy. Courts dismissed the insureds' claims because the compelled closure of a business by a governmental order does not cause direct physical loss or damage to property.

In *Brian Handel D.M.D., P.C. v. Allstate Insurance Company*,  499 F. Supp. 3d 95, 100 (E.D. Pa. 2020) (Bartle, J.), for example, plaintiff, a dental practice, pushed the "loss of use"

---

8.  Indeed, the court "agree[d] with the majority of courts to consider the issue in the COVID-19 context that COVID-19 contamination does not cause a 'physical loss' of the property."  *Id.* (citing *Park Place Hospitality,* 2021 WL 3549770, *4 (collecting cases)).

theory by alleging that it was "forced to close its office for all non-emergency dental services." *Id*. at 98.  Plaintiff argued that COVID-19, and the "public's anxiety about public health and the safety of indoor spaces" had restricted the use of the property resulting in "direct physical loss." *Id*. at 99.  Judge Bartle explained that this forced reduction in business operations did not amount to the elimination or destruction of the functionality of the property, nor did it render the property useless or uninhabitable.  *Id*. at 100.  Indeed, the Court held that the "plaintiff's property remained inhabitable and usable, albeit in limited ways" and therefore coverage was not triggered under the unambiguous terms of the policy.  *Id*.

That is precisely the situation here.  Plaintiffs do not allege that their property was destroyed or that they were permanently dispossessed of their property.  Plaintiffs' properties were not rendered useless or uninhabitable due to either the government orders or the virus.  They have failed to plead the basic "direct physical loss of or damage to" property required to trigger coverage under any of the applicable states' laws.  Loss of use is not enough.  The sheer volume of rulings reaching this conclusion—even when limited to the jurisdictions in which Erie writes policies—is overwhelming.[34]

---

[34] **Pennsylvania**: *Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, 513 F. Supp. 3d 566 (E.D. Pa. 2021); *ATCM Optical*, 513 F. Supp. 3d 513; *Indep. Rest. Grp.*, 513 F. Supp. 3d 525; *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, 513 F. Supp. 3d 536 (E.D. Pa. 2021); *Ultimate Hearing*, 513 F. Supp. 3d 549; *Zagafen Bala*, 513 F. Supp. 3d 581; *Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, No. 3:20-cv-80, 2021 WL 1061849 (W.D. Pa. Mar. 18, 2021); *J.B.'s Variety Inc. v. Axis Ins. Co.*, No. 20-4571, 2021 WL 1174917 (E.D. Pa. Mar. 29, 2021); *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, 537 F. Supp. 3d 780 (E.D. Pa. 2021); *Mareik Inc. v. State Farm Fire & Cas. Co.*, 537 F. Supp. 3d 818 (E.D. Pa. 2021); *Hair Studio 1208*, 2021 WL 1945712 ; *Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 5:20-cv-06165-JMG, -- F. Supp. 3d -- , 2021 WL 1945713 (E.D. Pa. May 14, 2021); *44 Hummelstown Assocs., LLC v. Am. Select Ins. Co.*, No. 1:20-cv-02319, -- F. Supp. 3d --, 2021 WL 2312778 (M.D. Pa. June 7, 2021); *Spring House Tavern*, 2021 WL 2473939; *Spector Gadon Rosen Vinci P.C. v. Valley Forge Ins. Co.*, No. 1636, 2021 Phila. Ct. Com. Pl. LEXIS 16 (June 17, 2021); *Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co.*, No. 5:20-cv-03672-JMG, -- F. Supp. 3d --, 2021 WL 2681591 (E.D. Pa. June 29, 2021);

2.      ***Finding Coverage Based On The Governmental Orders Would Violate The Causation Requirements Set Forth In The Policies***

The Insuring Agreement is clear that "We will pay for direct physical 'loss' of or damage to Covered Property at the premises described in the 'Declarations' *caused by or resulting from a peril insured against*" (emphasis added), and the Income Protection Clause is equally clear that "Income Protection means loss of 'income' … you sustain due to partial or total 'interruption of business' *resulting directly from* 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against" (emphasis added). *See* Ex. A at ERIE 000012-14, Ex. B at EIE-Close 0022-24. Hence, for coverage to exist, any business loss must be caused by

---

**Illinois**: *Chief of Staff*, 532 F. Supp. 3d at 603; *Image Dental, LLC v. Citizens Ins. Co. of Am.*, No. 20-cv-02759, -- F.Supp.3d --, 2021 WL 2399988, at *6-8 (N.D. Ill. June 11, 2021); *TJBC, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-815-DWD, 2021 WL 243583 (S.D. Ill. Jan. 25, 2021); *Melcorp, Inc. v. W. Am. Ins. Co.*, No. 20 C 4839, 2021 WL 2853371 (N.D. Ill. July 8, 2021); *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 508 F. Supp. 3d 249 (N.D. Ill. Dec. 22, 2020); *Smeez, Inc. v. Badger Mut. Ins. Co.*, No. 20-cv-1132-DWD, 2021 WL 3476402 (S.D. Ill. Mar. 22, 2021); *Zajas, Inc. v. Badger Mut. Ins. Co.*, No. 20-cv-1055-DWD, 2021 WL 1102403 (S.D. Ill. Mar. 23, 2021); *3 Squares v. Cincinnati Ins. Co.*, No. 20-cv-2690, 2021 WL 4437817 (N.D. Ill. Sept. 23, 2021);

**New York**: *Michael Cetta*, 506 F. Supp. 3d 168; *Deer Mt. Inn LLC v. Union Ins. Co.*, No. 1:20-cv-0984 (BKS/DJS), -- F. Supp. 3d --, 2021 WL 2076218 (N.D.N.Y. May 24, 2021); *Chefs' Warehouse*, 2021 WL 4198147; *10012 Holdings*, 2021 WL 6109961; *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 142 N.Y.S.3d 724 (N.Y. Sup. Ct. 2021); *JD Cinemas, Inc. v. Northfield Ins. Co.*, 2021 WL 2626973 (N.Y. Sup. Ct. Mar. 5, 2021); *Dressel v. Hartford Ins. Co. of the Midwest*, No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021); *Benny's Famous Pizza Plus v. Sec. Nat'l Ins. Co.*, 2021 NYLJ LEXIS 667 (N.Y. Sup. Ct. July 8, 2021); *Poughkeepsie Waterfront Dev., LLC v. Travelers Indem. Co. of Am.*, No. 20-CV-4890 (KMK), 2021 WL 4392304 (S.D.N.Y. Sept. 24, 2021);

**Ohio**: *Equity Planning Corp.*, 522 F. Supp. 3d  at 318-27;

**Washington DC**:  *Rose's 1, LLC*, 2020 WL 4589206, at *4-5;

**Tennessee**: *King's Palace*, 2021 WL 4483798, at *7-11; *Gaston*, 2021 WL 4311212, at *4-7; *Pizza Loves Emily*, 2021 WL 4311213, at *4-7;

**Virginia**: *Fountain Enters. v. Markel Ins. Co.*, No. 2:21CV27, -- F. Supp. 3d --, 2021 WL 4999447(E.D. Va. Oct. 26, 2021);

**Maryland**: *Bel Air Auto*, 534 F. Supp. 3d at 503-08;

**West Virginia**: *Bluegrass*, 519 F. Supp. 3d at 298-301.

a physical loss or damage.  As set forth above, there is nothing physical about the government orders, just like they are not accidental.

Holding the government orders can trigger coverage would eliminate from the Policies the key causation requirements contained in the Insuring Agreement and Income Protection Clause.  *See, e.g., 4431, Inc.*, 504 F. Supp. 3d at 383-84 ("To constitute direct 'physical loss' under the Policies as that term is construed under Pennsylvania law, economic loss resulting from an inability to utilize a premises as intended must (1) *bear some causal connection to the physical conditions of that premises*, which conditions (2) operate to completely or near completely preclude operation of the premises as intended.") (emphasis added).  Although government orders may have caused economic losses, those losses are not covered under the Policies because business income losses are covered only if they were caused by "physical conditions" of property. *Id*.  Losses caused by government action, untethered to any physical loss or physical damage to property, are not covered.  *Id*.

Significantly, the CAC is bereft of *any* allegation that any of Plaintiffs' business suffered any physical loss or damage, or that such physical loss or damage *caused* them to lose any business income.  Tellingly, nowhere in the 341-paragraph CAC is there *any* allegation that any Plaintiff made any changes to their business due to any physical loss or damage.  To the contrary, Plaintiffs blame their loss on "local, state, and/or federal authorities" that issued regulations that "forced" them to "temporarily … cease using their properties for their intended business purposes, causing interruption to and loss of Plaintiffs' business income."  CAC ¶ 2.  Plaintiffs' admission that their losses were caused *not* by any physical loss of or physical damage to property—what the Policies require—but by pieces of paper signed by governors and other state officials that limited activities at "non-essential" businesses, dooms their claims.

In fact, no Plaintiff alleges that, *without* the government orders, they would have *still* closed their business due to the supposed existence of a direct and accidental physical loss or damage on their property.[35]  This lays bare the reality that Plaintiffs' alleged losses were purely economic; they were caused by government regulations intended to impede the spread of the coronavirus, and not due to any physical loss or damage that in the absence of the governmental orders would have required Plaintiffs' to change their business operations.  "Nothing 'physical' happened to its property—Goodwill simply had to wait until the government lifted the restrictions." *Goodwill Indus.*, 2021 WL 6048858, at *4.

### 3.   *Finding Coverage Based On Government Orders Would Radically Expand Insurance Coverage Beyond Its Intended Bounds*

Courts have noted that the government closure orders are conceptually no different than myriad laws and regulations governing how, when, and where businesses must operate, and that permitting a business interruption claim to be based on the enforcement of government regulations would result in a "sweeping expansion of insurance coverage without any manageable bounds."  *Plan Check Downtown III, LLC v. AmGuard Ins. Co.,* 485 F. Supp. 3d 1225, 1231-32 (C.D. Cal. 2020).  The court explained that the insured's argument, if accepted:

> would mean that potentially any regulation that limits a business's operations would trigger coverage.  For example, consider the following scenarios:  (1) a city changes its maximum occupancy codes to lower the caps, meaning that a particular restaurant can no longer seat as many customers as it used to; (2) a city amends an ordinance requiring restaurants located in residential zones to cease operations . . . [for longer periods]; (3) a city issues a mandatory evacuation order to all of its

---

[35] Some Plaintiffs may have closed or limited their businesses without the government orders due to concerns over their own health or the absence of customers, among other reasons.  The Policies provide no coverage for such losses, just as they do not cover losses caused by employees not showing up to service customers, or customers who stay home due to a snowstorm.  And while no doubt many business owners suffered economic losses due to the government orders, many businesses thrived, with record profits.  Many restaurants, for example, saw their take-out and delivery business (and hence revenues) explode while their operational costs decreased due to a smaller workforce.

residents due to nearby wildfires . . . Under [the insured's] standard, all these instances would trigger insurance coverage.  While [the insured] may believe that that is an appropriate result, the Court is not persuaded . . .

*Id*.

Another court held that "holding that the Governor's Executive Order led to a 'physical loss of' the dining rooms would massively expand the scope of the insurance coverage at issue here." *Henry's La. Grill,* 495 F. Supp. 3d at 1295.  That is because "Plaintiff's construction would potentially make an insurer liable for the negative effects of operational changes resulting from any regulation or executive decree, such as a reduction in a space's maximum occupancy."  *Id*. *See also Santo's Italian Café,* 15 F.4th at 402 ("It was as if the government temporarily rezoned all restaurants in the State solely for takeout dining. Even as restaurant owners no doubt would suffer from such a decision and no doubt would have reason to object to it, the government regulation would not create a direct physical loss of property.  A loss of use simply is not the same as a physical loss."); *Tria WS* 530 F. Supp. 3d at 543 (quoting *Henry's Louisiana Grill, Inc*.); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 497 F. Supp. 3d 1203, 1211-12 (S.D. Ala. 2020) (same); *LDWB #2 LLC  v. FCCI Ins. Co.*, No. 1:20-CV-425-LY, 2021 WL 2744568, at *7 (W.D. Tex. July 1, 2021) (same); *Islands Rests., LP v. Affiliated FM Ins. Co.*, 532 F. Supp. 3d 948, 954 (S.D. Cal. Apr. 2, 2021) ("Such an interpretation would unreasonably extend coverage beyond 'manageable bounds'"); *Gadi v. Nationwide Mut. Ins. Co.*, No. 2:21-cv-04591-SVW, 2021 WL 4472842, at *2 (C.D. Cal. Aug. 17, 2021) (following *Plan Check Downtown III*).

If the impact of government edicts were sufficient to trigger coverage, the Policies would be fundamentally transformed, from insurance covering business losses flowing from direct and accidental physical damage, into "regulation insurance" that would ensure profits in the face of

the purposeful exercise of government power to regulate business.  The Policies plainly do not provide such coverage.

## III.  PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE CIVIL AUTHORITY COVERAGE

Civil Authority Coverage under the Policies applies if (1) "a peril insured against causes damages to" other property located within "one-mile" of the insured premises, (2) "access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage" to the other property, (3) the civil authority action is taken either "in response to dangerous physical conditions" at the nearby property that is damaged by a peril insured against under the Policy or to "enable a civil authority to have unimpeded access to the damaged property," and (4) as a result of (1)-(3) above the insured does not have access to the insured premises.  *Selane Prods.,* 2021 WL 4496471, at *1 (plaintiff "failed to plausibly allege coverage under the Civil Authority endorsement").

Significantly, Plaintiffs do not allege *any* facts supporting *any* of the prerequisites for Civil Authority Coverage.  Nor could they.  Nowhere in the Complaint do Plaintiffs identify *any* off-site property that suffered direct physical loss or damage, let alone plead that such direct physical loss or damage was located within one mile of their insured premises, and that government orders were issued in response to that off-site damage or to enable authorities to have unimpeded access to the damaged property.  *Every element of the claim is lacking.*  For these reasons, courts in nearly all of the jurisdictions in which Erie writes policies have dismissed claims for Civil Authority coverage.[36]

---

[36] **Pennsylvania**: *TAQ Willow*, 513 F. Supp. 3d  at 546; *Maggios*, 2021 WL 6051562, at *4-5 (no civil authority coverage where "[b]y [plaintiff's] own admission, workers continued to access the building for curbside and takeout service");
**Illinois**: *Valley Lo Club Ass'n v. Cincinnati Ins. Co*., No. 20-cv-04790, 2021 WL 4477892, at *7 (N.D. Ill. Sept. 30, 2021) (applying Illinois law);

LEGAL02/41279884v24

Most fundamentally, this coverage does not, and cannot, apply because the governmental closure orders were not based on any physical damage to *any* property (Plaintiffs' property or a nearby property). They were imposed to impede the person-to-person spread of the virus, just as alleged in the CAC *See Sanzo*, 2021 WL 5816448, at *9 ("Further, the Orders were issued to prevent the spread of the virus, not due to any direct physical loss or damage to property … We find the trial court did not commit error in finding appellant pled no viable claim for civil authority coverage under the policy.").

Civil Authority coverage is not triggered by any government orders here because, "[f]irst, the civil authorities issued their orders to address the health crisis, not some 'direct physical loss of or damage to' other property." *Clear Hearing Sols.,* 513 F. Supp. 3d at 577. Because the government orders were designed to address a health crisis and not property damage, there can be no civil authority coverage just as there is no business income coverage. *See Inns-by-the-Sea,*

---

**New York**: *10012 Holdings* 2021 WL 6109961, at *4 ("Shuttering a gallery because of possible human infection does not qualify as a 'risk of direct physical loss'" and plaintiff failed to plead physical loss at a neighboring property); *Office Sols. Grp. LLC v. Nat'l Fire Ins. Co*., No. 1:20-cv-4736-GHW, -- F. Supp. 3d --, 2021 WL 2403088, at *8 (S.D.N.Y. June 11, 2021) ("The Court declines to reinterpret the [New York] Executive Orders and maintains that they were not the result of any physical damage to specific properties, and so Civil Authority Coverage does not apply."); *WM Bang LLC v. Travelers Cas. Ins. Co. of Am*., No. 20-CV-4540 (KMK), -- F. Supp. 3d --,  2021 WL 4150844, at *5 (S.D.N.Y. Sept. 13, 2021) (Plaintiff had failed to show entitlement to civil authority coverage where they failed "to plead that neighboring properties suffered any physical loss.);
 **Ohio**: *Equity Planning Corp.*, 522 F. Supp. 3d at 328;
**Tennessee**: *King's Palace*, 2021 WL 4483798, at *13 (holding dismissal of Plaintiffs' Civil Authority claim appropriate because "Plaintiffs have failed to allege a Covered Cause of Loss causing damage to property other than Plaintiffs' premises");
**Maryland**: *Thinkfood Grp. LLC v. Travelers Prop. Cas. Co. of Am*., No. 8:20-cv-02201-PWG, 2021 WL 4478725, at *6 (D. Md. Sept. 30, 2021) ("Recent coronavirus-related decisions have repeatedly dismissed claims for civil authority coverage because the government closure orders were issued for public health reasons, and the plaintiffs failed to allege any direct physical loss of or damage to non-insured property that gave rise to the civil authority action.");
**West Virginia**: *Bluegrass*, 519 F. Supp. 3d at 300-01.

71 Cal. App. 5th at 712 ("[T]he Orders were issued to prevent the spread of the pandemic, not because of any direct physical loss of or damage to property.  Accordingly, the Orders did not trigger the Policy's civil authority coverage").

Moreover, businesses did not alter their business operations due to damage to any nearby properties; their business operations were impacted by governmental orders relating directly to their *own* businesses, thus precluding civil authority coverage.  *Whiskey Flats,* 519 F. Supp. 3d at 237 ("But Whiskey Flats did not close because of damage to a nearby property or because there was some dangerous physical condition at another nearby property.  It closed because the Shutdown Orders applied to its own operations.  Thus, its shutdown and resulting losses fall outside the scope of the Civil Authority coverage.").  Indeed, claims for civil authority coverage in these circumstances make no sense, as the insureds are really alleging—just as Plaintiffs do here—that their businesses were impacted by closure orders affecting the insureds *directly*, and not based on any damage to a nearby property or any government order relating to any nearby property.[37]

Undeniably, the government orders were not issued in response to a physical loss of or damage to nearby property.  In reaching this conclusion, one court explained that "materially similar cases that New York courts have analyzed over the last year and a half uniformly hold that the executive orders issued by Governor Cuomo in response to the COVID-19 pandemic

---

[37] *See, e.g., Kessler*, 505 F. Supp. 3d at 481 (dismissing civil authority coverage claim because "the limits on Kessler Dental's business did not come from damage to a nearby premise or because there was some dangerous physical condition at another nearby premise.  They came when state and local authorities ordered the closure of all non-life sustaining businesses in Pennsylvania and to help stop the spread of Covid-19"); *Toppers*, 503 F. Supp. 3d at 257 ("But Toppers did not close because of damage to a nearby premise or because there was some dangerous physical condition at another nearby premise.  It closed because the Shutdown Orders applied to its own operations.  Its shutdown and resulting losses fall outside the scope of the Civil Authority coverage").

LEGAL02/41279884v24

were not on account of any physical loss or damage to any specific property." *WM Bang,* 2021 WL 4150844, at *6.  Similarly, in *Moody,* the Court held that the Pennsylvania orders "were issued to address the ongoing health crisis and the reality of people spreading COVID-19 to other people, not as a direct result of some 'direct physical loss.'" *Moody,* 513 F. Supp. 3d at 509 (finding no civil authority coverage).[38]

Moreover, civil authority coverage is not available where an insured has *any* access to its premises, even if it cannot operate its business.  As everyday experiences have illustrated throughout the past year, there has been no prohibition of *access* to premises during the pendency of the pandemic; there has been a prohibition of *activities*—and that is a distinction with a difference under the Policy and under the law.  That is because most policies, like Erie's, require that the civil authority order "prohibits [ ] access to the premises."  Ex. A at ERIE 000015, Ex. B at EIE-Close 0025.  This requires a complete bar to accessing property.[39]

---

[38] *See also Gilreath*, 2021 WL 3870697, at *2 ("The allegations about off-premises property are no different than those about the property at the dental practice—Gilreath offers no allegation of physical loss or damage. So Gilreath's reliance on the 'Civil Authority' provision fails for the same reason as its reliance on the other two [coverage] provisions."); *Green Beginnings, LLC v. W. Bend Ins. Co.*, No. 20-CV-1661, 2021 WL 2210116, at *6 (E.D. Wis. May 28, 2021) (dismissing plaintiff's claim for civil authority coverage where "nothing in the complaint alleges that Governor Pritzker's executive orders were issued in response to alleged damage at [nearby] property. . . .They were issued in response to the impact of COVID-19 on the community at large."); *Indep. Rest. Grp.*, 513 F. Supp. 3d at 536 (no civil authority coverage because the restaurant had access to its premises, and moreover, no damage at any nearby property was specified "and  general allegations that the coronavirus is present nearby does not mean nearby property suffered" damages).

[39] *See, e.g*., *1 S.A.N.T., Inc.*, 513 F. Supp. 3d, at 627 ("Coverage can also be denied because reduction to partial access does not suffice to trigger business income coverage under the Civil Authority provisions") (collecting cases); *Clear Hearing Sols., LLC*, 513 F. Supp. 3d at 578 ("Because access to their place of business was not 'prohibited' by government order," civil authority coverage was inapplicable; *4431, Inc.*, 504 F. Supp. 3d at 386 ("Additionally, it is clear that Plaintiffs' ability to continue limited takeout and delivery operations at the premises precludes coverage under the Civil Authority provision:  a prohibition on access to the premises, which is a prerequisite to coverage, is not present").

All of Plaintiffs' properties—even salons and those retail establishments deemed "non-essential"—remained accessible by the owners of those businesses for purposes such as filling online orders, handling paperwork, accepting deliveries, etc., and many businesses remained open to employees and customers, including preparation of take-out and delivery orders, outdoor dining and curbside pick-up, and later reduced-capacity indoor services. *Brian Handel D.M.D., P.C.*, 499 F. Supp. 3d at 100 (civil authority coverage unavailable where "the Governor's orders limit, rather than prohibit, access to the property"); *Bluewater Sales, LLC v. Erie Ins. Grp., et al.*, No. 20 CVS 00506 at 3 (N.C. Super. Ct. Feb. 9, 2021) (holding that civil authority coverage was unavailable under the terms of Erie's Policies where the North Carolina Executive Orders "did not prohibit access to the Premises.") (Kaiser Decl. Ex. E); *Office Sols.*, 2021 WL 2403088, at \*8 ("The plain language of the Executive Orders limited the presence of in-person employees at the location, but notably did not prohibit access to the premises outright . . . Here too, the Court . . . follows the clear and consistent trend of other New York courts in finding that the Executive Orders did not prohibit access to Plaintiff's property.").[40]

---

[40] *See also Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.*, No. 20 CV 50284, 2021 WL 346423, at \*5 (N.D. Ill. Jan. 19, 2021) ("[T]he failure to allege that access to the premises was prohibited—rather than limited—by government order [i]s enough to preclude the plaintiff's claim for civil authority coverage." ); *Equity Planning Corp.*, 522 F. Supp. 3d at 329 ("E.P. also fails to allege that an action of civil authority "prohibited . . . E.P. from accessing its premises . . . [W]hile E.P. alleges that Ohio's Stay at Home Order prevented E.P. from making 'full use of' its Property . . . the Stay at Home Order did not prevent E.P. from accessing its properties altogether."); *Santo's,* 508 F. Supp. 3d at 204 ; *Georgetown Dental v. Cincinnati Ins. Co.*, No. 1:20-cv-00383-TWP-MJD, 2021 WL 1967180, at \*9 (S.D. Ind. May 17, 2021) (holding that Civil Authority coverage was not triggered because Indiana Governor's orders did not prohibit access to premises); *Biltrite Furniture, Inc. v. Ohio Security Ins. Co.,* No. 20-CV-656-JPS-JPS, 2021 WL 3056191, at \*5 (E.D. Wis. July 20, 2021) ("[T]he [Wisconsin] civil authority order does not bar access to an area surrounding a property—rather, the Emergency Orders generally require people to stay at home to stop the spread of a virus."); *Thinkfood Grp., LLC*, 2021 WL 4478725, at \*5; *Bluegrass*, 519 F. Supp. 3d 293 at 301; *TAQ Willow*, 513 F. Supp. 3d at 546; *Wild Eggs Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 3:20-CV-501-RGJ,  2021 WL 4234940,

Beyond this, under long-standing precedent, the Policies' Civil Authority Coverage is not triggered where, as here, the civil authority acts not in response to property damage, but instead to prevent *some future loss*.[41]  The government orders upon which Plaintiffs rely were, on their face, issued for the purpose of preventing the future spread of the coronavirus among people, not to remedy any property damage.  *See TAQ Willow*, 513 F. Supp. 3d at 546 ("The civil authorities issued their orders to address the health crisis, not some 'direct physical loss' as required by TAQ's policy").  For this reason, too, Civil Authority coverage does not apply.

## IV.   PLAINTIFFS CANNOT RECOVER UNDER THE SUE AND LABOR PROVISION

Plaintiffs cannot recover under the Policies' sue and labor provisions for two reasons: (1) the Policies' Sue and Labor provision is not an independent coverage provision[42], and (2)

---

at *11 (W.D. Ky. Sept. 16, 2021); *Fs Food Grp. LLC v. Cincinnati Ins. Co.*, No. 3:20-CV-00588-RJC-DSC, 2021 WL 5178490, at *21 (W.D.N.C. Mar. 18, 2021).

[41] *See, e.g., Biltrite*, 2021 WL 3056191, at *6 ("[C]ivil authority orders 'intended to prevent future harm, rather than existing property loss or damage,' do not fall within Civil Authority Coverage provisions.") (citing *United Airlines, Inc. v. Ins. Co.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005), *aff'd*, 439 F.3d 128 (2d Cir. 2006) (civil authority coverage did not exist where decision to halt operations at Ronald Reagan Washington National Airport in response to the 9/11 attacks was a response to fears of future attacks, and not damage to insured property)). *See relatedly Cleland Simpson Co. v. Firemen's Ins. Co. of Newark*, 140 A.2d 41, 42-43 (Pa. 1958) (no civil authority coverage where the Mayor of Scranton declared a state of emergency and shut down businesses to avoid a fire after a storm cut off the city's water supply, because businesses were closed due to the fear of damage, and not actual damage necessary to trigger coverage); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) (holding civil authority coverage must arise from a civil order "issued as a direct result of physical damage" to other property, and that civil authority coverage, therefore, did not exist where a business was closed due to a hurricane evacuation order); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 613 (D.C. Ct. App. 1970) (court interpreted the "direct loss" requirement to mean there had to be "loss proximately resulting from physical damage to the property or contents caused by a riot or civil commotion").

[42] Plaintiffs do not assert a separate count for "sue and labor" coverage, instead bundling "sue and labor" coverage into their definition of business income coverage (CAC ¶ 235 n. 77) and asserting that "[t]his provision requires that Erie Insurance Group pay for efforts to reduce damage."  CAC ¶ 88; ¶¶ 257, 271 ("[T]he Policy's Sue and Labor provision applies to require Erie to pay for efforts to reduce damage caused by COVID-19.").  But regardless of how Plaintiffs package the claim, the sue and labor provision is not a source of coverage.

Plaintiffs have failed to plausibly allege direct physical loss of or damage to property—a necessary prerequisite to trigger any coverage under the terms of the Plaintiffs' Policies. *See supra*.

The sue and labor provision of the Policies identifies the *insureds*' duties in the event of a covered loss.  *See* Ex. A at ERIE 000046, Ex. B at EIE-Close 0054.   It is not a separate basis for coverage.  *Valley v. CNA Fin. Corp.*, No. 20 CV 6073, 2021 WL 4340987, at *7 (S.D.N.Y. Sept. 22, 2021) ("There is no so-called 'Sue and Labor' provision in the Policy. Rather, this claim is based upon the "Duties In The Event Of Loss Or Damage" provision of the Policy, which provides steps the insured must take . . . including steps to mitigate damage. The provision does not provide independent coverage.").  Specifically, the Policies provide that "[i]n case of a covered 'loss'" the insured "must perform the following duties," including to "Protect the property from further damage" and, "[i]f necessary for property protection, make reasonable repairs and keep a record of all repair costs."  *Id*.  Plaintiffs cannot recover for its losses under this section; it does not provide additional coverage.[43]

Further, even if the Court credits Plaintiffs' allegations that these provisions somehow provide additional "Sue and Labor" coverage, Plaintiffs would not be entitled to "Sue and Labor" coverage for the same reasons they are not entitled to Business Income, Extra Expense, or Civil Authority Coverage:  Plaintiffs have failed to plausibly allege that their losses were caused by

---

[43] *See, e.g.*, *JDL Inc. v. Valley Forge Ins. Co*, No. 20-CV-02681, 2021 WL 4477914, at *8 (N.D. Ill. Sept. 30, 2021) ("[The "Sue and Labor"] provision is not a coverage provision, but instead imposes certain mitigation obligations on the insured when it submits a claim. Accordingly, again, the Court finds that Plaintiffs fail to state a cause of action for breach of contract and declaratory relief regarding coverage under the Policies' Sue and Labor provisions.") (emphasis added); *Round Guys Brewing*, 2021 WL 4306027, at *4 ("[T]here is no coverage available under the 'Sue and Labor' provision. . . . This provision does not, itself, provide any coverage. It simply imposes responsibilities on the insured while the claim is processed.").

62

"direct physical loss of or damage to property." Plaintiffs' "Sue and Labor" claims fail as a matter of law, as other courts have held.[44]

## V.   THE DECLARATORY JUDGMENT CLAIMS ARE DUPLICATIVE OF THE CONTRACT CLAIMS

Plaintiffs' declaratory judgment claims should be dismissed as duplicative of their breach of contract claims. "It is well established that a request for a declaratory judgment must be dismissed if it is 'merely duplicative of a plaintiff's breach of contract claim." *John Gore Org. v. Fed. Ins. Co*., No. 21-CV-2200 (PGG) (KHP), 2021 U.S. Dist. LEXIS 236278, at *26 (S.D.N.Y. Dec. 8, 2021) (dismissing Plaintiffs' redundant declaratory judgment claim in a COVID-19 coverage action, noting that "if Plaintiff were to prevail on its breach of contract claim, the issue of coverage would necessarily be decided and no additional ruling would be required to clarify the issue.").[45] Here, Plaintiffs' declaratory judgment claim seeking a declaration that there is coverage is, by definition, entirely duplicative of their breach of contract claims for damages due to the failure to provide coverage.

## VI.   PLAINTIFFS' CLAIMS ARE EXCLUDED BY THE LAW AND ORDINANCE EXCLUSION IN THE POLICY

The Policies expressly exclude coverage for business income protection for any "'loss' or damage caused directly or indirectly" by "the enforcement of or compliance with any law or

---

[44] *See, e.g., Byberry Servs. & Sols., LLC v. Mt. Hawley Ins. Co*., No. 20-cv-03379, 2021 WL 3033612, at *6 (N.D. Ill. July 19, 2021) ("Both parties agree, however, that this [sue and labor] provision only comes into issue when a direct physical loss of or damage to property has been established."); *Estes v. Cincinnati Ins. Co*., No. 2:20-CV-138 (WOB-CJS), 2021 WL 2292473, at *7 (E.D. Ky. June 4, 2021) ("The Sue and Labor coverage claim fails because there is no covered loss."); *Troy Stacy*, 2021 WL 4346688, at *10 ("First . . . [a]s there is no loss, this [sue and labor] section does not apply. Second, the 'Duties' section does not describe coverage – rather, it lays out an insured's obligations to ensure that separate coverage applies. Third, nothing in the 'Duties' section sets forth a duty for [the insurer] to pay.").

[45] *See also, e.g., Neri v. State Farm Fire & Cas. Co*., No. 19-0355, 2019 WL 3821538, at *9 (E.D. Pa. Aug. 13, 2019) ("Federal courts routinely dismiss actions seeking declaratory judgment that, if entered, would be duplicative of a judgment on an underlying breach of contract claim").

ordinance regulating the construction, use, or repair of any property." Ex. A at ERIE 000015-17; Ex. B at EIE-CLOSE 0026-27. The Plaintiffs' insurance claims are based precisely on such excluded causes of loss. *See, e.g.,* CAC ¶ 2 ("At the direction of local, state, and/or federal authorities … Plaintiffs were forced to temporarily close their operations[.]"). In response to the COVID-19 pandemic, in trying to slow the spread of the virus, governors in each of the relevant jurisdictions issued series of orders—referred to by Plaintiffs as "Mandated Shutdown Rules"— enforceable by criminal penalties, dictating the manner in which businesses like Plaintiffs' could operate. *See, e.g.,* CAC at ¶ 131. Plaintiffs themselves allege that their losses result from compliance with those pandemic-related orders regulating use of covered property. *See, e.g.,* CAC ¶ 182 ("Plaintiffs have incurred, among other things, a substantial loss of business income, including extra expenses, because of the Mandated Shutdown Rules.").

The "Mandated Shutdown Rules" unquestionably constitute "law[s] or ordinance[s] regulating … use … of any property." *Bradley Hotel*, 19 F.4th at 1009 ("These executive orders fell well within what we understand to be laws, just as rules and adjudications by executive agencies acting under legislative grants of authority have binding force of law."); *Isaac's Deli*, 2021 WL 1945713, at *5 ("Governor Wolf's shutdown order thus undoubtedly constitutes the 'enforcement of any ordinance or law.' The Court also finds that the Governor's order regulated the use of Plaintiff's property."); *Newchops,* 507 F. Supp. 3d at 626.

In *Newchops*, Judge Savage considered government orders in a policy governed by Pennsylvania law, and held that the policy  unambiguously barred coverage where losses resulted from compliance with the orders. The shutdown orders "were governmental order[s] regulating the use of property and having the force of law." And the "unequivocal language" of the policy made clear that the insurer would not pay "for any loss or damage caused by a law that regulated

the use of any property." *Id*. at 626.  Like the restaurant in *Newchops*, because of the government

orders Plaintiffs here were "unable to use [its] restaurant[] as intended without violating the law"

and "the shutdown orders regulating the use of insureds' properties are not a covered cause of

loss under either the civil authority or business income provision." *Id*.  Courts nationwide have

routinely held that losses arising out of the enforcement of such pandemic-related orders are

subject to and precluded by, law and ordinance exclusions similar or identical to those in the

Policies.[46]

Moreover, at a minimum, this exclusion makes clear that the Policies were not designed

to cover these kind of losses—non-physical, intangible, and economic losses caused by

government action.  *See, e.g., MIKMAR, Inc. v. Westfield Ins. Co*., 520 F. Supp. 3d 933, 940 (N.D.

Ohio 2021) ("And where the loss arises from an ordinance or law—in other words, something

---

[46] *See, e.g., Image Dental*, 2021 WL 2399988, at *8-9 ("The Second Amended Complaint squarely alleges that the losses stemmed from a legal directive regulating the use of its property, and thus the Ordinance or Law exclusion applies … [A]s long as the losses at issue were even 'indirectly' caused by the operation of some law or ordinance, then Image Dental's claims were properly excluded according to the policy's plain text."); *Walnut Ace*, 2021 WL 4477158, at *4-5 ("Even if [the insured] could establish physical damage, its claims are  . . . excluded by the . . . Ordinance or Law Exclusion."); *Isaac's Deli,* 2021 WL 1945713, at *5 ("Assuming, *arguendo*, that Plaintiff had alleged a 'Covered Cause of Loss' under the Policy, their claim would still be barred under the Policy's 'Ordinance or Law' exclusion."); *JD Cinemas*, 2021 WL 2626973, at *7 ("[T]he Ordinance Or Law Exclusion in the policy provides that losses attributable to enforcement or compliance with any ordinance or law are not covered. As Plaintiff's damages are alleged to be the result of compliance with an Executive Order, its damages are excluded from coverage.").

non-physical or intangible—the policies do not provide coverage.").[47]  Context and intent matters, and here both buttress the plain language reading of the Policies to bar coverage.[48]

## VII.   PLAINTIFFS' CLAIMS ALSO FAIL UNDER THE ULTRAFLEX POLICY'S "VIRUS EXCLUSION"

The claims of the Ultraflex Policy Plaintiffs also fail for the independent reason that the Virus Exclusion bars coverage for any loss or damage caused "[b]y or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease."  Kaiser Decl. Ex. B at EIE-Close 0029.  Plaintiffs allege that this virus exclusion "does not preclude coverage for plaintiffs' claim under the Policy."  CAC ¶ 217.  But each relevant jurisdiction to have considered comparable—if not identical—virus exclusions has held that these exclusions are valid and enforceable, and bar coverage for claims arising out of the COVID-19 pandemic and related government orders.  *See, e.g., Crunch Logistics Inc. v. Donegal Ins. Grp.*, No. 5:21-cv-00639, 2021 WL 2400721, at *16 (E.D. Pa. June 11, 2021) ("[E]ven if Crunch were able to show an entitlement to coverage under the Policy, the Virus Exclusion would unambiguously preclude such coverage."); *Hair Studio 1208,* 2021 WL 1945712, at *11

---

[47] *See also Ceres Enters., LLC v. Travelers Ins. Co*., 520 F. Supp. 3d 949, 957 (N.D. Ohio 2021); *Sanzo Enters.,* 2021 WL 5816448, at *2 ("The court … found 'direct physical loss of or damage to' the insured property means immediate, material, tangible harm to or deprivation of the insured property.  The court further found that additional text in the policy supports the interpretation,  such as the exclusion of 'loss or damage caused directly or indirectly by the enforcement of or compliance with any law or ordinance regulating the construction, use, or repair of any property'").

[48] The law or ordinance exclusion should be distinguished from civil authority coverage.  The exclusion is narrow and hinges on the existence of a *law or ordinance* regulating the use of property.  Civil authority coverage, in contrast is triggered by *acts of civil authorities due to property damage on nearby property*, not laws or ordinances regulating property.  If, for example, a crane collapses and a city street is closed to deal with it, the street was not closed by a law or ordinance but by the fire department through an act of a civil authority.  So, in that scenario there is civil authority coverage.  But where laws—here, the "Mandated Shutdown Rules," having the force of law—regulate the use of property (especially having nothing to do with physical damage but to address a public health crisis), there can be no coverage for a number of reasons, including this exclusion.

66

("Numerous courts, applying Pennsylvania law, have thoroughly addressed arguments regarding the Virus Exclusion's applicability to insurance claims based on COVID-19 shutdowns. These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage.").[49]

---

[49] The Ultraflex Policy Plaintiffs are located in Pennsylvania, Illinois, and D.C. and thus cannot bring claims on behalf of Ultraflex Policy holders in the other states in which Erie writes insurance policies, *see supra* pp. 9-10. But regardless, the Virus Exclusion is valid and enforceable under the laws of each of the jurisdictions in which Erie writes policies.

**Pennsylvania**: *Star Buick*, 2021 WL 2134289, at *7-8; *J.B.'s Variety*, 2021 WL 1174917, at *5; *SSN Hotel Mgmt., LLC v. Hartford Mut. Ins. Co*., 533 F. Supp. 3d 260, 267-68 (E.D. Pa. 2021); Whiskey Flats, 519 F. Supp. 3d at 237;

**Illinois**: *M&E Bakery Hldgs, LLC v. Westfield Nat'l Ins. Co*., 538 F. Supp. 3d 816, 822 (N.D. Ill. May 7, 2021) ("the virus exclusion unambiguously excludes claims for the loss of business income indirectly caused by a virus. As such, plaintiffs' argument that the closure orders, not the coronavirus, caused their loss of business income, lacks merit: the closure orders were issued because of the coronavirus pandemic. Thus the loss of income was an indirect result of the coronavirus and is therefore excluded from coverage."); *Sojo's Studios, Inc. v. Citizens Ins. Co*., No. 20 C 4780, 2021 WL 837623, at *2-3 (N.D. Ill. Mar. 4, 2021) (same); *Mashallah, Inc.* 20 F.4th at 320-21; *AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co*., 503 F. Supp. 3d 602, 608 (N.D. Ill. Nov. 25, 2020); *Lee v. State Farm Fire & Cas. Co*., No. 20 CH 4589, 2021 Ill. Cir. LEXIS 1, at *15-16 (Ill. Cir. Ct. Jan. 13, 2021); *Park Place Master Tenant, LLC v. Am. Zurich Ins. Co*., No. 21 C 2471, 2021 WL 5038777, at *4-5 (N.D. Ill. Oct. 29, 2021); *Green Beginnings,* 2021 WL 2210116, at *7-8 (applying Illinois law);

**New York**: *Servedio v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-3907-LTS-SDA, 2021 WL 5772148, at *3 (S.D.N.Y. Dec. 6, 2021) ("In unmistakable language, the Policy's Virus Exclusion Clause clearly defines the type of virus to which the exclusion applies: coverage is excluded for losses resulting from 'any virus . . . capable of inducing physical distress, illness or disease.' … Because the SAC alleges that Plaintiff's business was interrupted by COVID-19 and that the virus caused the damages and losses complained of, the Virus Exclusion Clause 'applies in th[is] particular case.'");

**Ohio**: *Equity Planning.*, 522 F. Supp. 3d at 330 ("The Court finds that the Virus Exclusion unambiguously excludes coverage for E.P.'s alleged COVID-19-related losses. The Court begins its analysis by examining the plain language of the Virus Exclusion: 'B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.' The Court concludes that, on its face, this provision excludes coverage for E.P.'s alleged losses. Unquestionably, COVID-19 is a virus capable of inducing physical distress, illness, or disease.");

**Washington DC**: *Wash. Exec. Servs. v. Hartford Cas. Ins. Co.*, No. 20-2119 (TJK), -- F. Supp. 3d--, 2021 WL 4439060, at *3 (D.D.C. Sept. 28, 2021) ("The policy Plaintiffs bought says explicitly, 'We will not pay for loss or damage caused directly or indirectly by' the '[p]resence, growth, proliferation, spread or any activity of 'fungi,' wet rot, dry rot, bacteria or virus.' And

67

Plaintiffs' assertion that the virus exclusion is inapplicable because its losses were caused by the government orders, not by the virus, is unpersuasive and incompatible with its other arguments. Courts have unanimously rejected this argument because the government orders were issued to stop the spread of the virus. Where, as here, the "exclusion applies to loss or damage 'caused by or resulting from' any virus," courts have explained that the exclusion applies because "while [an insured's] loss of use of its premises may not have been directly caused by the coronavirus, it certainly *resulted from* the coronavirus." *Rosebud Rest., Inc. v. QBE N. Am.*, No. 20 C 5526, 2021 WL 4264382, at *4 (N.D. Ill. Sept. 20, 2021) (emphasis in original).

Plaintiffs attempt to circumvent the exclusion by arguing that Erie "chose not include anti-concurrent causation language in the Ultraflex Policy's Virus Exclusion preamble, but did include such language with respect to other Policy exclusions." CAC ¶ 218. As a result, Plaintiffs

---

this exclusion applies 'regardless of any other cause or event that contributes concurrently or in any sequence to the loss.' … Without COVID-19, there would be no governmental orders. That is enough for the exclusion to apply.");

**Tennessee**: *1210 McGavock St. Hosp., LLC v. Admiral Indem. Co.*, 509 F. Supp. 3d 1032, 1038 (M.D. Tenn. 2020) ("As set forth above, the Policy excludes coverage for 'loss or damage caused by or resulting from any virus . . . or other microorganism that induces or is capable of inducing physical distress, illness or disease.' Even if the plaintiff could show that it suffered covered losses under either the Business Income Clause or the Civil Authority Clause, the Virus Exclusion Clause precludes coverage.");

**Virginia**: *Fountain Enters.*, 2021 WL 4999447, at *7 (holding that identical "Virus Exclusion provision here precludes recovery");

**Maryland**: *Thinkfood*, 2021 WL 4478725, at *6 ("The Virus Exclusion provides that Travelers 'will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus . . . that induces or is capable of inducing physical distress, illness or disease.' Throughout their Complaint, Plaintiffs repeatedly refer to the coronavirus and the related governmental orders as the cause of Plaintiffs' claimed losses. Plaintiffs allege that the orders were issued to 'limit the spread of COVID-19' and to 'lessen the burden on health care services and critical infrastructure.' Plaintiffs repeatedly refer to 'COVID-19' and the orders as the cause of the alleged 'direct physical loss' and as the cause of the losses being claimed. However, a virus is not a Covered Cause of Loss, and therefore, it does not give rise to coverage under any of the provisions at issue.") (citations omitted).

claim that "to the extent that the governmental orders, in and of themselves, constitute direct physical loss of or damage to Plaintiffs' property, the Ultraflex policy's Virus Exclusion simply does not apply."  CAC ¶ 220.  But because the exclusion extends to losses indirectly "resulting from" a virus, the presence or absence of anti-concurrent causation language is irrelevant.  The government orders cannot be viewed in isolation—they plainly were issued in response to the coronavirus pandemic, as Plaintiffs admit (CAC ¶ 131).  Thus, any loss of use caused by the government orders was a result of the coronavirus pandemic, and the exclusion applies.  *See, e.g., Maggios,* 2021 WL 6051562, at *5 ("the plain language of the Virus Exclusion applies to a *virus*, regardless of whether it reaches pandemic proportions"; rejecting the "absurd proposition that a virus exclusion drafted in response to one coronavirus … should not apply to another, more prolific coronavirus" – which "would be akin to arguing that an exclusion for wind damage does not apply to losses caused by a tornado").[50]

---

[50]*See also Boxed Foods Co. v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 522 (N.D. Cal. 2020) (rejecting Plaintiff's argument that the virus exclusion did not apply because the government orders caused Plaintiffs' loss; "California issued these orders as a direct response to COVID-19, a cause of loss that falls squarely within the Virus Exclusion"); *Penn Asian*, 2021 WL 4478215, at *4 (virus exclusion applied where "shutdown orders 'would not have occurred' but for the virus"); *Martinez v. Allied Ins. Co. of Am.*, 483 F. Supp. 1189, 1191-92 (M.D. Fla. 2020); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1039-40 (W.D. Tex. 2020) (holding the "virus exclusion [was] plainly applicable to Plaintiff's insurance claim" notwithstanding Plaintiff's assertion that its losses were proximately caused by government orders); *N & S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 79 (D.N.J. 2020) ("There is no doubt that COVID-19, a virus, caused Governor Murphy to issue the Executive Order mandating closure of Plaintiff's restaurant.  . . .  By its plain language, the Virus Exclusion applies, barring coverage."); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1189 (S.D. Fla. 2020) (following  those "[c]ourt[s] that have considered whether the virus exclusion applies where government closure orders themselves rather than the virus are alleged to be the cause of plaintiff's business losses, [and] have rejected similar arguments and determined that coverage is excluded."); *Founder Institute Inc. v. Hartford Fire Ins. Co.*, 497 F. Supp. 3d 678, 679 (N.D. Cal. 2020).

Courts across the country have deemed policy exclusions disclaiming coverage for losses "caused by" or "resulting from" specified noncovered risks to be unambiguous and have applied their plain meaning.  *See, e.g.*, *Wexler Knitting Mills v. Atl. Mut. Ins. Co.*, 555 A.2d 903, 905 (Pa. Super. Ct. 1989).  Here, neither the government orders issued in response to the virus, nor the virus itself caused direct physical loss of or damage to Plaintiff's property, so there is no coverage under Coverage 3.  But even if there was coverage under Coverage 3, it would then be excluded by the plain terms of the "virus exclusion."  That is what the Policy—and applicable state law—requires.

## VII.   THE DOCTRINE OF REASONABLE EXPECTATIONS CANNOT BE USED TO EXPAND COVERAGE UNDER PLAINTIFFS' POLICIES

Pennsylvania's reasonable expectations doctrine is limited in its application—it does not generally serve to supplant actual policy terms with the terms policyholders wish had been included.  Instead, "[f]or expectations to control, the insurers must engage in some sort of misconduct, like actively providing misinformation about the scope of coverage or failing to notify the insured of changes in the policy."  *Penn Asian*, 2021 WL 4478215, at *5. And, in addition to showing misconduct on the part of the insurer, "of course, the insured's expectation must be reasonable."  *Id.*  Plaintiffs have failed to meet either requirement.

*First*, Plaintiffs fail to allege any misconduct on the part of Erie.  That should be the end of the analysis.  *Second*, Plaintiffs' supposed expectations were not reasonable because the terms of the Policies clearly and unambiguously do not provide coverage for Plaintiffs' economic losses.[51]  Plaintiffs cannot use the reasonable expectations doctrine to rewrite their policies to

---

[51] In *Star Buick*, the Court explained that because the policy terms were unambiguous, "Star Buick's expectations of coverage were not reasonable." 2021 WL 2134289, at *8 (citing *Fuel Recharge Yourself, Inc. v. AMCO Ins. Co.*, No. 20-4477, 2021 WL 510170, at *5 (E.D. Pa. Feb. 11, 2021) ("Because I have concluded that the policy provisions at issue unambiguously preclude

include terms they *wish* were included in place of the terms that were actually included. *See Vinart Mgmt. Co. v. Emps. Mut. Cas. Co.*, No. 20-2954, 2021 WL 3033819, at *4 (E.D. Pa. July 19, 2021) ("[A]n insured cannot validly assert that its understanding or reasonable expectation of coverage, uncommunicated to the insurer, should control over the plain language of the insurance agreement."). For these reasons, most federal district courts have declined to apply the doctrine to expand coverage in the context of COVID-19 business interruption coverage claims, even where the doctrine is recognized by state law.[52]  This Court should chart the same course.

## CONCLUSION

Plaintiffs fail to state a plausible claim for coverage under their Policies.  This Court should, therefore, grant Erie's Motion to Dismiss and dismiss Counts I-IV of the Consolidated Amended Complaint with prejudice.

January 10, 2022                                     Respectfully Submitted,

                                                    /s/ *Adam J. Kaiser*

                                                    Adam J. Kaiser
                                                    ALSTON & BIRD, LLP
                                                    90 Park Ave., 15th Floor
                                                    New York, New York 10016-1387
                                                    Tel: (212) 210-9000
                                                    adam.kaiser@alston.com

                                                    Tiffany L. Powers
                                                    Raechel J. Bimmerle

---

coverage, I cannot find that Plaintiff's 'reasonable expectations [of coverage during the COVID-19 suspensions] were frustrated.").

[52] *See, e.g., Moody*, 513 F. Supp. 3d at 507; *Lansdale 329*, 537 F. Supp. 3d at 796-97; *Del. Valley*, 2021 WL 5235277, at *10; *Fuel Recharge Yourself*, 2021 WL 510170, at *5; *Glat v. Nationwide Mut. Ins. Co.*, 531 F. Supp. 3d 908, 918 (E.D. Pa. 2021); *Goodwood Brewing,* 2021 WL 2955913, at *9; *Troy Stacy*, 2021 WL 4346688, at *8-9; *Julie's Inc. v. Hanover Ins. Grp.*, No. 1:20CV853, 2021 WL 2312532, at *5, n.4-5 (M.D.N.C. June 7, 2021); *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co.*, No. 8:20-cv-02248-PWG, 2021 WL 4214837, at *3  (D. Md. Sept. 16, 2021).

LEGAL02/41279884v24

ALSTON & BIRD, LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel.: (404)881-7000
tiffany.powers@alston.com
raechel.bimmerle@alston.com

Kristin A. Shepard
ALSTON & BIRD, LLP
950 F Street, NW
Washington, DC 20004
Tel.: 202-239-3277
kristin.shepard@alston.com

*Lead Counsel for the Erie Defendants*

Robert T. Horst, Esquire
Robert M. Runyon III, Esquire
Matthew B. Malamud, Esquire
HORST, KREKSTEIN
    & RUNYON, LLC
610 W. Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
(484) 243-6873
rhorst@hkr.law
rrunyon@hkr.law
mmalamud@hkr.law

Paul K. Geer, Esquire
Richard DiBella, Esquire
Tara L. Maczuzak, Esquire
DIBELLA WEINHEIMER
Law & Finance Building
429 Fourth Avenue, Suite 200
Pittsburgh, PA 15219
Tel.: (412) 261 2900
Fax: (412) 261 3222
pgeer@d-wlaw.com
rdibella@d-wlaw.com
tmaczuzak@d-wlaw.com

*Liaison Counsel for the Erie Defendants*

72

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on January 10, 2022, he caused a true and correct copy of the foregoing to be filed electronically.  Notice of this filing will be sent to and served upon all parties registered on this court's ECF system by operation of the Court's electronic filing system.

<u>/s/  *Adam J. Kaiser*                        </u>
